## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re LONG-DISTANCE TELEPHONE SERVICE FEDERAL EXCISE TAX REFUND LITIGATION | ) ) ) )  MDL Docket No. **1798** <br><br> Master File:  07-mc-0014 (RMU) <br><br> Member Case:  07-cv-801 |
| This document relates to: | |
| *Belloni v. Verizon Communications, Inc.* | |

## DEFENDANTS' JOINT MOTION TO DISMISS
## <u>THE AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)</u>

Defendants Alltel Corp.; AT&T Inc.; BellSouth Corp.; CenturyTel Inc.; Global Crossing North America Inc.; Qwest Corp.; Sprint Nextel Corp.; Time Warner Inc.; T-Mobile USA, Inc.; Verizon Communications Inc.; Verizon Business Global LLC (successor to MCI, Inc.); and Virgin Mobile USA, LLC (collectively, "Defendants"), who are defendants in *Belloni, et al. v. Verizon Communications, Inc., et al.*, No. 07-cv-801 (RMU), jointly move this Court to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

This Motion is based upon the accompanying Memorandum of Points and Authorities and the Declaration of Daniel P. Collins (both filed concurrently herewith), the exhibits thereto, the files and records in this action, such additional authority and argument as may be presented in any Reply and at any hearing on this Motion, and such other matters of which this Court may take judicial notice.

Dated:  August 10, 2007                              Respectfully submitted,


 /s/  Daniel P. Collins                                    /s/  Michael B. Carlinsky
Daniel P. Collins (DC Bar # 426546)          Michael B. Carlinsky
MUNGER, TOLLES & OLSON LLP                QUINN EMANUEL URQUHART
355 South Grand Avenue, 35th Floor            OLIVER & HEDGES, LLP
Los Angeles, CA 90071                             5 1 Madison Avenue, 22nd Floor
(213) 683-9125                                       New York, New York 10010
                                                         (212) 849-7000

Attorneys for Defendants Verizon              Attorneys for Defendant Alltel Corp.
Communications Inc. and Verizon
Business Global LLC (successor to
MCI, Inc.)




 /s/  Michael K. Kellogg                                /s/  P. Scott Wolleson
Michael K. Kellogg (DC Bar # 372049)        P. Scott Wolleson (La. Bar No. 22,691)
Sean Lev (DC Bar # 449936)                     BREITHAUPT, DUNN, DUBOS,
KELLOGG, HUBER, HANSEN, TODD               SHAFTO & WOLLESON, LLC
  EVANS & FIGEL, P.L.L.C                        1800 Hudson Lane
1615 M Street, NW, Suite 400                    Suite 200-A
Washington, DC 20036                             Monroe, Louisiana 71201
(202) 326-7900                                       (318) 322-1202

Attorneys for Defendants AT&T Inc. and     Attorneys for Defendant CenturyTel, Inc.
BellSouth Corp.




 /s/  Danny E. Adams                                    /s/  Alejandro N. Mayorkas
Danny E. Adams (DC Bar #259309)              Alejandro N. Mayorkas
Ira T. Kasdan (DC Bar # 292474)               Sandra Sepulveda
KELLEY DRYE & WARREN LLP                    O'MELVENY & MYERS LLP
3050 K Street, N.W.                                 400 South Hope Street
Washington, D.C.  20007                           Los Angeles, CA 90071
(202) 342-8864                                       (213) 430-6000

Attorneys for Defendant Global Crossing     Attorneys for Defendant Qwest Corp.
North America Inc.

 /s/  *John W. Rogers*

John W. Rogers
BRYAN CAVE LLP
One Metropolitan Square Building
211 N. Broadway, Suite 3600
St. Louis, MO 63102
(314) 259-2000

Attorneys for Defendant Sprint Nextel
Corp.

 /s/  *Henk Brands*

Henk Brands (DC Bar # 451710)
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1615 L Street, N.W., Suite 1300
Washington, DC 20036-5694
(202) 223-7300

Attorneys for Defendant Time Warner Inc**.**

 /s/  *Alan M. Unger*

Alan M. Unger
John J. Lavelle
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

Attorneys for Defendant T-Mobile USA,
Inc.

 /s/  *Susan L. Saltzstein*

Susan L. Saltzstein
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
(212) 735-4132

Attorneys for Defendant
Virgin Mobile USA, LLC

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re LONG-DISTANCE TELEPHONE SERVICE FEDERAL EXCISE TAX REFUND LITIGATION<br><br>This document relates to:<br><br>*Belloni v. Verizon Communications, Inc.* | ) MDL Docket No. **1798**<br>)<br>) Master File:  07-mc-0014 (RMU)<br>)<br>) Member Case:  07-cv-801<br>)<br>)<br>)<br>) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND .............................................................................................. 2

I.    THE IRS ESTABLISHES A REFUND PROCESS FOR FUNDS
      COLLECTED AS FEDERAL EXCISE TAX ON LONG-DISTANCE
      AND BUNDLED PHONE SERVICE ................................................................... 2

II.   A PRIOR SUIT AGAINST TELECOMMUNICATION DEFENDANTS FOR
      COLLECTING FET IS VOLUNTARILY DISMISSED ...................................... 3

III.  PLAINTIFFS FILE THIS ACTION .................................................................... 5

ARGUMENT ....................................................................................................................... 6

I.    UNDER 26 U.S.C. § 7422, ALL OF PLAINTIFFS' CLAIMS FAIL AS A
      MATTER OF LAW ............................................................................................... 6

      A.    Plaintiffs' Lawsuit is a Tax Refund Suit Governed by 26 U.S.C. § 7422 ............ 7

      B.    Plaintiffs' Complaint Must Be Dismissed Because Plaintiffs Have Failed
            to Comply with the Requirements of § 7422 for Tax Refund Suits ................... 10

II.   ALL OF PLAINTIFFS' CLAIMS ALSO FAIL UNDER THE VOLUNTARY
      PAYMENT DOCTRINE ...................................................................................... 13

III.  PLAINTIFFS' FEDERAL CLAIMS UNDER 47 U.S.C. § 203 ALSO FAIL
      BECAUSE, AS A MATTER OF LAW, SECTION 203 DOES NOT APPLY
      TO DEFENDANTS' ALLEGED CONDUCT ..................................................... 15

      A.    None of the Communications at Issue Here Is Subject to Tariffing Under
            47 U.S.C. § 203 ................................................................................................. 15

      B.    The Prohibitions of Section 203 Do Not Apply to the Collection of FET ......... 18

IV.   PLAINTIFFS' CLAIMS UNDER STATE LAW ARE PREEMPTED BY FEDERAL
      STATUTE AND ALSO FAIL INDEPENDENTLY ON THEIR OWN TERMS .......... 19

      A.    All of Plaintiffs' State-Law Claims Are Preempted by Federal Statute .............. 19

      B.    Each of Plaintiffs' State Law Claims Fails on Its Own Terms ............................ 20

            1.    The Breach of Contract Cause of Action Fails to State a Claim ............. 20

            2.    Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty ................ 22

            3.    Plaintiffs' Conspiracy Claim Must Be Dismissed ................................... 25

CONCLUSION .................................................................................................................. 28

# TABLE OF AUTHORITIES

**Page**

## Cases

*A.T.&.T. Co. v. Central Office Tel., Inc.,*
  524 U.S. 214 (1998)........................................................................................................ 20

*Agron v. Ill. Bell Tel. Co.,*
  325 F. Supp. 487 (N.D. Ill. 1970),
  appeal dismissed, 449 F.2d 906 (7th Cir. 1971) ............................................... 22, 23

*Air España v. Brien,*
  165 F.3d 148 (2d Cir. 1999) ....................................................................................... 14

*Alexander & Alexander of N.Y., Inc. v. Fritzen,*
  503 N.E.2d 102 (N.Y. 1986)........................................................................................ 25

*American Bankers Ins. Group v. United States,*
  408 F.3d 1328 (11th Cir. 2005) ........................................................................... 2, 20

*American Casualty Co. v. Resolution Trust Corp.,*
  839 F. Supp. 282 (D.N.J. 1993) .............................................................................. 21

*Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.,*
  No. 03 Civ. 1537 (MBM), 2003 WL 23018888 (S.D.N.Y. 2003)................................... 23, 24

*Bartley v. United States,*
  123 F.3d 466 (7th Cir. 1997) .................................................................................... 12

*Bastek v. Federal Crop Ins. Corp.,*
  145 F.3d 90 (2d Cir. 1998) ....................................................................................... 13

*Bedford Affiliates v. Sills,*
  156 F.3d 416 (2d Cir. 1998) ..................................................................................... 21

*Bell Atlantic Corp. v. Twombly,*
  127 S. Ct. 1955 (2007).......................................................................................... 25, 26

*Benjamin v. Koeppel,*
  85 N.Y.2d 549 (N.Y. 1995) ....................................................................................... 21

*Board of Education v. Hoek,*
  183 A.2d 633 (N.J. 1962) .......................................................................................... 25

*Board of Pub. Util. Comm'rs v. N.Y. Tel. Co.,*
  271 U.S. 23, 31 (1926)........................................................................................... 22, 23

*Brandon Farms Prop. Owners Ass'n v.
  Brandon Farms Condo. Ass'n,*
  180 N.J. 361 (N.J. 2004) ........................................................................................... 21

*\*Brennan v. Southwest Airlines Co.,*
  134 F.3d 1405 (9th Cir. 1998) ......................................................................... passim

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,*
  98 F.3d 13 (2d Cir. 1996) ......................................................................................... 23

*Bright v. Bechtel Petroleum, Inc.,*
  780 F.2d 766 (9th Cir. 1986) ................................................................................... 21

*Butcher v. Ameritech Corp.,*
  727 N.W.2d 546 (Wis. Ct. App. 2006) ................................................................... 14

## TABLE OF AUTHORITIES
### (Cont'd)

**Page**

*Cahnmann v. Sprint Corp.,*
  133 F.3d 484 (7th Cir. 1998) ........................................................................ 20, 24

*Columbia Marine Servs., Inc. v. Reffet Ltd.,*
  861 F.2d 18 (2d Cir. 1988) .............................................................................. 7, 11

*Conley v. Gibson,*
  355 U.S. 41 (1957) ................................................................................................ 25

*Connecticut Dep't of Pub. Util. Control v. FCC,*
  78 F.3d 842 (2d Cir. 1996) ................................................................................. 16

*Continental Trailways, Inc. v. Director, Div. of Motor Vehicles,*
  509 A.2d 769 (N.J. 1986) ................................................................................... 14

*Delbridge v. Office of the Pub. Defender,*
  569 A.2d 854 (N.J. Super. Ct. Law Div. 1989),
  aff'd sub nom. *A.D. v. Franco,* 687 A.2d 748 (N.J. Super. Ct. App. Div. 1993) ..... 27

*DuPont Glore Forgan Inc. v. AT&T Co.,*
  428 F. Supp. 1297 (S.D.N.Y. 1977), aff'd, 578 F.2d 1367 (2d Cir. 1978) ........ passim

*Eisenman v. Continental Airlines, Inc.,*
  974 F. Supp. 425 (D.N.J. 1997) ....................................................................... 9, 11

*Eli Lilly & Co. v. Roussel Corp.,*
  23 F. Supp. 2d 460 (D.N.J. 1998) ...................................................................... 25

*Freis v. Soboroff,*
  97 Cal. Rptr. 2d 429 (Cal. App. 2000) ............................................................... 21

*Gmurzynska v. Hutton,*
  816 N.Y.S.2d 695, 2005 WL 3955644 (Sup. Ct. 2005) .................................... 27

*Gurrola v. United States,*
  No. 06-3425-SVW(Ex) (C.D. Cal.) ..................................................................... 4

*ICOM Holding, Inc. v. MCI Worldcom, Inc.,*
  238 F.3d 219 (2d Cir. 2001) ............................................................................... 20

*In re Air Transp. Excise Tax Litig.,*
  37 F. Supp. 2d 1133 (D. Minn. 1999) ................................................................ 11

*In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.,*
  469 F. Supp. 2d 1348 (J.P.M.L. 2006) ......................................................... 4, 5, 6

*Jacob Goodman & Co. v. N.Y. Tel. Co.,*
  137 N.Y.S.2d 797 (App. Div.),
  aff'd, 309 N.Y. 258 (1955) ................................................................................. 22

*Jebran v. LaSalle Bus. Credit, LLC,*
  33 A.D.3d 424 (N.Y. App. Div. 2006) ............................................................... 25

*Kaucky v. Southwest Airlines Co.,*
  109 F.3d 349 (7th Cir. 1997) ........................................................................ passim

*Lehman v. USAIR Group, Inc.,*
  930 F. Supp. 912 (S.D.N.Y. 1996) ..................................................... 7, 9, 11, 19

*MBF Clearing Corp. v. Shine,*
  212 A.D.2d 478 (N.Y. App. Div. 1995) ............................................................. 25

# TABLE OF AUTHORITIES
(Cont'd)

Page

*McCaughan v. Mitchell,*
128 Wash. App. 1005, 2005 WL 1406159 (Wash. Ct. App. 2005)..........................................21

*McDonnell Douglas Corp. v. General Telephone Co.,*
594 F.2d 720 (9th Cir. 1979) ...............................................................................22, 24

*\*MCI Worldcom, Inc. v. FCC,*
209 F.3d 760 (D.C. Cir. 2000)...............................................................................17, 18

*Mercury Mach. Import. Corp. v. City of New York,*
144 N.E.2d 400 (N.Y. 1957).........................................................................................14

*Mills v. Everest Reinsurance Co.,*
410 F. Supp. 2d 243 (S.D.N.Y. 2006) ...................................................................21

*Mills v. M.A.B.S.T.O.A.-N.Y.C.T.A.,*
No. 87 CIV. 8497 (LBS), 1998 WL 132848 (S.D.N.Y. 1988)........................11

*Newman v. RCN Telecom Servs., Inc.,*
238 F.R.D. 57 (S.D.N.Y. 2006) .................................................................................14

*\*Orloff v. FCC,*
352 F.3d 415 (D.C. Cir. 2003).................................................................................16, 17

*Paramount Film Distrib. Co. v. New York,*
285 N.E.2d 695 (N.Y. 1972).......................................................................................14

*Quarty v. United States,*
170 F.3d 961 (9th Cir. 1999) .....................................................................................13

*Rosenberg v. United States,*
72 Fed. Cl. 387 (2006) ..................................................................................................5

*\*Sigmon v. Southwest Airlines Co.,*
110 F.3d 1200 (5th Cir. 1997) ..........................................................................passim

*Sprietsma v. Mercury Marine,*
537 U.S. 51 (2002)........................................................................................................21

*Trelleborg, AB v. Frank B. Hall & Co.,*
950 F. Supp. 77 (S.D.N.Y. 1996) ............................................................................21

*Vulcan Soc'y of Westchester Co., Inc. v. Fire Dep't of City of White Plains,*
82 F.R.D. 379, 389 (S.D.N.Y. 1979)......................................................................27

*William Kaufman Org., Ltd. v. Graham & James L.L.P.,*
703 N.Y.S.2d 439 (App. Div. 2000)........................................................................24

*Williams v. Sidley Austin Brown & Wood, LLP,*
824 N.Y.S.2d 759, 2006 WL 2739013 (Sup. Ct. Sept. 22, 2006) ..........................25

## Statutes

26 U.S.C. § 4252...................................................................................................................2

26 U.S.C. § 4291.................................................................................................................23

26 U.S.C. § 7422.........................................................................................................passim

47 U.S.C. § 160...................................................................................................................17

47 U.S.C. § 203.........................................................................................................passim

## TABLE OF AUTHORITIES
(Cont'd)

**Page**

47 U.S.C. § 332.................................................................................................... 15

47 U.S.C. § 415.................................................................................................... 18

### Rules

Fed. R. Civ. P. 8................................................................................................... 25

Fed. R. Civ. P. 12................................................................................................. 25

### Regulations

26 C.F.R. § 49.4251....................................................................................... 20, 23

47 C.F.R. § 20.15................................................................................................. 16

47 C.F.R. § 20.3................................................................................................... 16

47 C.F.R. § 61.3................................................................................................... 18

### Treatises

5 WILLISTON ON CONTRACTS
  (4th ed. 2006).................................................................................................. 21

### Administrative Materials

*In re Implementation of Sections 3(n) and 332 of the Communications Act,
  Regulatory Treatment of Mobile Services, Second Report and Order,*
  9 F.C.C.R. 1411 (1994)................................................................................... 16

*In re Motion of AT&T Corp. to be Reclassified as a Non-Dominant Carrier, Order,*
  11 F.C.C.R. 3271 (1995)................................................................................. 17

*In re Policy and Rules* Concerning *the Interstate, Interexchange Marketplace,
  Implementation of Section 254(g) of the Communications Act of 1934,
  as amended, Second Report and Order,*
  11 F.C.C.R. 20730 (1996).......................................................................... 17, 18

*In re Regulatory Treatment of* LEC *Provision of Interexchange Services
  Originating in the LEC's Local Exchange Area, Second Report and Order,*
  12 F.C.C.R. 15756 (1997).......................................................................... 17, 18

*In re Wallace,*
  6 F.C.C.R. 1618 (1991)................................................................................... 19

IRS Notice 2005-79...................................................................................... 2, 23

IRS Notice 2006-50........................................................................................ 2, 3

IRS Notice 2007-11.................................................................................... 1, 2, 3

*Public Notice,* Common *Carrier Bureau Extends Transition Period for
  Detariffing Consumer Domestic Long Distance Services,*
  16 F.C.C.R. 2906 (2001)................................................................................. 18

Rev. Rul. 79-404,
  1979-2 C.B. 382................................................................................................ 2

## INTRODUCTION

Plaintiffs purport to represent a nationwide class of long-distance telephone subscribers from whom the defendant telecommunications companies (Defendants[1]) allegedly collected federal excise taxes (FET) on long-distance service, and by this suit they seek to hold Defendants liable for complying with the directive of the Internal Revenue Service (IRS) concerning the collection and remittance of such taxes.[2]  Plaintiffs contend that, because the courts ultimately ruled that the IRS was wrong in insisting that long-distance service was taxable, *Defendants should be held liable to repay the sums they collected as FET and remitted to the IRS*.  Congress, however, has expressly provided that any suit to recover sums collected as federal tax — even if the sum was "wrongfully collected" — may *only* be brought against the United States and only after the plaintiffs exhaust administrative remedies.  26 U.S.C. § 7422.  Section 7422 was intended to prevent private companies such as Defendants — who "'did not choose the role of collecting agents'" — from being "'whipsawed'" by legal errors in the IRS's administration of FET.  *Brennan v. Southwest Airlines Co.*, 134 F.3d 1405, 1411 (9th Cir. 1998) (citations omitted).  A unanimous body of precedent has applied this statute to reject claims indistinguishable from those asserted here, *see infra* at 6-13 (collecting cases), and this Court

---

[1] For the sake of simplicity, this Memorandum refers to "Defendants" collectively.  However, many Defendants act primarily or exclusively as holding companies and do not provide telecommunications services to the public.  *See*, *e.g.*, Memorandum of Law in Support of AT&T Inc.'s and BellSouth Corporation's Motion to Dismiss the Amended Complaint at 1 (filed concurrently herewith).  As a result, such Defendants have never had a role in the collection or remittance of the FET and would not be proper parties to this action even if Plaintiffs could state a valid claim.

[2] Defendants note parenthetically that not all services provided by them involved the collection of FET from the ultimate consumers that Plaintiffs purport to represent.  *See*, *e.g.*, IRS Notice 2007-11 (Collins Decl., Ex. C), §§ 6, 7 (noting that, in the context of prepaid telephone cards and prepaid cellular phones, the "holder" (defined as an end consumer) was "not liable for the tax and thus cannot request a credit or refund" with respect to such service).  Of course, to the extent that Defendants did not collect FET from Plaintiffs, there can be no claim, and the complaint therefore seeks recovery only to the extent that FET was collected from Plaintiffs.  *See*, *e.g.*, First Amended Complaint ¶ 37, 39(b), 40.

should likewise dismiss this case in its entirety as barred by § 7422.

Moreover, Plaintiffs' claims are also barred by the "voluntary payment" doctrine, because Plaintiffs paid the FET even though their Complaint alleges that the law was clear that the FET was inapplicable. *See infra* at 13-15. And each of Plaintiffs' federal and state-law causes of action fails for yet additional reasons specific to those claims. *See infra* at 15-27.

## FACTUAL BACKGROUND

I.    **THE IRS ESTABLISHES A REFUND PROCESS FOR FUNDS COLLECTED AS FEDERAL EXCISE TAX ON LONG-DISTANCE AND BUNDLED PHONE SERVICE**

Under the Internal Revenue Code (IRC), "toll telephone service" is subject to FET if, *inter alia*, "there is a toll charge which varies in amount with the distance *and* elapsed transmission time of each individual communication." 26 U.S.C. § 4252(b)(1) (emphasis added). Despite the use of "and" in § 4252(b)(1), the IRS issued a revenue ruling in 1979 concluding that a "long distance telephone call for which the charge varies with elapsed transmission time but not with distance is toll telephone service described in § 4252(b)(1)." IRS Notice 2006-50 (Collins Decl., Ex. A), § 2(c) (citing Rev. Rul. 79-404, 1979-2 C.B. 382). Thus, even as long-distance services shifted to calculating charges based only on time (and not distance), the IRS continued to require remittance of FET on long-distance. More than 20 years later, several circuit courts disagreed with the IRS, *see*, *e.g.*, *American Bankers Ins. Group*, 408 F.3d 1328 (11th Cir. 2005), but in October 2005, the IRS stated that it would continue to litigate this issue and that collectors were "required to pay over the tax to the United States Treasury." IRS Notice 2005-79 (Collins Decl., Ex. B).

After subsequently losing on this issue in four more circuits, however, the IRS announced on May 25, 2006 that it "would no longer litigate this issue." IRS Notice 2006-50, § 1(a). Accordingly, the IRS announced that the FET would no longer apply to "long distance service"

or to "bundled service," *i.e.*, "local and long distance service provided under a plan that does not separately state the charge for the local telephone service." *Id.*, § 3(a), (d); *see also* IRS Notice 2007-11 (Collins Decl., Ex. C), §§ 4, 5 (clarifying definition of "bundled service" for purposes of IRS Notice 2006-50). At the same time, the IRS reaffirmed that FET must still be remitted on "[l]ocal-only service." IRS Notice 2006-50, §§ 3(b), 4(b). To allow telecommunication companies sufficient time to reprogram their billing systems so as to implement the cessation of a tax they had been collecting for decades, the IRS authorized them to continue to collect and pay over FET on long-distance and bundled service billed on or before July 31, 2006. *Id.*, § 4(c). For nontaxable service billed *after* July 31, 2006, the IRS directed collectors "to cease collecting and paying over tax." *Id.*

The IRS also announced that it was establishing a process for taxpayers to request refunds of FET collected on nontaxable services. *See* IRS Notice 2006-50, § 5. Under this process, individual taxpayers could request a refund "on nontaxable service that was billed after February 28, 2003, and before August 1, 2006, only on their 2006 Federal income tax returns." *Id.*, § 5(a)(2). For this time period, taxpayers would have the option of requesting on their 2006 return either a "safe harbor amount," for which no documentation would be required, or "the actual amount of tax they paid" (which must be documented by appropriate records). *Id.*, § 5(a)(3), (c); *see also* IRS Notice 2007-11, § 3 (clarifying safe-harbor amounts available under IRS Notice 2006-50). For those seeking refunds of FET paid on nontaxable service billed before March 1, 2003, refund requests would not be handled on the 2006 tax return but must instead be submitted under the normal administrative procedures. IRS Notice 2006-50, § 5(g)(2).

## II.    A PRIOR SUIT AGAINST TELECOMMUNICATION DEFENDANTS FOR COLLECTING FET IS VOLUNTARILY DISMISSED

As the existence of this MDL proceeding shows, Plaintiffs' suit here was not the first

case to be filed challenging the collection of FET on telecommunications services.  At least five separate prior lawsuits were filed as putative class actions seeking relief *against the United States* in connection with the assertedly unlawful collection of FET.  *See In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 469 F. Supp. 2d 1348 (J.P.M.L. 2006) (*In re Long-Distance FET Litig. I*).  That the United States was sued in each of those suits is unsurprising, inasmuch as the IRC explicitly forbids a tax refund suit to be brought against anyone other than the United States.  *See* 26 U.S.C. § 7422(f)(1).  In one of the five suits, however, the plaintiffs also sought to assert claims against certain telecommunications companies as well.  *In re Long-Distance FET Litig. I*, 469 F. Supp. 2d at 1349-50 (discussing *Gurrola v. United States*, No. 06-3425-SVW(Ex) (C.D. Cal.)).  The *Gurrola* plaintiffs framed their FET allegations against the telecommunication defendants as purported violations of both state and federal law.  (Collins Decl., Ex. D.)

In June 2006, the district court denied the *Gurrola* plaintiffs' *ex parte* application for a temporary restraining order (TRO), which had sought to prevent the Government from receiving, and the telecommunications companies from paying over, any sums that had been collected as FET on long-distance or bundled telephone service.  *See* Order Denying Plaintiffs' Ex Parte Application for a Temporary Restraining Order, *Gurrola v. United States*, No. 06-3425-SVW(Ex) (C.D. Cal.), Docket No. 30 (Collins Decl., Ex. E) (*Gurrola* TRO Order) at p. 3.  The court found (*inter alia*) that the *Gurrola* plaintiffs had failed to show a likelihood of success on the merits.  *Id.* at 8.  Notwithstanding the *Gurrola* plaintiffs' efforts to fashion their claims against the telecommunications companies as claims about "falsely represent[ing] [to] the Plaintiffs and the sub-class on their bills that the 3% Tax is a tax" (Collins Decl., Ex. D at ¶ 129), the district court held that (1) the *Gurrola* action was "essentially a tax refund suit" within the

meaning of the IRC, and (2) the *Gurrola* plaintiffs had failed to comply with the requirements

for such suits in 26 U.S.C. § 7422.  *Gurrola* TRO Order at p. 8.  The *Gurrola* plaintiffs thereafter

voluntarily dismissed all of their claims against the private telecommunications defendants

except a single count under California state law.  (Collins Decl., Exs. F, G.)

The Judicial Panel on Multidistrict Litigation subsequently ordered that the three pending

district court cases[3] against the United States (including *Gurrola*) be centralized in this Court for

coordinated pretrial proceedings, but the Panel "separated and remanded" back to the Central

District of California the "unique" *Gurrola* state-law claim against the private

"telecommunication provider defendants."  *In re Long-Distance FET Litig. I*, 469 F. Supp. 2d at

1350.  The *Gurrola* plaintiffs thereupon dismissed with prejudice their claims against the private

telecommunications defendants.  *See* Collins Decl., Ex. H.

## III.  **PLAINTIFFS FILE THIS ACTION**

On October 30, 2006, Plaintiffs filed this lawsuit seeking to hold Defendants liable for

the "Communications Excise Tax[] that Defendants improperly and illegally collected and

remitted to the Internal Revenue Service."  (FAC ¶ 47.)  Unlike the prior suits, Plaintiffs'

complaint does *not* name the United States and seeks no relief against it.

The gravamen of Plaintiffs' operative First Amended Complaint (FAC) is that

Defendants "were not permitted to remit to the Internal Revenue Service the money they

collected under the guise of the Communications Excise Tax once said tax was no longer

applicable to their long distance telephone services."  (FAC ¶ 63.)  Accordingly, the FAC

explicitly requests that Plaintiffs and the Class be awarded "the full amount collected … and

---

[3] The other two cases had been filed in the Court of Federal Claims, an Article I court, and one of those cases had already been dismissed due to the plaintiffs' failure to comply with the requirements of 26 U.S.C. § 7422.  *In re Long-Distance FET Litig. I*, 469 F. Supp. 2d at 1349 n.1; *see also Rosenberg v. United States*, 72 Fed. Cl. 387 (2006) (dismissing case for failure to comply with the exhaustion-of-remedies requirement of § 7422).

remitted … under the guise of the Communications Excise Tax."  (FAC ¶ 64, citations omitted.)

Although Plaintiffs thus seek to recover sums collected as FET and paid over to the IRS, they do not assert any cause of action arising under the IRC.  Instead, Plaintiffs contend that they can fit their claims for recovery of allegedly improperly collected FET into a variety of more general federal and state law causes of action.  Specifically, Plaintiffs contend that sums collected as FET may be recovered under (1) a provision of the federal Communications Act of 1934 that addresses a telecommunications carrier's "*compensation* for such communication, or for any service in connection therewith," 47 U.S.C. § 203(c) (emphasis added) (*see* FAC ¶ 62 (first cause of action)); (2) a related provision of the same Act that addresses a telecommunications carrier's "charges *for itself and its connecting carriers*," *id*., § 203(a) (emphasis added) (*see* FAC ¶¶ 68-69 (second cause of action)); and (3) state common law theories of breach of contract, breach of fiduciary duty, and conspiracy (*see* FAC ¶¶ 70-102 (third, fourth, and fifth causes of action)).  Plaintiffs purport to assert all of these claims on behalf of a nationwide class of "American taxpayers" who have "been damaged by Defendants' illegal and improper collection of monies under the guise of remittance of the Communications Excise Tax."  (FAC ¶¶ 37-38.)

On April 19, 2007, the Judicial Panel on Multidistrict Litigation ordered the instant case transferred to the MDL proceeding pending in this Court.  *See In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, MDL No. 1798, slip op. at 2 (J.P.M.L. Apr. 19, 2007) (Collins Decl., Ex. I).

## ARGUMENT

I.  **UNDER 26 U.S.C. § 7422, ALL OF PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW**

Plaintiffs' complaint is barred in its entirety by 26 U.S.C. § 7422, as definitively

construed by every federal circuit and district court to have considered the issue. *See, e.g.,*

*Brennan v. Southwest Airlines Co.*, 134 F.3d 1405, 1412 (9th Cir.), *amended*, 140 F.3d 849 (9th

Cir. 1998); *Sigmon v. Southwest Airlines Co.*, 110 F.3d 1200, 1203-04 (5th Cir. 1997); *Kaucky v.*

*Southwest Airlines Co.*, 109 F.3d 349, 351-52 (7th Cir. 1997); *Lehman v. USAIR Group, Inc.*,

930 F. Supp. 912, 915 (S.D.N.Y. 1996); *DuPont Glore Forgan Inc. v. AT&T Co.*, 428 F. Supp.

1297, 1302-03 (S.D.N.Y. 1977), *aff'd*, 578 F.2d 1367 (2d Cir. 1978); *see also Columbia Marine*

*Servs., Inc. v. Reffet Ltd.*, 861 F.2d 18, 22 (2d Cir. 1988) (same in dicta). As this unbroken line

of precedent confirms, § 7422's express statutory cause of action *against the United States* (after

the exhaustion of administrative remedies) "provides the exclusive remedy" for any suit,

however styled, that seeks recovery of "the erroneous or illegal collection of taxes" (*Sigmon*, 110

F.3d at 1204) or sums that were "wrongfully collect[ed] ... as a tax" (*Brennan*, 134 F.3d at

1410). Because Plaintiffs' complaint seeks recovery for sums that were allegedly wrongfully

collected as FET (*e.g.*, FAC ¶¶ 1, 47, 63-64), the suit is prohibited in its entirety by § 7422.

**A.**    **Plaintiffs' Lawsuit is a Tax Refund Suit Governed by 26 U.S.C. § 7422**

In pertinent part, § 7422 of the IRC provides:

> (a) *No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected*, or of any penalty claimed to have been collected without authority, *or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary*, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.
>
> ...
>
> (f)(1) *A suit or proceeding referred to in subsection (a) may be maintained only against the United States* ....

26 U.S.C. § 7422(a), (f)(1) (emphasis added). By its plain terms, this section sweeps broadly to

prohibit any suit, whether brought under federal or state law, *that is described in § 7422(a)*

unless the plaintiff (1) has exhausted administrative remedies as required in § 7422(a) and

(2) has sued only the United States, as required by § 7422(f)(1).[4]  Here, Plaintiffs' complaint

makes clear on its face that this suit falls within the express terms of § 7422(a), as that section

has been consistently construed, and Plaintiffs' suit therefore must be dismissed unless it

complies with the requirements of § 7422.

    Subsection (a) of § 7422 broadly defines the scope of the suits that are subject to the

exclusive statutory remedy provided in that section.  Specifically, § 7422(a) applies to *any* suit

"*for the recovery of any internal revenue tax* alleged to have been erroneously or illegally

assessed or collected, … or *of any sum alleged to have been* excessive or *in any manner*

*wrongfully collected*."  26 U.S.C. § 7422(a) (emphasis added).  Plaintiffs' complaint, on its face,

falls squarely within the italicized language because it explicitly seeks recovery for "the full

amount collected … and remitted … under the guise of the Communications Excise Tax."  (FAC

¶ 64 (citations omitted).)  Indeed, the complaint asserts no less than 25 times that the sums

sought to be recovered were collected "under the guise of the Communications Excise Tax."

(FAC ¶¶ 11, 37, 39(b), 39(c), 39(d), 39(e), 39(i), 39(k), 40, 42, 47, 59, 62, 63, 64, 69, 74, 79, 80,

84, 85, 86, 96, 97, 98, 99.)  Likewise, the complaint repeatedly affirms that all of the sums

collected as FET by Defendants have been "remitted to the Internal Revenue Service" (and are

therefore in the possession of the United States).  (FAC ¶ 47; *see also* FAC ¶¶ 2, 4, 5, 8, 11, 37,

39(a), 39(c), 39(d), 47, 63, 64, 79.)  As such, Plaintiffs' complaint plainly falls within § 7422(a)

because it is an action for the recovery of "internal revenue tax[es] alleged to have been

---

[4] *See* 26 U.S.C. § 7422(a) ("*no suit or proceeding*" as described in § 7422(a) "shall be
maintained *in any court*" without exhausting administrative remedies) (emphasis added); *id.*,
§ 7422(f)(1) (any suit "*referred to in subsection (a)* may be maintained only against the United
States") (emphasis added); *DuPont Glore*, 428 F. Supp. at 1302-03 ("it has long been held,
without qualification, that '[t]he remedy so given [by the IRC] is exclusive, and no other remedy
can be substituted for it'"); *see also*, *e.g.*, *Brennan*, 134 F.3d at 1409 (same); *Sigmon*, 110 F.3d at
1204 (same).

erroneously or illegally assessed or collected" or "sum[s] alleged to have been … in any manner wrongfully collected."  26 U.S.C. § 7422(a).

Plaintiffs apparently believe that they can avoid § 7422(a) by alleging that the sums collected as FET and remitted to the IRS "were not properly subject to the Communications Excise Tax" (FAC ¶ 59), but a unanimous body of precedent holds to the contrary.  *See*, *e.g.*, *Brennan*, 134 F.3d at 1410 (the "unambiguous language" of § 7422 "dooms [this] argument"); *Sigmon*, 110 F.3d at 1203; *Kaucky*, 109 F.3d at 350.  As the *Brennan* court noted, 134 F.3d at 1410, the sweeping language of § 7422(a) expressly reaches beyond suits for the "recovery of any internal revenue *tax*" to also reach suits for the recovery of "any *sum* alleged to have been … *in any manner* wrongfully collected."  26 U.S.C. § 7422(a) (emphasis added).  Because "a suit to recover either a 'tax' *or a 'sum'* constitutes a suit for a tax refund" within the scope of § 7422(a), the statute necessarily "means that if someone wrongfully collects money as a tax, then a suit to recover the sum constitutes a tax refund suit, *even if the sum did not literally constitute an 'internal revenue tax*.'"  *Brennan*, 134 F.3d at 1410 (emphasis added).

This statutory provision accordingly applies "to *any* suit for *any* sum wrongfully collected in *any* manner" as a putative tax.  *Brennan*, 134 F.3d at 1410 n.7 (original emphases); *see also Sigmon*, 110 F.3d at 1203 (§ 7422 barred suit against airline alleged to have unlawfully collected sums as excise "tax" after the statutory authority for imposing the tax had lapsed); *Kaucky*, 109 F.3d at 351-52 (same); *Eisenman v. Continental Airlines, Inc.*, 974 F. Supp. 425, 431 (D.N.J. 1997) (rejecting a contrary argument as "overly rigid and formalistic" and noting that "every case involving claims similar to this one … has characterized the action as a 'tax refund' case"); *Lehman*, 930 F. Supp. at 916 (characterizing such suits as seeking "*disguised refunds of the taxes*") (emphasis added).  Were it otherwise, and § 7422 applied only to "proper" taxes, then a

taxpayer could "evade the strictures of § 7422 every time an IRS collection agent collected a tax without authority" — a result that would render § 7422 effectively meaningless, as "almost *every* citizen who seeks a tax refund alleges that the tax was collected without authority." *Brennan*, 134 F.3d at 1410; *see also DuPont Glore*, 428 F. Supp. at 1307 (where "the gravamen of the complaint is merely that a tax was collected which was not owed, and where the money was duly paid to the government by the collecting agent, allowing the taxpayer to sue the collecting agent when he collected the tax 'erroneously or illegally' would unduly interfere with the orderly administration of the internal revenue laws").

Accordingly, Plaintiffs' complaint is a tax refund suit within the scope of § 7422(a), and it therefore cannot be maintained unless Plaintiffs comply with the requirements of that statute.

### B.    Plaintiffs' Complaint Must Be Dismissed Because Plaintiffs Have Failed to Comply with the Requirements of § 7422 for Tax Refund Suits

Where, as here, the complaint constitutes a tax refund suit within the scope of § 7422(a), the suit cannot be maintained unless the plaintiff (1) has first exhausted administrative remedies, as required by 26 U.S.C. § 7422(a), and (2) then brings suit "only against the United States," as required by 26 U.S.C. § 7422(f)(1).  Plaintiffs have not complied with either requirement, and this suit must therefore be dismissed.

With respect to the latter (and more fundamental) requirement that tax refund suits only be maintained against the United States, the courts have consistently held that the language of § 7422(f)(1) unambiguously directs that "taxpayers may sue *only* the United States, and not its collection agents." *Brennan*, 134 F.3d at 1412 (emphasis added).  Because "section 7422(f) means precisely what it says" — that "plaintiffs may maintain a tax refund claim only against the government and not against collecting agents" — Plaintiffs are statutorily barred from suing the private companies that collected the sums in question.  *DuPont Glore*, 428 F. Supp. at 1303; *see*

*also*, *e.g.*, *Brennan*, 134 F.3d at 1411-12 (same); *Kaucky*, 109 F.3d at 351 (if a suit is

"necessarily based on a claim that the taxes were collected in violation of law," then under

§ 7422(f)(1), "the only proper defendant is the United States"); *Eisenman*, 974 F. Supp. at 435

("As the case law makes clear, Section 7422 provides the exclusive remedy for individuals

seeking tax refunds, and under that statute, the only proper defendant is the United States."); *see

also Columbia Marine*, 861 F.2d at 22 (a tax refund suit "may be maintained only against the

United States").

      This statutory restriction against suing private defendants is designed to ensure, *inter alia*,

that private companies — who "'did not choose the role of collecting agents'" — are not

"'whipsawed'" by legal errors in the IRS's administration of FET. *Brennan*, 134 F.3d at 1411

(citations omitted). Every federal court that has considered this issue is in accord. *See*, *e.g.*,

*Sigmon*, 110 F.3d at 1203 ("Section 7422 protects from lawsuits private entities … that are

required by statute to collect taxes for the government under threat of criminal penalty for failure

to do so."); *Mills v. M.A.B.S.T.O.A.-N.Y.C.T.A.*, No. 87 CIV. 8497 (LBS), 1988 WL 132848, at

*2 (S.D.N.Y. 1988) (same); *DuPont Glore*, 428 F. Supp. at 1306 (same).[5] It consequently

follows that § 7422, by "provid[ing] the exclusive remedy in tax refund suits" and *restricting* that

remedy to suits against the United States, has necessarily "preempt[ed]" any claims against these

private defendants, regardless of whether they are asserted under federal or state law. *Brennan*,

134 F.3d at 1409; *Sigmon*, 110 F.3d at 1204; *Kaucky*, 109 F.3d at 353; *see also Lehman*, 930

F. Supp. at 916 ("The state law claims against the [defendants] are expressly pre-empted by

§ 7422 which prohibits such suits for disguised refunds of the taxes.") (emphasis added).

---

[5] In fact, because Plaintiffs here concede that all of the funds in question *have* been paid over to
the IRS, *see supra* at 8, the strictures of § 7422 unquestionably apply. *See In re Air Transp.
Excise Tax Litig.*, 37 F. Supp. 2d 1133, 1137 (D. Minn. 1999) (agreeing that § 7422 applies
where funds were "actually paid to the government") (emphasis omitted); *compare Kaucky*, 109
F.3d at 352 (refusing to limit § 7422 to only cases where the sums have been paid to the IRS).

Because Plaintiffs' suit has not been brought "only against the United States" — indeed, it does not name the United States at all — it must be dismissed. 26 U.S.C. § 7422(f)(1).

Plaintiffs have likewise failed to comply with the clear statutory requirement that they first exhaust their administrative remedies: "*No suit or proceeding shall be maintained in any court* for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, … or of any sum alleged to have been excessive or in any manner wrongfully collected, *until a claim for refund or credit has been duly filed with the Secretary*…." 26 U.S.C. § 7422(a) (emphasis added). Section 7422(a)'s express language thus establishes that "a taxpayer who seeks a refund of federal taxes must first make an administrative refund claim with the Secretary." *Sigmon*, 110 F.3d at 1203; *see also Brennan*, 134 F.3d at 1412 (same).

The animating rationale of the exhaustion requirement is clear: "[W]hat emerges from cases, statutes and legislative history alike is a purpose to channel all tax litigation into the structure provided by the Code." *Dupont Glore*, 428 F. Supp. at 1303. By forcing all claims first into administrative channels, Congress acted to "afford the Internal Revenue Service an opportunity to investigate tax claims and resolve them without the time and expense of litigation." *Id.* at 1301. To allow a non-exhausted lawsuit to proceed in court would therefore directly frustrate "Congress' desire as expressed in § 7422." *Brennan*, 134 F.3d at 1411 (§ 7422 is designed to let the government resolve taxpayer disputes while avoiding "the 'cumbersome and expensive machinery' of the courts") (citation omitted). Because "Congress intended the courts to play a role only after the IRS has been given an opportunity to resolve the taxpayer's claims," *Sigmon*, 110 F.3d at 1206, Plaintiffs' failure to exhaust their administrative remedies independently requires that the FAC be dismissed.[6]

---

[6] Plaintiffs have not alleged that exhausting their administrative remedies would be "futile," and any such claim would fail as a matter of law. *Bartley v. United States*, 123 F.3d 466, 469 (7th

\*   \*   \*

In accord with the unanimous conclusion of every other court to address this issue, this

Court should dismiss the complaint because Plaintiffs "failed to exhaust their administrative

remedies and sued the wrong party."  *Brennan*, 134 F.3d at 1412.

## II.    ALL OF PLAINTIFFS' CLAIMS ALSO FAIL UNDER THE VOLUNTARY PAYMENT DOCTRINE

As noted above, the gravamen of the complaint is that Defendants "*collect[ed] and

remit[ted]* … monies under the guise of the Communications Excise Tax," even though "the law

clearly indicated that [the FET] was not applicable to flat-rate long distance telephone services."

(FAC ¶¶ 2, 84, emphasis added.)  Because Plaintiffs were assertedly "damaged" only by virtue

of having "paid" their bills (*e.g.*, FAC ¶ 37), it follows that the complaint necessarily rests on the

correlative allegation that Plaintiffs also "*paid*" the FET in question, even though "the law

clearly indicated that [the FET] was not applicable to flat-rate long distance telephone services."

(FAC ¶¶ 37, 84.)  By making those allegations, however, Plaintiffs plead themselves out of

court:  they demonstrate that their claims are barred by the voluntary payment doctrine.

The "voluntary payment doctrine," which is recognized by federal law as well as state

law (including the laws of New York and New Jersey[7]), holds that "[w]here a party pays an

illegal demand with a full knowledge of all the facts which render such demand illegal, without

---

Cir. 1997) ("[I]t was necessary for the taxpayer to have filed a claim as required by the statute notwithstanding the purported futility of the claim."); *see also Bastek v. Federal Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir. 1998) ("if the statute at issue explicitly mandates exhaustion as a prerequisite to judicial review, it must be enforced"); *Quarty v. United States*, 170 F.3d 961, 973 (9th Cir. 1999) ("An anticipated rejection of [a] claim, which the statute contemplates, is not a ground for suspending its operation.") (internal quotations and citations omitted).  Moreover, any claim of futility would fail in light of the IRS's unequivocal agreement, in Notice 2006-50, that (1) it *will* repay FET collected for service billed since March 2003; and (2) it *will* process (and may grant or deny) refund claims, in the ordinary course, for FET collected prior to March 2003.

[7] The complaint alleges that Plaintiffs are all residents of New York and New Jersey (FAC ¶¶ 20-25), and their state-law claims therefore presumably rest on the laws of those States.

an immediate and urgent necessity therefor[] … such payment must be deemed voluntary and cannot be recovered back." *Air España v. Brien*, 165 F.3d 148, 153 (2d Cir. 1999) (internal quotation marks omitted).[8]  This rule has been applied with full force in the area of taxation.[9]  Indeed, a state appellate court recently applied the voluntary payment doctrine to affirm the dismissal of a complaint indistinguishable from that here, one which faulted a telephone company for collecting a supposedly inapplicable sales tax.  *See Butcher v. Ameritech Corp.*, 727 N.W.2d 546, 551-57 (Wis. Ct. App. 2006).

It makes no difference whether, when plaintiffs paid the FET, they knew what they now (with 20/20 hindsight) profess to know about the FET's lawfulness.  The complaint unambiguously states that Plaintiffs paid the sums in question even though "*the law* clearly indicated that [the FET] was not applicable to flat-rate long distance telephone services."  (FAC ¶¶ 2, 84, emphasis added.)  Voluntary payment cannot be recovered merely because it resulted from a mistake of law:  "ignorance or mistake of law by one who voluntarily pays a tax illegally assessed furnishes no ground of recovery."  *New Jersey Hosp. Ass'n v. Fishman*, 661 A.2d at 847-48 (internal quotation marks and brackets omitted); *see also*, *e.g.*, *Mercury Mach. Import. Corp. v. City of New York*, 144 N.E.2d 400, 403-04 (N.Y. 1957) ("Regardless of whether some or all of these plaintiffs anticipated or failed to anticipate [new authority declaring a tax

_____

[8] *See also Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 78 (S.D.N.Y. 2006) ("The voluntary payment doctrine bars recovery of payments voluntarily made 'with full knowledge of the facts.'") (citation omitted); *New Jersey Hosp. Ass'n v. Fishman*, 661 A.2d 842, 847 (N.J. Super. Ct. App. Div. 1995) ("'[W]hen money is demanded as a legal right, and it is paid without compulsion, and with a full comprehension of the facts, the money so paid cannot be reclaimed by a suit at law.'") (citation omitted).

[9] *See*, *e.g.*, *Paramount Film Distrib. Co. v. New York*, 285 N.E.2d 695, 697 (N.Y. 1972) (New York cases "conform generally with distinctions made throughout the country between voluntary and involuntary payments of taxes or fees later declared void, and the necessity for protest in the case of voluntary payments"); *Continental Trailways, Inc. v. Director, Div. of Motor Vehicles*, 509 A.2d 769, 781 (N.J. 1986) ("in the absence of statutory authority, taxes voluntarily, although erroneously, paid even under an unconstitutional statute cannot be refunded").

unlawful], we think that the Appellate Division erred in … requir[ing] refunding of taxes on the

ground of mistake of law in instances such as the present, where there has been neither protest

nor duress.").  All of Plaintiffs' claims therefore fail under the voluntary payment doctrine.

III.    **PLAINTIFFS' FEDERAL CLAIMS UNDER 47 U.S.C. § 203 ALSO FAIL BECAUSE, AS A MATTER OF LAW, SECTION 203 DOES NOT APPLY TO DEFENDANTS' ALLEGED CONDUCT**

Plaintiffs' sole federal claims in this case are based on two subsections of § 203 of the

Communications Act of 1934 (hereafter "the Act"), 47 U.S.C. § 203.  Specifically, Plaintiffs'

first cause of action alleges that Defendants' collection of FET violated § 203(c)(1)'s prohibition

on any carrier charging or collecting "compensation" for a communication that differs from the

charges specified in the tariffs filed by that carrier with the Federal Communications

Commission (FCC).  (FAC ¶ 62.)[10]  Plaintiffs' second cause of action alleges that Defendants

violated § 203(a) by failing to file tariffs that reflected the inapplicability of the FET.  (FAC

¶ 69.)  These claims fail as a matter of law for two simple reasons:  (1) none of the

communications that form the basis of the complaint is subject to tariffing under § 203; and (2)

even if they were, § 203's prohibitions only apply to the *compensation* charged by a carrier, and

not any taxes collected by it.

A.    **None of the Communications at Issue Here Is Subject to Tariffing Under 47 U.S.C. § 203**

The complaint asserts that Plaintiffs receive "long-distance telephone services" from

certain Defendants, without specifying whether the services are land-line or wireless services.

(FAC ¶¶ 20-25.)  Either way, the communications are not covered by § 203 as a matter of law.

With respect to wireless services, Congress in 1993 amended § 332 of the Act so as to

---

[10] Plaintiffs further contend that the remittance of FET to the IRS violated § 203(c)(2)'s prohibition on "remit[ting]" any portion of the charges specified in the tariff.  (FAC ¶ 63.)

authorize the FCC to "specify by regulation" that certain provisions of Title II of the Act (including § 203) shall be "inapplicable" to "commercial mobile service" or to a "person engaged in the provision" of such service.  47 U.S.C. § 332(c)(1); *see also Connecticut Dep't of Pub. Util. Control v. FCC*, 78 F.3d 842, 846 n.1 (2d Cir. 1996) (§ 332 gives the FCC "authority to specify that certain types of federal regulation, including tariff filing requirements, would be inapplicable" to commercial mobile service).  Wireless service constitutes "commercial mobile service" within the meaning of § 332,[11] and since 1994 the FCC has by regulation exempted wireless providers from the tariffing requirements of § 203.  *See* 47 C.F.R. § 20.15(a), (c) (omitting § 203 from the provisions of Title II that apply to wireless providers and instead directing that they "shall not file tariffs"); *see also Orloff v. FCC*, 352 F.3d 415, 418-19 (D.C. Cir. 2003) ("Congress gave the Commission authority to render § 203 inapplicable to [wireless service] and, in 1994, the Commission exercised that authority") (citing 47 C.F.R. § 20.15); *Connecticut Dep't of Pub. Util. Control*, 78 F.3d at 846 n.1 (same); *see generally In re Implementation of Sections 3(n) and 332 of the Communications Act, Regulatory Treatment of Mobile Services, Second Report and Order*, 9 F.C.C.R. 1411, 1418 (1994) (*Second CMRS Report and Order*) ("[W]e forbear from imposing any tariff filing obligations upon [wireless] providers.").[12]

Because the FCC since 1994 has expressly directed that wireless carriers "shall not file

---

[11] *See Connecticut Dep't of Pub. Util. Control*, 78 F.3d at 845 (cellular telephone service falls within the definition of "commercial mobile radio service," which "includes all mobile services operated for profit that solicit for subscribers and are interconnected with the public switched network, which is the traditional land-line telephone service") (citing 47 U.S.C. §§ 332 (d)(1) & (2)); *see also* 47 C.F.R. § 20.3 (defining "commercial mobile radio service").

[12] In exempting wireless carriers from filing tariffs, the FCC found that "market forces are generally sufficient to ensure the lawfulness of rate levels, rate structures, and terms and conditions of service set by carriers who lack market power" in the wireless market, and that "enforcement of Section 203 is not necessary" to ensure that such charges "are just and reasonable."  *Second CMRS Report and Order*, 9 F.C.C.R. at 1478.

tariffs" for long-distance service and "shall cancel" any previously filed tariffs governing such service, 47 C.F.R. § 20.15(c), Plaintiffs' claims under the tariffing provisions of § 203 necessarily fail as a matter of law.  Defendants cannot have violated § 203's requirements concerning adherence to tariff schedules, and the disclosures to be made in such schedules, when the FCC has directed that "[wireless] providers *do not file tariffs*," *Orloff*, 352 F.3d at 419 (emphasis added), and wireless carriers therefore have not done so since 1994, *id.*  Because Plaintiffs' own allegations confirm that their claims (if any) arose at the earliest in 1997 (FAC ¶ 52), *i.e.*, after the de-tariffing of wireless service, Plaintiffs' § 203 claims based on such service fail in their entirety as a matter of law.

To the extent that Plaintiffs' § 203 claims are instead based on *land-line* service, they likewise fail as a matter of law, and for similar reasons.  In 1996, Congress added § 10 to the Communications Act, which requires the FCC to "forbear from applying any regulation or any provision" of the Act to a "telecommunications carrier" if three specified conditions are met.  47 U.S.C. § 160(a).[13]  In October 1996, the FCC found those conditions satisfied with respect to the filing of tariffs under § 203 by long-distance carriers providing long-distance service, and the FCC therefore *prohibited* such carriers from filing § 203 tariffs for long-distance service (also called "interstate interexchange service").[14]  Under this ruling, all so-called "nondominant" carriers — including each and every wireline defendant in this case[15] — are no longer even

---

[13] The conditions are that "(1) enforcement of such regulation or provision is not necessary to ensure that the charges, practices, classifications, or regulations by, for, or in connection with that telecommunications carrier or telecommunications service are just and reasonable and are not unjustly or unreasonably discriminatory; (2) enforcement of such regulation or provision is not necessary for the protection of consumers; and (3) forbearance from applying such provision or regulation is consistent with the public interest."  47 U.S.C. § 160(a)(1)-(3).

[14] *See In re Policy and Rules Concerning the Interstate, Interexchange Marketplace, Implementation of Section 254(g) of the Communications Act of 1934, as amended, Second Report and Order*, 11 F.C.C.R. 20730, 20732-33 (1996) (*FCC Forbearance Order*).

[15] Since 1995, the FCC has classified all long-distance providers (including the Defendants in

*permitted* to tariff the services at issue in this action:

> "[W]e conclude that the statutory forbearance criteria in Section 10 are met for the Commission to no longer require *or allow* nondominant interexchange carriers to file tariffs pursuant to Section 203 for their interstate, domestic, interexchange services…. We therefore order all nondominant interexchange carriers to cancel their tariffs for interstate, domestic, interexchange services within nine months from the effective date of this Order."

*FCC Forbearance Order*, 11 F.C.C.R. at 20732-33 (emphasis added). This prohibition on filing tariffs has been fully effective since 2001.[16]

Just as with the provision of wireless service, Defendants cannot possibly have violated § 203's tariffing requirements when those requirements *are not even applicable* to them in the first place. Because the de-tariffing has been in effect since 2001 and actions under the Act are subject to a two-year statute of limitations, 47 U.S.C. § 415, Plaintiffs' claims under § 203 are barred in their entirety as a matter of law.

### B.    The Prohibitions of Section 203 Do Not Apply to the Collection of FET

Plaintiffs' claims under § 203 fail for the additional reason that the prohibitions on which Plaintiffs rely do not apply to the collection of sums as FET.

By its terms, § 203(c)(1) only prohibits the charging or collecting of "*compensation*" for a communication that is different from the "charges specified" in the applicable tariff schedule.

---

this action) as "nondominant" carriers. *See In re Motion of AT&T Corp. to be Reclassified as a Non-Dominant Carrier*, *Order*, 11 F.C.C.R. 3271, 3271 (1995); *see also In re Regulatory Treatment of LEC Provision of Interexchange Services Originating in the LEC's Local Exchange Area*, *Second Report and Order*,12 F.C.C.R. 15756, 15807 & n.239 (1997); *id.* at 15802 (classifying affiliates of the Bell Operating Companies that comply with § 272 of the Communications Act, 47 U.S.C. § 272, as nondominant); *see generally MCI Worldcom, Inc. v. FCC*, 209 F.3d 760, 762-63 (D.C. Cir. 2000).

[16] The Order was stayed pending proceedings before the Court of Appeals for the District of Columbia Circuit but became effective after that Court rejected a petition for review. *See MCI Worldcom*, 209 F.3d at 764. The FCC then implemented (and subsequently extended) a transition period giving carriers until the following year to comply fully. *See Public Notice, Common Carrier Bureau Extends Transition Period for Detariffing Consumer Domestic Long Distance Services*, 16 F.C.C.R. 2906, 2907 (2001) (extending transition period to July 31, 2001).

47 U.S.C. § 203(c) (emphasis added).  Likewise, the disclosure obligation imposed on a carrier by § 203(a) applies only to "charges *for itself and its connecting carriers*."  *Id.*, § 203(a) (emphasis added).  Because the collection and remittance of FET is not "compensation" to the carrier or a "charge for itself," neither provision is applicable here.  *See also* 47 C.F.R. § 61.3(j) (defining "charges" as "[t]he price for service").[17]  Indeed, the FCC has explicitly confirmed that "[f]ederal excise taxes and sales taxes are taxes on the end user, not on the carrier," and hence "those taxes are not an expense of the carrier in doing business in the state, and *are not tariffed*." *In re Wallace*, 6 F.C.C.R. 1618, 1619 n.8 (1991) (emphasis added).  Accordingly, even if 47 U.S.C. § 203's tariffing obligations otherwise applied, the particular provisions of § 203 invoked here do not, as a matter of law, impose any obligation with regard to FET.

IV.    **PLAINTIFFS' CLAIMS UNDER STATE LAW ARE PREEMPTED BY FEDERAL STATUTE AND ALSO FAIL INDEPENDENTLY ON THEIR OWN TERMS**

   A.    **All of Plaintiffs' State-Law Claims Are Preempted by Federal Statute**

   As described above, all of Plaintiffs' claims — including their state-law claims — are squarely preempted by 26 U.S.C. § 7422:  "the IRC provides the exclusive remedy … and thus preempts state-law claims that seek tax refunds."  *Brennan*, 134 F.3d at 1409; *see also*, *e.g.*, *Sigmon*, 110 F.3d at 1204 ("The exclusive remedy provided by the Internal Revenue Code thus preempts the appellants' state-law claims against a private entity."); *Kaucky*, 109 F.3d at 351 ("federal law creates an exclusive remedy … displacing any remedy that the states may have created"); *Lehman*, 930 F. Supp. at 916 ("The state law claims against the airlines are expressly preempted by § 7422 which prohibits such suits for disguised refunds of the taxes.").

   In addition, to the extent that Plaintiffs were correct in contending that 47 U.S.C. § 203 is

---

[17] Section 203(c)(2) likewise only applies to the remittance of "any portion of the *charges*" specified in a tariff schedule.  47 U.S.C. § 203(c)(2) (emphasis added).

- 19 -

applicable here, *but see supra* at 15-19, their state-law claims would then be preempted by the filed-rate doctrine. *See A.T.&T. Co. v. Central Office Tel., Inc.*, 524 U.S. 214, 221-26 (1998) (applying the "century-old 'filed rate doctrine'" to hold that § 203 preempted state-law contract and tort claims based on alleged contracts that touched subjects addressed by tariffs filed under § 203); *accord ICOM Holding, Inc. v. MCI Worldcom, Inc.*, 238 F.3d 219, 222 (2d Cir. 2001); *see also Cahnmann v. Sprint Corp.*, 133 F.3d 484, 488-90 (7th Cir. 1998) (holding fraud claim preempted because it simply recharacterized a preempted contract claim).

### B.    Each of Plaintiffs' State Law Claims Fails on Its Own Terms

#### 1.    The Breach of Contract Cause of Action Fails to State a Claim

Plaintiffs' third cause of action asserts that "Defendants' contracts with Plaintiffs … stated that Defendants would collect and remit applicable excise taxes"; that the FET is not a "legitimate, undisputed tax"; and that collection of the FET therefore "represents a clear breach of Defendants' contracts."  (FAC ¶¶ 71, 72, 74.)  This claim fails for at least two reasons.

*First*, to the extent that Defendants collected FET from Plaintiffs, they did so because federal regulations *required* them to remit such taxes to the IRS, even in the face of conflicting judicial authorities:  "This notice confirms that the [IRS] will continue to assess and collect tax under section 4251 of the Code on all taxable communications services, including those communications services recently litigated with conflicting results."  IRS Notice 2004-57, *Communications Excise Tax; Section 4251*, 2004-2 C.B. 376, 2004 WL 1765524 (rel. Aug. 9, 2004).[18]  Yet, according to Plaintiffs' apparent position, *state contract law* required telephone

---

[18] *See also* 26 C.F.R. § 49.4251-2(c) ("The taxes imposed by section 4251 … must be paid to the person rendering the services who is required to collect the tax and return and pay over the tax."); IRS Notice 2005-79 (Collins Decl., Ex. B) ("[T]he [IRS] will continue to assess and collect the tax under section 4251 of the Code on all taxable communications services, including communications services similar to those at issue in *American Bankers Ins. Group v. United States*, 408 F.3d 1328 (11th Cir. 2005), *rev'g* 308 F. Supp. 2d 1360 (S.D. Fla. 2004).").

companies *not* to collect and remit the tax. If Plaintiffs were right, it would have been impossible for Defendants to comply with federal law while at the same time complying with state law. Where federal and state law conflict in that way, state law must yield: "We have found implied conflict pre-emption where it is impossible for a private party to comply with both state and federal requirements …." *Sprietsma v. Mercury Marine*, 537 U.S. 51, 64 (2002) (internal quotation marks omitted); *see also Bedford Affiliates v. Sills*, 156 F.3d 416, 426 (2d Cir. 1998) ("Conflict preemption occurs … when compliance with both federal and state regulations is a physical impossibility ….") (internal quotation marks omitted).

*Second*, Plaintiffs' premise as to the substance of state contract law is incorrect. If Defendants had somehow bound themselves not to collect and remit FET, they would have bound themselves to violate federal law. It is a well settled principle of contract law that provisions requiring a party to violate statutory law are unenforceable. *See*, *e.g.*, 5 WILLISTON ON CONTRACTS § 12:1 (4th ed. 2006) ("[B]argains are illegal if they violate an express provision of positive law … or if they are otherwise inimical to public policy…. [A] bargain will be declared illegal or unenforceable if … [a] provision is included for a condition in violation of law ….").[19] Thus, if Defendants had bound themselves not to collect and remit FET, that promise

---

[19] *See*, *e.g.*, *Brandon Farms Prop. Owners Ass'n v. Brandon Farms Condo. Ass'n*, 180 N.J. 361, 374 (N.J. 2004) ("We have declared void contracts that 'violate statutes.'") (citation omitted); *Benjamin v. Koeppel*, 85 N.Y.2d 549, 553 (N.Y. 1995) ("Illegal contracts are, as a general rule, unenforceable."); *Mills v. Everest Reinsurance Co.*, 410 F. Supp. 2d 243, 253 (S.D.N.Y. 2006) ("For a contract to be void as against public policy, it must violate the law of the State, whether found in the Constitution, statutes or decisions of the courts.") (internal quotations and citations omitted); *Trelleborg, AB v. Frank B. Hall & Co.*, 950 F. Supp. 77, 78-80 (S.D.N.Y. 1996) (breach of contract claim fails where underlying contract is prohibited by law and therefore void); *American Casualty Co. v. Resolution Trust Corp.*, 839 F. Supp. 282, 286 (D.N.J. 1993) ("A contract which is contrary to the requirements of a statute is void whether expressly made so by the statute or not."). Jurisdictions outside of New York and New Jersey follow this general rule as well. *See*, *e.g.*, *Bright v. Bechtel Petroleum, Inc.*, 780 F.2d 766, 772 (9th Cir. 1986) ("[N]o liability exists for breach of a contract whose performance has been made impossible by operation of law…. A party is not required to violate the law to avoid liability for breach of contract."); *Freis v. Soboroff*, 97 Cal. Rptr. 2d 429, 430 (Cal. App. 2000) ("Because federal law required defendants to withhold portions of the royalty payments for taxes, plaintiff cannot state

would be void, and Plaintiffs could not, under applicable state contract law, complain of a breach.

### 2. Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty

Plaintiffs' fourth cause of action (for breach of fiduciary duty) fails because (1) it is well-established that no fiduciary relationship exists in the arms-length transactions between telecommunications carriers and their customers; and (2) Plaintiffs' fiduciary-duty claim impermissibly duplicates their claims under § 203 and state contract law.

### a. Defendants Do Not Owe Any Fiduciary Duty to Plaintiffs

Courts have long held that no fiduciary relationship exists between telephone companies and their customers, including where telephone companies are alleged to have wrongfully collected FET. In *McDonnell Douglas Corp. v. General Telephone Co.*, 594 F.2d 720 (9th Cir. 1979), the plaintiff claimed that the defendant telephone company had breached its common-law fiduciary duty to customers "by collecting unnecessary [FET]." *Id.* at 725. The court noted that the plaintiff failed to cite any authority "for the proposition that a public utility such as General Telephone owes a special fiduciary duty to customers from whom it collects taxes on behalf of the government," while finding "cases which stand for the proposition that no such fiduciary relationship exists." *Id.* (citing *Agron v. Ill. Bell Tel. Co.*, 325 F. Supp. 487 (N.D. Ill. 1970), *appeal dismissed*, 449 F.2d 906 (7th Cir. 1971); *Jacob Goodman & Co. v. N.Y. Tel. Co.*, 137 N.Y.S.2d 797 (App. Div.), *aff'd*, 309 N.Y. 258 (1955)). Put simply, "[t]he relation between the [telephone] company and its customers is not that of partners, agent and principal, or trustee and

---

a cause of action, such as conversion or breach of contract."); *McCaughan v. Mitchell*, 128 Wash. App. 1005, 2005 WL 1406159, at *2 (Wash. Ct. App. 2005) ("Performance of a contract is excused when such performance would violate a statute…. Thus, Mitchell was not required to pay McCaughan the full amount of his commission because to do so … would have been a violation of federal law.").

beneficiary." *Board of Pub. Util. Comm'rs v. N.Y. Tel. Co.*, 271 U.S. 23, 31 (1926) (citation

omitted); *cf. DuPont Glore Forgan*, 437 F. Supp. at 1131-32 & n.98, 1134 & n.115 (holding that

FET provisions of IRC did not impose duty on telephone company to change billing practices so

that plaintiff could benefit from tax exemption).

      Nor can Plaintiffs manufacture a fiduciary duty in this arms-length relationship by

referencing certain contracts between themselves and Defendants. It is well-settled that "being a

party to a contract does not itself impose a fiduciary duty." *Banco Espirito Santo de

Investimento, S.A. v. Citibank, N.A.*, No. 03 Civ. 1537 (MBM), 2003 WL 23018888, at *15

(S.D.N.Y. 2003). "Rather, this duty must arise from 'a position of trust or special confidence …

that impose[s] obligations beyond the express agreements' between the parties." *Id.* (quoting

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)). Here,

however, there are no such special obligations, and Plaintiffs' conclusory allegations do not

sufficiently allege to the contrary. More specifically, Plaintiffs simply assert that they had an

"agency relationship" with Defendants (FAC ¶ 80), but the Supreme Court has squarely rejected

that proposition as a matter of law: "The relation between the [telephone] company and its

customers is not that of … agent and principal." *Board of Pub. Util. Comm'rs*, 271 U.S. at 31

(citation omitted); *see also Agron*, 325 F. Supp. at 488 (noting that telephone company was not

authorized agent of customer for purposes of FET).

      Moreover, Plaintiffs' claim that Defendants "unilaterally impose[d] a fiduciary role unto

themselves" in connection with the alleged collection of FET (FAC ¶¶ 7, 80-82) is belied by the

fact that, to the extent that Defendants collected and remitted FET, *cf.* notes 1 and 2 *supra*, they

were *ordered by the IRS* to do so. *See* IRS Notice 2005-79; *see also* 26 U.S.C. §§ 4291; 26

C.F.R. §§ 49.4251-2(c), 49.4291-1. This legal requirement fatally undermines any allegation

- 23 -

that Defendants "unilaterally" assumed this role, and courts have outright rejected claims that rest on such allegations. *See*, *e.g.*, *Agron*, 325 F. Supp. at 489 (dismissing claim that telephone company breached fiduciary duty to subscribers by failing to prevent government from overcharging FET because "[t]he obligation which [the company] was bound to perform was not litigation on behalf of its subscribers, but the collection and holding of certain tax revenues according to federal statutes and policy") (citations omitted).

   b.   **Plaintiffs Cannot Bring a Fiduciary Duty Claim That Merely Duplicates Their § 203 and Contract Claims**

Plaintiffs' fiduciary duty claim is nothing more than a repackaging of their § 203 and contract claims, as Plaintiffs readily admit. (FAC ¶¶ 77-78 (alleging a fiduciary duty arising under statute and contract).)[20] This is fatal to their claim: "'A cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand.'" *Banco Espirito*, 2003 WL 23018888, at *15 (quoting *William Kaufman Org., Ltd. v. Graham & James L.L.P.*, 703 N.Y.S.2d 439, 442 (App. Div. 2000)). Moreover, this rule applies equally to Plaintiffs' § 203 claims, which sound in contract. *See Cahnmann v. Sprint Corp.*, 133 F.3d 484, 487 (7th Cir. 1998) ("[T]he filed tariff [under Section 203] is the contract between [customers] and [the carrier].") Indeed, in *McDonnell Douglas*, the court found, on materially indistinguishable facts, that the plaintiff's reliance on the FET provisions of the IRC and the Communications Act rendered its fiduciary duty claim impermissibly redundant. 594 F.2d at 725 (finding "no reason to bootstrap from those two statutes and create a third cause of action").

This settled rule applies squarely to Plaintiffs' claim. As described above, the purported fiduciary duty allegedly would have required Defendants to disclose the inapplicability of the

---

[20] Of course, Plaintiffs cannot assert that their fiduciary duty claim arose under contract or statute to the extent that they fail properly to allege the existence of any contract or the applicability of any statute (including § 203) with respect to certain Defendants.

FET and to refrain from collecting and remitting the FET.  (FAC ¶¶ 79, 83-86.)  Yet these are the very same duties that Plaintiffs allege arose under § 203 and certain contracts.  (*Compare* FAC ¶¶ 62-63, 66-68, 71-73.)  Because Plaintiffs have failed to allege any duty independent of those allegedly arising under contract or § 203, their claim must be dismissed.

### 3.    Plaintiffs' Conspiracy Claim Must Be Dismissed

Presumably on the basis of the law of the States within which they claim to reside (New York and New Jersey), Plaintiffs' fifth cause of action purports to state a claim for "conspiracy." (FAC ¶¶ 89-102.)   The claim fails as a matter of law.  First and foremost, conspiracy is not an independent cause of action in either State.  It was "long ago held" in New York that "'a mere conspiracy to commit a [tort] is never of itself a cause of action.'"  *Alexander & Alexander of N.Y., Inc. v. Fritzen*, 503 N.E.2d 102, 102 (N.Y. 1986) (brackets in original; citations omitted); *Jebran v. LaSalle Bus. Credit, LLC*, 33 A.D.3d 424, 425 (N.Y. App. Div. 2006) ("New York does not recognize a substantive tort of conspiracy"); *accord MBF Clearing Corp. v. Shine*, 212 A.D.2d 478 (N.Y. App. Div. 1995); *Williams v. Sidley Austin Brown & Wood, LLP*, 824 N.Y.S.2d 759, 2006 WL 2739013, at *3 (Sup. Ct. Sept. 22, 2006).  Likewise, in New Jersey, a "conspiracy is not actionable absent an independent wrong."  *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 497 (D.N.J. 1998) (citation omitted); *see also Board of Education v. Hoek*, 183 A.2d 633, 646 (N.J. 1962).

Moreover, Plaintiffs' conspiracy allegations — which at most would establish *joint and several liability* for an *underlying* claim — are insufficient even for that limited purpose. Plaintiffs assert only speculative, conclusory allegations of conspiracy, but the law requires more.  In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007), the Supreme Court recently held that, to survive a motion under Fed. R. Civ. P. 12(b)(6), the "[f]actual allegations

[in a complaint] must be enough to raise a right to relief above the speculative level …." *See also* 127 S. Ct. at 1965 (Fed. R. Civ. P. 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Elaborating on these standards, the Supreme Court further explained that, to survive a motion to dismiss, the complaint must allege "*enough facts to state a claim to relief that is plausible on its face.*" *Id.* at 1974 (emphasis added).[21] The Court went on to explain that, in the context of a conspiracy allegation, this requires allegations sufficient to state a "plausible" claim of conspiracy in light of any "obvious alternative explanation" for the alleged similar conduct of the defendants. *Id.* at 1972.

Plaintiffs' conclusory allegations of conspiracy fall far short of these standards. At bottom, the linchpin of Plaintiffs' theory is that only a conspiracy could explain why each Defendant persisted in collecting FET after some courts found the tax inapplicable: "How was a uniform industry-wide position … achieved unless Defendants conspired with one another?" (FAC ¶ 39(i).) But there is an "obvious alternative explanation," *Twombly*, 127 S. Ct. at 1972, for the continued collection and remittance of FET: to the extent each Defendant remitted FET collected from Plaintiffs, it was because the IRS *ordered* each Defendant to do so. *See*, *e.g.*, Notice 2005-79. This obvious explanation only serves to underscore Plaintiffs' obligation to go beyond conclusory allegations of conspiracy and to plead "enough facts to state a claim" of

---

[21] In doing so, the Court explicitly rejected, as "incomplete" and "confus[ing]," its much-quoted statement that "'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" 127 S. Ct. at 1968-69 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The Court held that, "after puzzling the profession for 50 years, this famous observation has earned its retirement." *Id.* at 1969. The Court clarified that this language from *Conley* does *not* describe "the minimum standard of adequate pleading"; instead, it merely stands for the limited and unremarkable proposition that "*once a complaint has been stated adequately*, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* (emphasis added).

conspiracy "that is plausible on its face." *Id.* at 1974. But all that Plaintiffs allege on that score is that Defendants were all members of trade organizations and that a conspiracy must have developed in that context. (FAC ¶ 94.) That is plainly inadequate. The Supreme Court in *Twombly* specifically held that allegations of trade-organization membership are insufficient to plead a "plausible suggestion of conspiracy." *Id.* at 1971 & n.12.

Consideration of the New York and New Jersey law of conspiracy further confirms the patent inadequacy of Plaintiffs' allegations. In *Gmurzynska v. Hutton*, 816 N.Y.S.2d 695, 2005 WL 3955644 (Sup. Ct. 2005), the court dismissed as "insufficient" allegations of conspiracy that were merely speculative and based on wholly ordinary conduct. 2005 WL 3955644, at *5; *see also Vulcan Soc'y of Westchester Co., Inc. v. Fire Dep't of City of White Plains*, 82 F.R.D. 379, 389 (S.D.N.Y. 1979) (refusing to permit an amendment to include conspiracy claims because plaintiffs' "generalized, unsupported allegations of conspiracy" failed to establish "any factual details or specific conspiratorial acts of the defendants"). And in *Delbridge v. Office of the Pub. Defender*, 569 A.2d 854 (N.J. Super. Ct. Law Div. 1989), *aff'd sub nom. A.D. v. Franco*, 687 A.2d 748 (N.J. Super. Ct. App. Div. 1993), the court dismissed conspiracy claims because plaintiff's "conclusory allegations of a massive conspiracy" did not identify an overt act or "any facts which would suggest a meeting of the minds." 569 A.2d at 868. So too here, Plaintiffs fail to allege any facts sufficient to establish the elements of conspiracy.

# CONCLUSION

For the foregoing reasons, the FAC should be dismissed with prejudice.

Dated:  August 10, 2007                                    Respectfully submitted,


 /s/  Daniel P. Collins                              /s/  Michael B. Carlinsky
Daniel P. Collins (DC Bar # 426546)          Michael B. Carlinsky
MUNGER, TOLLES & OLSON LLP              QUINN EMANUEL URQUHART
355 South Grand Avenue, 35th Floor            OLIVER & HEDGES, LLP
Los Angeles, CA 90071                        51 Madison Avenue, 22nd Floor
(213) 683-9125                               New York, New York 10010
                                             (212) 849-7000

Attorneys for Defendants Verizon             Attorneys for Defendant Alltel Corp.
Communications Inc. and Verizon
Business Global LLC (successor to
MCI, Inc.)



 /s/  Michael K. Kellogg                             /s/  P. Scott Wolleson
Michael K. Kellogg (DC Bar # 372049)         P. Scott Wolleson (La. Bar No. 22,691)
Sean Lev (DC Bar # 449936)                   BREITHAUPT, DUNN, DUBOS,
KELLOGG, HUBER, HANSEN, TODD                   SHAFTO & WOLLESON, LLC
  EVANS & FIGEL, P.L.L.C                      1800 Hudson Lane
1615 M Street, NW, Suite 400                 Suite 200-A
Washington, DC 20036                         Monroe, Louisiana 71201
(202) 326-7900                               (318) 322-1202

Attorneys for Defendants AT&T Inc. and       Attorneys for Defendant CenturyTel, Inc.
BellSouth Corp.



 /s/  Danny E. Adams                                 /s/  Alejandro N. Mayorkas
Danny E. Adams (DC Bar #259309)              Alejandro N. Mayorkas
Ira T. Kasdan (DC Bar # 292474)              Sandra Sepulveda
KELLEY DRYE & WARREN LLP                     O'MELVENY & MYERS LLP
3050 K Street, N.W.                          400 South Hope Street
Washington, D.C.  20007                      Los Angeles, CA 90071
(202) 342-8864                               (213) 430-6000

Attorneys for Defendant Global Crossing      Attorneys for Defendant Qwest Corp.
North America Inc.

 /s/  John W. Rogers
John W. Rogers
BRYAN CAVE LLP
One Metropolitan Square Building
211 N. Broadway, Suite 3600
St. Louis, MO 63102
(314) 259-2000

Attorneys for Defendant Sprint Nextel
Corp.

 /s/  Henk Brands
Henk Brands (DC Bar # 451710)
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1615 L Street, N.W., Suite 1300
Washington, DC 20036-5694
(202) 223-7300

Attorneys for Defendant Time Warner Inc.

 /s/  Alan M. Unger
Alan M. Unger
John J. Lavelle
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

Attorneys for Defendant T-Mobile USA,
Inc.

 /s/  Susan L. Saltzstein
Susan L. Saltzstein
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
(212) 735-4132

Attorneys for Defendant
Virgin Mobile USA, LLC

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re LONG-DISTANCE TELEPHONE SERVICE FEDERAL EXCISE TAX REFUND LITIGATION<br><br>This document relates to:<br><br>*Belloni v. Verizon Communications, Inc.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

MDL Docket No. **1798**

Master File:  07-mc-0014 (RMU)

Member Case:  07-cv-801

**DECLARATION OF DANIEL P. COLLINS IN SUPPORT OF
DEFENDANTS' JOINT MOTION TO DISMISS THE
AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**

I, Daniel P. Collins, do hereby declare as follows:

1.      I am a member of the law firm of Munger, Tolles & Olson LLP, which firm is one

of the counsel of record for defendant Verizon Communications Inc. and specially appearing

defendant Verizon Business Global LLC (successor to MCI, Inc.) in *Belloni, et al. v. Verizon

Communications Inc., et al.*, No. 06-CV-11459 (DAB) (JCF) (S.D.N.Y.) (hereinafter "*Belloni*"),

which has been transferred to this Court by the Judicial Panel on Multidistrict Litigation in

connection with MDL No. 1798 and which has been docketed in this Court as Member Case No.

07-cv-801 (RMU).  My firm was also counsel of record for defendant Cellco Partnership d/b/a

Verizon Wireless and specially appearing defendant Verizon Corporate Services Corp. in

*Gurrola, et al. v. United States, et al.*, No. CV-06-3425-SVW(Ex) (C.D. Cal.) (hereinafter

"*Gurrola*").  I am a member in good standing of the bar of the United States District Court for

the Central District of California, and I was admitted *pro hac vice* in the United States District

Court for the Southern District of New York for purposes of the *Belloni* matter before it was

transferred to this Court.  The matters set forth herein are based upon my own personal

knowledge, and if called upon to do so, I could and would testify competently thereto.

2.      Attached as Exhibit A is a true and correct copy of "IRS Notice 2006-50," as

published in the Internal Revenue Bulletin, and which I obtained from the IRS website.

3.      Attached as Exhibit B is a true and correct copy of "IRS Notice 2005-79," as

published in the Internal Revenue Bulletin, and which I obtained from the IRS website.

4.      Attached as Exhibit C is a true and correct copy of "IRS Notice 2007-11," as

published in the Internal Revenue Bulletin, and which I obtained from the IRS website.

5.      Attached as Exhibit D is a true and correct copy of the "First Amended Class

Action Complaint" in the *Gurrola* matter.

6.      Attached as Exhibit E is a true and correct copy of the "Order Denying Plaintiffs'

Ex Parte Application for a Temporary Restraining Order" issued June 26, 2006 in the *Gurrola*

matter.

7.      Attached as Exhibit F is a true and correct copy of the "Notice of Partial

Voluntary Dismissal of Defendants AT&T Services, Inc.; Pacific Bell Telephone Company;

Verizon Corporate Services Corp.; Cingular Wireless, LLC; Cellco Partnership DBA Verizon

Wireless; and Qwest Communications International, Inc., Pursuant to F.R.C.P. Rule 41(a)" in the

*Gurrola* matter.

8.      Attached as Exhibit G is a true and correct copy of the "Notice of Voluntary

Dismissal of Defendant AT&T, Inc. Pursuant to F.R.C.P. Rule 41(a)" in the *Gurrola* matter.

9.      Attached as Exhibit H is a true and correct copy of the "Stipulation of Dismissal

with Prejudice" in the *Gurrola* matter.

10.    Attached as Exhibit I is a true and correct copy of the Judicial Panel on Multi-District Litigation's Transfer Order issued April 19, 2007 regarding *Belloni*.

11.    I declare under penalty of perjury that the foregoing is true and correct.  Executed at Los Angeles, California on August 10, 2007.


        /s/  *Daniel P. Collins*
                Daniel P. Collins

**Exhibit A**

# Part III. Administrative, Procedural, and Miscellaneous

## Communications Excise Tax; Toll Telephone Service

## Notice 2006–50

SECTION 1. PURPOSE

(a) *In general.* As further described in this notice, the Internal Revenue Service will follow the holdings of *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328 (11th Cir. 2005) (*ABIG*); *OfficeMax, Inc. v. United States*, 428 F.3d 583 (6th Cir. 2005); *Nat'l R.R. Passenger Corp. v. United States*, 431 F.3d 374 (D.C. Cir. 2005) (*Amtrak*); *Fortis v. United States*, 2006 U.S. App. LEXIS 10749 (2d Cir. Apr. 27, 2006); and *Reese Bros. v. United States*, 2006 U.S. App. LEXIS 11468 (3d Cir. May 9, 2006). These cases hold that a telephonic communication for which there is a toll charge that varies with elapsed transmission time and not distance (time-only service) is not taxable toll telephone service as defined in § 4252(b)(1) of the Internal Revenue Code. As a result, amounts paid for time-only service are not subject to the tax imposed by § 4251. Accordingly, the government will no longer litigate this issue and Notice 2005–79, 2005–46 I.R.B. 952, which states otherwise, is revoked.

(b) *Credits and refunds.* Taxpayers may be entitled to request credit or refund of the excise taxes paid for the services covered by this notice. This notice provides guidance regarding these requests. In addition, the Commissioner will authorize the scheduling of an overassessment under § 6407 to keep the period of limitations open for these requests. This overassessment will apply to all taxpayers and to all taxes paid for the services covered by this notice beginning with the tax paid on services that were billed to customers after February 28, 2003.

SECTION 2. BACKGROUND

(a) *In general*—(1) *Tax imposed.* Section 4251(a)(1) imposes a tax on amounts paid for communications services.

(2) *Payment of tax.* Section 4251(a)(2) provides that the tax imposed shall be paid by the person paying for the service (taxpayer). Section 4251(b)(2) provides that the applicable percentage is 3 percent of amounts paid for communications services.

(3) *Collection of tax.* Section 4291 provides that the tax is collected by the person receiving the payment (collector). In most cases, the collector, which is also responsible for paying over the tax to the government, is the telecommunications company that provides the communications services to the taxpayer.

(b) *Definitions*—(1) *Communications services.* Section 4251(b)(1) provides that the term communications services means (A) local telephone service; (B) toll telephone service; and (C) teletypewriter exchange service. This notice does not address teletypewriter exchange service.

(2) *Local telephone service.* Section 4252(a) provides that local telephone service means (1) the access to a local telephone system, and the privilege of telephonic quality communication with substantially all persons having telephone or radio telephone stations constituting a part of such local telephone system; and (2) any facility or service provided in connection with such a service. Local telephone service does not include any service that is a toll telephone service as defined in § 4252(b) or a private communications service as defined in § 4252(d). This notice does not address private communications service.

(3) *Toll telephone service*—(i) *Time and distance.* Section 4252(b)(1) provides that toll telephone service includes a telephonic quality communication for which there is a toll charge that varies in amount with the distance and elapsed transmission time of each individual communication and for which the charge is paid within the United States.

(ii) *Periodic charge for a specified area.* Section 4252(b)(2) provides that toll telephone service also includes a service which entitles the subscriber, upon payment of a periodic charge (determined as a flat amount or upon the basis of total elapsed transmission time), to the privilege of an unlimited number of telephonic communications to or from all or a substantial portion of the persons having telephone or radio telephone stations in a specified area which is outside the local telephone

system area in which the station provided with this service is located.

(c) *Rev. Rul. 79–404.* Rev. Rul. 79–404, 1979–2 C.B. 382, concludes that a long distance telephone call for which the charge varies with elapsed transmission time but not with distance is toll telephone service described in § 4252(b)(1).

(d) *Notice of proposed rulemaking.* In a notice of proposed rulemaking (REG–141097–02, 2003–1 C.B. 807 [68 FR 15690]; April 1, 2003), the Service proposed an amendment to the Facilities and Services Excise Taxes Regulations to provide that toll telephone service described in section 4252(b)(1) may include a communication service for which the charge does not vary with the distance of each individual communication.

(e) *Recent litigation. ABIG, OfficeMax, Amtrak,* and *Reese Bros.* hold time-only service is not toll telephone service as defined in § 4252(b)(1). Further, *ABIG, OfficeMax,* and *Reese Bros.* hold that the communications service provided was not a service described in § 4252(b)(2) because the end result was not a "periodic charge" based on total elapsed time but rather a monthly bill based on a summation of toll charges for individual communications. (In *Amtrak,* toll telephone service described in § 4252(b)(2) would have been exempt from tax under the common carrier exception in § 4253(f).) *ABIG, OfficeMax, Amtrak,* and *Reese Bros.* also hold that the communications services provided were not local service, notwithstanding the access the services provided to the local telephone system. (*Fortis* affirms, in a *per curiam* opinion, a district court decision reaching the same results.)

(f) *Notice 2005–79.* Notice 2005–79, 2005–46 I.R.B. 952, states that the Service will continue to assess and collect the tax imposed by § 4251 on all taxable communications services, including those similar to the services in *ABIG.*

SECTION 3. TERMS DEFINED

The following terms are defined solely for purposes of this notice:

(a) *Bundled service.* Bundled service is local and long distance service provided under a plan that does not separately state the charge for the local telephone

service. Bundled service includes, for example, Voice over Internet Protocol service, prepaid telephone cards, and plans that provide both local and long distance service for either a flat monthly fee or a charge that varies with the elapsed transmission time for which the service is used. Telecommunications companies provide bundled service for both landline and wireless (cellular) service.

(b) *Local-only service.* Local-only service is local telephone service, as defined in § 4252(a), provided under a plan that does not include long distance telephone service or that separately states the charge for local service on its bill to customers. The term also includes services and facilities provided in connection with service described in the preceding sentence even though these services and facilities may also be used with long distance service. See, for example, Rev. Rul. 72–537, 1972–2 C.B. 574 (telephone amplifier); Rev. Rul. 73–171, 1973–1 C.B. 445 (automatic call distributing equipment); and Rev. Rul. 73–269, 1973–1 C.B. 444 (special telephone).

(c) *Long distance service.* Long distance service is telephonic quality communication with persons whose telephones are outside the local telephone system of the caller.

(d) *Nontaxable service.* Nontaxable service means bundled service and long distance service.

## SECTION 4. EFFECT OF *ABIG, OFFICEMAX, AMTRAK, FORTIS, AND REESE BROS.*

(a) *Tax treatment of communications service after ABIG, OfficeMax, Amtrak, Fortis, and Reese Bros.* The Service will follow *ABIG, OfficeMax, Amtrak, Fortis, and Reese Bros.* Accordingly, taxpayers are no longer required to pay tax under § 4251 for nontaxable service. In addition, collectors or taxpayers may request a refund of tax paid under § 4251 on nontaxable service that was billed to the taxpayers during the period after February 28, 2003, and before August 1, 2006 (the relevant period).

(b) *Tax on local-only service.* Collectors should continue to collect and pay over the § 4251 tax on amounts paid for local-only service. As noted in section 3(b) of this notice, local-only service in-

cludes amounts paid for facilities or services provided in connection with local telephone service. Thus, for example, tax will continue to be imposed on amounts paid by a taxpayer for renting an amplifier phone provided in connection with local telephone service that is subject to tax.

(c) *Effect on collectors.* Collectors are directed to cease collecting and paying over tax under § 4251 on nontaxable service that is billed after July 31, 2006, and are not required to report to the IRS any refusal by their customers to pay any tax on nontaxable service that is billed after May 25, 2006. Collectors should not pay over to the IRS any tax on nontaxable service that is billed after July 31, 2006. The form will require collectors to certify that for the third quarter of 2006 the § 4251 tax reported on the Form 720 does not include any tax on nontaxable service that was billed after July 31, 2006. Consequently, the IRS will deny all taxpayer requests for refund of tax on nontaxable service that was billed after July 31, 2006. All such requests should be directed to the collector. In addition, collectors may repay to taxpayers the tax on nontaxable service that was billed before August 1, 2006, but are not required to repay such tax. Collectors may also request a refund or make an adjustment to their separate accounts, as appropriate, subject to the provisions of § 6415 and section 5(d)(4) of this notice. Collectors must continue to collect and pay over tax under § 4251 on amounts paid for local only service.

## SECTION 5. REQUESTS FOR CREDIT OR REFUND

(a) *In general*—(1) *Request must follow this notice.* The Commissioner agrees to credit or refund the amounts paid for nontaxable service if the taxpayer requests the credit or refund in the manner prescribed in this notice.

(2) *Form of request.* Taxpayers may request a credit or refund of tax on nontaxable service that was billed after February 28, 2003, and before August 1, 2006, only on their 2006 Federal income tax returns. For this purpose, the 2006 income tax return is the income tax return for calendar year 2006 or for the first taxable year including December 31, 2006. Forms 1040 (series), 1041, 1065, 1120 (series), and 990–T will include a line for requesting the

overpayment amount. Persons that are not otherwise required to file a federal income tax return must nevertheless file a return to obtain the credit or refund. Except as provided in section 5(d)(4) of this notice, a request for this credit or refund on any other form (such as a Form 720, 843, or 8849) will not be processed by the Service. Taxpayers will be permitted to request the safe harbor amount under paragraph (c) of this section only if they have paid all taxes billed by their service provider after February 28, 2003, and before August 1, 2006.

(3) *Guidance on the form.* The instructions to the respective federal income tax return forms will provide additional guidance. The forms and instructions will require taxpayers to certify that (1) the taxpayer has not received from the collector a credit or refund of the tax paid on nontaxable service billed during the relevant period and (2) the taxpayer will not ask the collector for a credit or refund of that tax and has withdrawn any such request that was previously submitted. The instructions will also require that taxpayers, except for those individuals using the safe harbor amount, retain records that substantiate the request. These records should include bills from the collector that show the amount of tax charged for nontaxable service for each month during the relevant period and receipts, canceled checks, or other evidence that the amount requested was actually paid.

(b) *Period of request.* The Commissioner will authorize the scheduling of an overassessment under § 6407 to preserve the period of limitations during which taxpayers may request refunds of the tax on nontaxable service that was billed to customers after February 28, 2003, and before August 1, 2006. Therefore, requests may be made for credits or refunds of tax paid for nontaxable service billed after February 28, 2003, and before August 1, 2006.

(c) *Amount of the request*—(1) *Requests by individual taxpayers*—(i) *Safe harbor amount.* Individual taxpayers may request a safe harbor amount. No documentation will be required to be submitted or kept to support the safe harbor request. However, taxpayers will be permitted to request the safe harbor amount only if they have paid all taxes billed by their service provider after February 28, 2003, and before August 1, 2006; have not received a credit or refund of these taxes

from the service provider, and either have not requested such a credit or refund from the service provider or have withdrawn any such request. The amount of this safe harbor is still under consideration and will be announced in later guidance.

(ii) *Actual amount.* Taxpayers that do not request the safe harbor amount may request a credit or refund of the actual amount of tax they paid.

(d) *How to file*—(1) *Requests by individual taxpayers.* Individual taxpayers may request a credit or refund of federal excise taxes paid on nontaxable service only on their 2006 Form 1040, 1040A, or 1040–EZ, *U.S. Individual Income Tax Return.* Individuals who are not otherwise required to file a federal income tax return must nevertheless file Form 1040EZ–T to request the credit or refund. Individual taxpayers, including Schedule C filers, may request either the safe harbor amount or the actual amount of tax paid for nontaxable service.

(2) *Requests by taxpayers other than individual taxpayers.* Taxpayers other than individual taxpayers (entities) may request only the actual amount of tax paid on nontaxable service billed during the relevant period. No safe harbor amount is allowed for entities.

(3) *Requests by entities*—(i) *In general.* Entities may request a credit or refund of federal excise taxes paid on nontaxable service only on their 2006 income tax returns. Any part of the credit or refund attributable to tax payments that were deducted as an ordinary and necessary business expense (including in the determination of unrelated business taxable income) must be included in income for the taxable year in which the refund is received or accrued to the extent that the tax payments reduced the amount of federal income tax (or unrelated business income tax) imposed.

(ii) *Partnerships.* A partnership, as defined in § 7701(a)(2), may request a credit or refund of federal excise taxes paid on nontaxable service only on its 2006 Form 1065, *U.S. Return of Partnership Income.* Any amount of the credit or refund included in partnership income and any interest on the credit or refund must be reported on the partnership's return for the taxable year in which received or accrued and must be allocated to its partners on the Schedule K–1, *Partner's Share of Income,*

*Deductions, Credits, etc.,* for that taxable year.

(iii) *S Corporations.* An S Corporation, as defined in § 1361, may request a credit or refund of federal excise taxes paid on nontaxable service only on its 2006 Form 1120S, *U.S. Income Tax Return for an S Corporation.* Any amount of the credit or refund included in S Corporation income and any interest on the credit or refund must be reported on the S Corporation's return for the taxable year in which received or accrued and must be allocated to its shareholders on the Schedule K–1, *Shareholder's Share of Income, Deductions, Credits, etc.,* for that taxable year.

(iv) *Estates and trusts.* An estate or a trust, as defined in § 301.7701–4(a) of the Procedure and Administration Regulations, may request a credit or refund of federal excise taxes paid on nontaxable service only on its 2006 Form 1041, *U.S. Income Tax Return for Estates and Trusts.* Any amount of the credit or refund included in the estate's or trust's income and any interest on the credit or refund must be reported on the estate's or trust's Form 1041, *U.S. Income Tax Return for Estates and Trusts,* for the taxable year in which received or accrued. However, for a trust that is treated as owned by the grantor or other person under subpart E (§ 671 and following), part I, subchapter J, chapter 1 of the Internal Revenue Code (grantor trust), the owner of the trust may request a credit or refund of federal excise taxes treated as paid by the owner for nontaxable service only on its applicable 2006 federal tax return.

(v) *Tax exempt organizations.* An organization that is described in § 501(a) may request a credit or refund of federal excise taxes paid on nontaxable service only on its 2006 Form 990–T, *Exempt Organization Business Income Tax Return.* Tax exempt organizations that are not otherwise required to file a federal income tax return must nevertheless file Form 990–T to request the credit or refund. Any amount of the credit or refund included in the organization's unrelated business taxable income must be reported on the organization's Form 990–T, *Exempt Organization Business Income Tax Return,* for the taxable year in which received or accrued. An organization that is subject to tax on its interest income must also report

any interest on the credit or refund on its Form 990–T, *Exempt Organization Business Income Tax Return,* for the taxable year in which received or accrued.

(vi) *Corporations.* A corporation, as defined in § 7701(a)(3), that is not described in section 5(d)(3)(iii) of this notice may request a credit or refund of federal excise taxes paid on nontaxable service only on its 2006 Form 1120 (series) income tax return (generally, Form 1120, *U.S. Corporation Income Tax Return*). Any amount of the credit or refund included in the corporation's income and any interest on the credit or refund must be reported on the corporation's income tax return for the taxable year in which received or accrued. Corporations that are not otherwise required to file a federal income tax return must nevertheless file Form 1120 (series) to request the credit or refund.

(vii) *Other nonfiling entities.* Entities that are not otherwise required to file a federal income tax return must file Form 990–T to request the credit or refund.

(4) *Requests and adjustments by collectors*—(i) *Section 6415 conditions to allowance.* The conditions to allowance described in § 6415 apply to all requests and adjustments by collectors, as defined by section 2(a)(3) of this notice. Thus, a request by a collector is allowed only if the person that paid over the tax establishes that it has repaid the amount of the tax to the person from whom the tax was collected, or obtains the written consent of such person to the allowance of the credit or refund.

(ii) *Requests for regular method collectors*—(A) *In general.* A person that collected the tax imposed by § 4251 on nontaxable service and paid it over to the government based on amounts actually collected under § 40.6302(c)–1(a)(2)(i) of the Excise Tax Procedural Regulations (regular method collectors) may request a credit or refund.

(B) *Form of the request.* Regular method collectors may use Form 720X, *Amended Quarterly Federal Excise Tax Return,* line 1, IRS No. 22, for credit or refund of amounts collected and repaid to taxpayers.

(iii) *Account adjustments for alternative method collectors.* A person that collected the tax imposed by § 4251 on nontaxable service and paid it over to the

government based on amounts considered as collected under § 40.6302(c)–1(a)(2)(ii) (alternative method collectors) may adjust the separate account for the amount of an overpayment. The required adjustment to the separate account is described in § 40.6302(c)–3(b)(2)(ii)(C). The adjustment is reflected on Form 720, Schedule A, line 2, but may not reduce tax liability on Form 720 below zero.

(e) *Interest on the credit or refund included in income.* If a taxpayer requests a credit or refund of the actual amount of tax paid, interest on the credit or refund of the tax paid for nontaxable service must be included as income on the taxpayer's income tax return for the taxable year in which the interest is received or accrued. Thus, individuals are generally required to report the interest on their 2007 income tax returns.

(f) *Estimated tax effects.* Although the credit or refund allowed to a taxpayer under this notice will be requested on the taxpayer's income tax return, it is not a credit against tax for purposes of §§ 6654 and 6655. Accordingly, the taxpayer may not take the credit or refund into account in determining the amount of the required installments of estimated tax for 2006. In determining the amount of the required installments of estimated tax for 2007, the income attributable to the credit or refund is taken into account on the date the income is paid or credited in the case of a cash method taxpayer and on the date the return making the request is filed in the case of an accrual method taxpayer.

(g) *Requests that do not follow the provisions of this notice.* Requests that do not follow the provisions of this notice (whether filed before or after its publication)—

(1) Will not be processed to the extent they relate to the tax paid on nontaxable service that was billed after February 28, 2003; and

(2) Will be processed normally to the extent they relate to the tax paid on nontaxable service that was billed before March 1, 2003.

## SECTION 6. EFFECT ON OTHER DOCUMENTS

Notice 2005–79, 2005–46 I.R.B. 952, is revoked. Rev. Rul. 79–404, 1979–2 C.B. 382, will be revoked in a later revenue ruling.

## SECTION 7. DRAFTING INFORMATION

The principal author of this notice is Taylor Cortright of the Office of the Associate Chief Counsel (Passthroughs and Special Industries). For further information regarding this notice, contact (202) 622–3130 (not a toll-free call).

---

# Renewable Electricity Production Credit and Refined Coal Production Credit, Publication of Inflation Adjustment Factor and Reference Prices for Calendar Year 2006

# Notice 2006–51

This notice publishes the inflation adjustment factor and reference prices for calendar year 2006 for the renewable electricity production credit and the refined coal production credit under § 45 of the Internal Revenue Code. The 2006 inflation adjustment factor and reference prices are used in determining the availability of the credits. The 2006 inflation adjustment factor and reference prices apply to calendar year 2006 sales of kilowatt-hours of electricity produced in the United States or a possession thereof from qualified energy resources and to calendar year 2006 sales of refined coal produced in the United States or a possession thereof.

## BACKGROUND

Section 45(a) provides that the renewable electricity production credit for any tax year is an amount equal to the product of 1.5 cents multiplied by the kilowatt hours of specified electricity produced by the taxpayer and sold to an unrelated person during the tax year. This electricity must be produced from qualified energy resources and at a qualified facility during the 10-year period beginning on the date the facility was originally placed in service.

Section 45(b)(1) provides that the amount of the credit determined under § 45(a) is reduced by an amount which bears the same ratio to the amount of the credit as (A) the amount by which the

reference price for the calendar year in which the sale occurs exceeds 8 cents, bears to (B) 3 cents. Under § 45(b)(2), the 1.5 cent amount in § 45(a), the 8 cent amount in § 45(b)(1), the $4.375 amount in § 45(e)(8)(A), and in § 45(e)(8)(B)(i) the reference price of fuel used as feedstock (within the meaning of § 45(c)(7)(A)) in 2002 are each adjusted by multiplying the amount by the inflation adjustment factor for the calendar year in which the sale occurs. If any amount as increased under the preceding sentence is not a multiple of 0.1 cent, the amount is rounded to the nearest multiple of 0.1 cent.

Section 45(c)(1) defines qualified energy resources as wind, closed-loop biomass, open-loop biomass, geothermal energy, solar energy, small irrigation power, municipal solid waste, and qualified hydropower production.

Section 45(d)(1) defines a qualified facility using wind to produce electricity as any facility owned by the taxpayer that is originally placed in service after December 31, 1993, and before January 1, 2008. See § 45(e)(7) for rules relating to the inapplicability of the credit to electricity sold to utilities under certain contracts.

Section 45(d)(2)(A) defines a qualified facility using closed-loop biomass to produce electricity as any facility (i) owned by the taxpayer that is originally placed in service after December 31, 1992, and before January 1, 2008, or (ii) owned by the taxpayer which before January 1, 2008, is originally placed in service and modified to use closed-loop biomass to co-fire with coal, with other biomass, or with both, but only if the modification is approved under the Biomass Power for Rural Development Programs or is part of a pilot project of the Commodity Credit Corporation as described in 65 Fed. Reg. 63052. Section 45(d)(2)(B) provides that in the case of a qualified facility described in § 45(d)(2)(A)(ii), (i) the 10-year period referred to in § 45(a) is treated as beginning no earlier than the date of enactment of § 45(d)(2)(B)(i); (ii) the amount of the credit determined under § 45(a) with respect to the facility is an amount equal to the amount determined without regard to § 45(d)(2)(B)(ii) multiplied by the ratio of the thermal content of the closed-loop biomass used in the facility to the thermal content of all fuels used in the facility; and (iii) if the owner of the facility is not the

**Exhibit B**

## SECTION 4. EFFECTIVE DATE

Regulations incorporating the guidance set forth in this notice will apply to tax years beginning on or after January 1, 2006. Until such regulations are issued, nonresident alien individuals may rely on this notice.

## SECTION 5. DRAFTING INFORMATION

The principal author of this notice is Paul J. Carlino of the Office of Chief Counsel (International). For further information regarding this notice, contact Mr. Carlino at (202) 622–3840 (not a toll-free call).

---

# South Asia Earthquake Occurring on October 8, 2005, Designated as a Qualified Disaster Under § 139 of the Internal Revenue Code

## Notice 2005–78

This notice designates the South Asia earthquake occurring on October 8, 2005, as a qualified disaster for purposes of § 139 of the Internal Revenue Code, and describes the affected areas.

## SOUTH ASIA EARTHQUAKE

A magnitude 7.6 earthquake struck Pakistan, India, and Afghanistan on October 8, 2005, with resulting aftershocks. The earthquake inflicted enormous damage in South Asia. Published reports currently estimate that in Pakistan and India, more than 54,000 people were killed, over 82,000 were injured, and almost 3 million were displaced from their homes. *USAID Fact Sheet No. 14* (October 24, 2005). This notice provides U.S. tax relief that will facilitate assistance to certain victims of the South Asia earthquake.

## QUALIFIED DISASTER RELIEF PAYMENTS EXCLUDED FROM RECIPIENT'S GROSS INCOME

Section 139(a) provides that gross income shall not include any amount received by an individual as a qualified disaster relief payment.

Section 139(b) provides that a qualified disaster relief payment includes any amount paid to or for the benefit of an individual—

(1) to reimburse or pay reasonable and necessary personal, family, living, or funeral expenses (not otherwise compensated for by insurance or otherwise) incurred as a result of a qualified disaster, or

(2) to reimburse or pay reasonable and necessary expenses (not otherwise compensated for by insurance or otherwise) incurred for the repair or rehabilitation of a personal residence or repair or replacement of its contents to the extent that the need for such repair, rehabilitation, or replacement is attributable to a qualified disaster.

Under § 139(c)(3) the term "qualified disaster" includes a disaster resulting from an event that is determined by the Secretary to be of a catastrophic nature.

## DESIGNATION AS QUALIFIED DISASTER

The Commissioner of Internal Revenue, pursuant to delegation by the Secretary, has determined that the South Asia earthquake occurring on October 8, 2005, is an event of a catastrophic nature under § 139(c)(3). Therefore, the South Asia earthquake is designated as a qualified disaster under § 139 in the affected areas of these countries: Pakistan, India, and Afghanistan.

## SECTION 501(c)(3) ORGANIZATIONS

Because this notice designates the South Asia earthquake as a qualified disaster under § 139, employer-sponsored private foundations may choose to provide disaster relief to employee victims of the earthquake. Like all organizations described in § 501(c)(3), private foundations should exercise due diligence when providing disaster relief as set forth in Publication 3833, *Disaster Relief: Providing Assistance Through Charitable Organizations.*

## DRAFTING INFORMATION

The principal author of this notice is Shareen S. Pflanz of the Office of Associate Chief Counsel (Income Tax & Accounting). For further information regard-

ing this notice, contact Shareen S. Pflanz at (202) 622–4920 (not a toll-free call).

---

# Communications Excise Tax; Section 4251

## Notice 2005–79

The government's recent loss in *American Bankers Ins. Group v. United States*, 408 F.3d 1328 (11th Cir. 2005), *rev'g* 308 F. Supp. 2d 1360 (S.D. Fla. 2004), has caused some to question the continued applicability of the communications excise tax imposed by § 4251 of the Internal Revenue Code.

The government did not seek review by the United States Supreme Court in *American Bankers Insurance Group*. Nevertheless, the government will continue to litigate this important issue. The government is prosecuting appeals in five different circuits. The appeal in *Office Max v. United States*, 309 F. Supp. 2d 984 (N.D. Ohio 2004), has been briefed and argued, and the parties are awaiting a decision.

This notice confirms that the Service will continue to assess and collect the tax under § 4251 on all taxable communications services, including communications services similar to those at issue in the cases. Collectors should continue to collect the tax, including from taxpayers within the jurisdiction of the United States Court of Appeals for the Eleventh Circuit.

Persons paying for taxable communications services (taxpayers) are required to pay the tax to a collecting agent (the person receiving the payment on which tax is imposed), and collecting agents are required to pay over the tax to the United States Treasury and to file the required returns. Taxpayers may preserve any claims for overpayments by filing administrative claims for refund with the Service pursuant to § 6511. Taxpayers are advised, however, that these claims, including claims for which appellate venue would lie in the United States Court of Appeals for the Eleventh Circuit, will not be processed while there are pending cases in other United States Courts of Appeals.

## EFFECT ON OTHER DOCUMENTS

Notice 2004–57, 2004–2 C.B. 376, is superseded.

DRAFTING INFORMATION

The principal author of this notice is Barbara B. Franklin of the Office of Associate Chief Counsel (Passthroughs and Special Industries). For further information regarding this notice, contact Cynthia A. McGreevy at (202) 622–3130 (not a toll-free call).

## Excise Tax Changes Under SAFETEA and the Energy Act; Dye Injection

## Notice 2005–80

Section 1. PURPOSE

This notice modifies Notice 2005–4, 2005–2 I.R.B. 289, as modified by Notice 2005–24, 2005–12 I.R.B. 757, and Notice 2005–62, 2005–35 I.R.B. 443 (Notice 2005–4), by providing guidance on certain excise tax provisions in the Internal Revenue Code (Code) that were added or affected by the Energy Policy Act of 2005 (Pub. L. 109–58) (Energy Act) and the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (Pub. L. 109–59) (SAFETEA). These provisions relate to the Leaking Underground Storage Tank Trust Fund (LUST) tax, treatment of kerosene for use in aviation, credit card sales of taxable fuel to certain exempt entities, and diesel-water fuel emulsions. This notice also provides additional guidance relating to mechanical dye injection of diesel fuel and kerosene.

Notice 2005–4 provides guidance on certain excise tax provisions in the Code that were added or affected by the American Jobs Creation Act of 2004 (Pub. L. 108–357) (AJCA).

Except as provided in sections 4 and 5, references to Code provisions in this notice are to the Code as in effect on October 1, 2005. References to regulations are to the Manufacturers and Retailers Excise Tax Regulations.

Section 2. LUST

(a) *In general*—(1) This section describes the changes made by § 1362 of the Energy Act to the LUST tax.

(2) Except as provided in paragraph (b) of this section, tax is imposed at the LUST financing rate of $0.001 per gallon on removals, entries, and sales of gasoline, diesel fuel, and kerosene that are described as exempt transactions in §§ 48.4081–4(b) and (d) (relating to certain uses of gasoline blendstocks), 48.4082–1 (relating to dyed fuel), 48.4082–5 (relating to diesel fuel and kerosene in Alaska), 48.4082–7 (relating to kerosene used for feedstock purposes), and § 4 of Notice 2005–4 (relating to kerosene used in aircraft). Thus, for example, the LUST tax applies to removals of dyed diesel fuel for use as heating oil or use on a farm for farming purposes and to removals of kerosene for use in foreign trade or in military aircraft.

(3) Section 6430 of the Code provides that no refund, credit, or payment under §§ 6411–6430 shall be made for the LUST tax, except in the case of fuels destined for export.

(4) Under this notice, the position holder is liable for the LUST tax imposed on removals of kerosene directly into the fuel supply tank of an aircraft for a use exempt from tax under § 4041(c). See § 3(c)(1)(iii) of this notice. Thus, for example, for kerosene removed directly into the fuel tank of an aircraft for use in foreign trade or for use in military aircraft, the position holder is liable for tax of $0.001 per gallon. For kerosene removed directly into the fuel tank of an aircraft for use in commercial aviation other than foreign trade, the aircraft operator continues to be liable for tax of $0.044 per gallon (the sum of the $0.043-per-gallon rate under § 4081(a)(2)(C) and the $0.001-per-gallon LUST tax). See § 4(d) of Notice 2005–4 (relating to § 4081(a)(4)).

(b) *Removals for export*—(1) *In general.* The LUST tax is not imposed on the removal, entry, or sale of diesel fuel or kerosene for export if—

(i) The conditions of § 48.4082–1 (relating to the exemption for dyed fuel) are met; and

(ii) The person otherwise liable for tax has an unexpired export certificate (described in paragraph (b)(2) of this section) from the buyer of the fuel and has no reason to believe any information in the certificate is false.

(2) *Export certificate.* The export certificate is a statement that is signed under penalties of perjury by a person with authority to bind the buyer and contains—

(i) The name, address, and employer identification number of the buyer;

(ii) The name, address, and employer identification number of the person otherwise liable for tax;

(iii) The number of gallons and type of fuel; and

(iv) A statement that the fuel is for export.

(c) *Effective date.* This section is effective October 1, 2005.

Section 3. TREATMENT OF KEROSENE FOR USE IN AVIATION

(a) *Overview.* This section describes the changes made by § 11161 of SAFETEA to the tax on kerosene used in aviation. Section 4 of Notice 2005–4 is modified in accordance with these changes, as explained in this section.

(b) *Kerosene for use in aviation.* SAFETEA replaced the $0.219-per-gallon tax on "aviation-grade kerosene" with rules taxing all "kerosene" at a rate of $0.244 per gallon unless a reduced rate applies as described in paragraph (c) of this section. "Kerosene" has the meaning given to the term by § 48.4081–1(b).

(c) *Reduced rates of tax on kerosene used in aviation*—(1) *In general*—(i) For kerosene removed directly from a terminal into the fuel tank of an aircraft for use in noncommercial aviation, the rate of tax is $0.219 per gallon. See section 4081(a)(2)(C)(ii), as added by SAFETEA. Except as provided in paragraph (c)(1)(ii) or (iii) of this section, a tax rate of $0.219 per gallon also applies if kerosene is removed into any aircraft from a refueler truck, tanker, or tank wagon that is loaded with kerosene from a terminal that is located within an airport (without regard to whether the terminal is located within a secured area of an airport) and the other requirements of § 4081(a)(3)(A) and (B) are met. Section 4081(a)(3). The other requirements of § 4081(a)(3)(A) and (B) relate to the characteristics of the refueler trucks, tankers, and tank wagons, the fueling operations at the terminal, and the restriction against loading kerosene into vehicles registered for highway use at such terminal.

(ii) For kerosene removed directly into the fuel tank of an aircraft for use in commercial aviation, the rate of tax is $0.044 per gallon and the rules relating to refueler trucks, tankers, and tank wagons at secured airport terminals were not affected by the

**Exhibit C**

Constitution Avenue, NW, Washington, DC 20224, Attn: CC:PA:LPD:PR (Notice 2007–9) Room 5203. Submissions may also be sent electronically via the internet to the following email address: *Notice.comments@irscounsel.treas.gov.* Include the notice number (Notice 2007–9) in the subject line.

---

# Communications Excise Tax; Toll Telephone Service

## Notice 2007–11

### SECTION 1. PURPOSE

This notice amplifies, clarifies, and modifies Notice 2006–50, 2006–25 I.R.B. 1141. That notice provides that the tax imposed by § 4251 of the Internal Revenue Code (relating to communications excise tax) does not apply to amounts paid for long distance service and bundled service (collectively, nontaxable service) and also provides that taxpayers may request a credit or refund of tax on nontaxable service that was billed to the taxpayer after February 28, 2003, and before August 1, 2006, only on their 2006 federal income tax returns. This notice—

(a) Provides the conditions under which individual taxpayers may use the standard amounts announced in IR–2006–137 (August 31, 2006) on their 2006 federal income tax returns to request a credit or refund of the excise tax paid on nontaxable service;

(b) Provides guidance regarding the Business and Nonprofit Estimation Method, announced in IR–2006–179 (November 16, 2006);

(c) Answers questions that have been raised since the issuance of Notice 2006–50; and

(d) Modifies the requirement for claims filed on or before May 25, 2006.

### SECTION 2. BACKGROUND

For the statutory background of the tax imposed by § 4251, see section 2 of Notice 2006–50. When used in this notice, *local-only service*, *long distance service*, and *nontaxable service* have the meaning given to the terms in section 3 of Notice 2006–50. *Bundled service* has the meaning given to the term by section 5 of this notice.

### SECTION 3. STANDARD AMOUNT

(a) *Conditions to allowance of standard amount.* A request for credit or refund of the standard amount, instead of the actual amount of federal communications excise tax paid for nontaxable service, may be made on a 2006 Form 1040 Series, *U.S. Individual Income Tax Return*, if any person filing the return, or any dependent listed on the return—

(1) Paid for any nontaxable service (other than for a prepaid telephone card or prepaid cellular telephone) that was billed to the taxpayer after February 28, 2003, and before August 1, 2006;

(2) Paid all federal communications excise taxes billed by their telecommunications provider after February 28, 2003, and before August 1, 2006;

(3) Has not received a credit or refund of these taxes from the telecommunications provider;

(4) Has not requested a credit or refund from the telecommunications provider or, if so requested, has withdrawn any such request; and

(5) Did not file any other claim or request for credit or refund with the IRS for the federal communications excise tax for a period after February 28, 2003.

(b) *Calculating standard amounts*—(1) *In general*—(i) *2006 Form 1040 Series (other than EZ).* To determine the standard amount, taxpayers must first determine the number of exemptions for which they are entitled on their 2006 Form 1040 Series federal income tax return (other than the 2006 Form 1040 EZ). The Instructions to the 2006 Form 1040 Series federal income tax return and Publication 501, *Exemptions, Standard Deduction, and Filing Information*, provide guidance on determining the correct number of exemptions. Once the individual determines the number of exemptions, the individual can select the appropriate standard amount based upon the number of those exemptions. Individuals should refer to the 2006 federal income tax return instructions to ensure that the standard amount is entered on the appropriate part of the return.

(ii) *2006 Form 1040 EZ.* On line 5, a taxpayer that checks the box for "you" is treated as having one exemption. A taxpayer that checks the boxes for "you" and "spouse" is treated as having two exemptions.

(2) *Amounts*—(i) For each 2006 Form 1040 Series federal income tax return filed showing one exemption for purposes of determining the standard amount, the standard amount allowed on that return is $30.

(ii) For each 2006 Form 1040 Series federal income tax return filed showing two exemptions for purposes of determining the standard amount, the standard amount allowed on that return is $40.

(iii) For each 2006 Form 1040 Series federal income tax return filed showing three exemptions for purposes of determining the standard amount, the standard amount allowed on that return is $50.

(iv) For each 2006 Form 1040 Series federal income tax return filed showing four or more exemptions for purposes of determining the standard amount, the standard amount allowed on that return is $60.

(c) *Interest.* The standard amount represents both the overpayment of the federal communications excise tax paid on nontaxable service and the interest on that overpayment.

(d) *Actual Amounts.* To request a credit or refund for the actual amount of federal communications excise tax paid, taxpayers must complete Form 8913, *Credit for Federal Telephone Excise Tax Paid*, and attach that form to their 2006 Form 1040 Series federal income tax return.

(e) *Examples.* The following examples illustrate the application of this section.

*Example 1.* A, an individual, files a joint return with Z, A's spouse. A meets the conditions to allowance described in paragraph (a) of this section. A used the 2006 federal income tax return instructions to determine that their correct number of exemptions is two. A may request the credit or refund of the federal communications excise tax under § 4251 for $40.

*Example 2.* B, an individual, used the 2006 federal income tax return instructions to determine that she had one exemption. B further used her telephone bills for the period March 1, 2003, through July 31, 2006, to determine that the total amount paid for federal communications excise tax under § 4251 for nontaxable service to all telecommunications providers was $45. Completing Form 8913 and attaching it to her 2006 Form 1040 Series federal income tax return, B may request a credit or refund of $45, the actual amount she paid in federal communications excise tax on nontaxable service under § 4251. As an alternative, B may request a credit or refund of the standard amount of $30 without having to complete Form 8913.

## SECTION 4. DISTINCTION BETWEEN LOCAL-ONLY SERVICE AND BUNDLED SERVICE

(a) *Technology for transmitting telephone call.* The method for sending or receiving a call, such as on a landline telephone, wireless (cellular) telephone or some other method, does not affect whether a service is local-only or bundled.

(b) *Combined local exchanges.* If two or more telecommunications providers combine their resources to expand the geographic area that each treats as "local" service and each bills its customers for that service as local-only service, then that service is local-only service.

(c) *Billing method.* Section 3(a) of Notice 2006–50 and section 5 of this notice provide that bundled service is local and long distance service provided under a plan that does not separately state the charge for the local telephone service. Thus, if local and long distance service is billed to a customer on a single bill but the telecommunications company separately states the amount paid for local-only service and the amount paid for long distance service, the amount paid for local-only service is subject to federal communications excise tax.

(d) *Examples.* The following examples illustrate the application of this section.

*Example 1.* Customer A purchases telecommunications service from B, a telecommunications provider. Such service includes both local-only service and long distance service. B's bill to A states $X for telecommunications service. The bill does not separately state a charge for either local-only service or long distance service. Since the bill does not separately state the charge for local-only service, the service is a bundled service. Thus, the entire amount of A's telecommunications service is bundled service and thus nontaxable service.

*Example 2.* Customer C purchases telecommunications service from D, a telecommunications provider. Such service includes both local-only service and long distance service. D's bill to C states $X amount for telecommunications service. The bill further states $Y amount for local-only service and $Z amount for long distance service. Since the charges for local-only service and long distance service are separately stated, the service is not bundled service. Accordingly, only the amounts charged for long distance service are for nontaxable service; tax is imposed on the amounts paid for the local-only service.

## SECTION 5. CLARIFICATION OF DEFINITION OF BUNDLED SERVICE

(a) *Present definition.* Section 3(a) of Notice 2006–50 defines bundled service as local and long distance service provided under a plan that does not separately state the charge for the local telephone service. Bundled service includes, for example, Voice over Internet Protocol service, prepaid telephone cards, and plans that provide both local and long distance service for either a flat monthly fee or a charge that varies with the elapsed transmission time for which the service is used. Telecommunications companies provide bundled service for both landline and wireless (cellular) service.

(b) *Reason for clarification.* The example in the second sentence of the definition of bundled service incorrectly assumes that all Voice over Internet Protocol (VoIP) service would provide both local and long distance service and that the charges for the two services would not as separately stated. As noted in section 4(a) of this notice, the method of transmitting a call is not a factor in determining whether a service is local-only or bundled. Accordingly, a VoIP service that provides local-only service is treated as local-only service.

(c) *Revised definition.* Accordingly, the definition of bundled service is clarified to read as follows:

Bundled service is local and long distance service provided under a plan that does not separately state the charge for the local telephone service. Bundled service includes plans that provide both local and long distance service for either a flat monthly fee or a charge that varies with the elapsed transmission time for which the service is used. Telecommunications companies provide bundled service for both landline and wireless (cellular) service. If Voice over Internet Protocol service provides both local and long distance service and the charges are not separately stated, such service is bundled service.

## SECTION 6. PREPAID TELEPHONE CARDS (PTC)

(a) *In general*—(1) *Prepaid telephone cards.* Section 4251(d) and § 49.4251–4

of the Facilities and Services Excise Taxes Regulations provide rules for prepaid telephone cards (PTC). Section 49.4251–4(b) defines PTC as a card or similar arrangement that permits its holder to obtain a fixed amount of communications services by means of a code (such as a personal identification number (PIN)) or other access device provided by the carrier and to pay for those services in advance. The amount paid for PTCs is determined under the rules of §§ 4251(d)(1) and (2) and § 49.4251–4(c). Under this notice, the PTC will be treated as nontaxable service unless a PTC expressly states it is for local-only service.

(2) *Other cards.* This section does not address cards that permit the holder to purchase various services in addition to telecommunications services. Such services include, but are not limited to, ring tone downloads, music downloads, text messaging, picture messaging, web browsing, game downloads, or screen saver downloads.

(b) *Application of the tax*—(1) *Definitions.* Section 49.4251–4(b) provides that—

(i) *Carrier* means a telecommunications carrier as defined in 47 U.S.C. 153.

(ii) *Holder* means a person that purchases other than for resale.

(iii) *Transferee* means the first person that is not a carrier to whom a PTC is transferred by a carrier.

(2) *Imposition, liability, and collection.* Section 4251(d) provides that the § 4251 tax is imposed on the transfer of a PTC to a transferee; § 49.4251–4(d)(1) provides that the person liable for the tax is the transferee and that the person responsible for collecting the tax generally is the carrier transferring the PTC to the transferee. Section 49.4251–4(d)(1) further provides that if a holder purchases a PTC from a transferee reseller, the amount the holder pays for the PTC is not treated as an amount paid for communications services and thus tax is not imposed on that payment.

(c) *Person eligible to request credit or refund.* The transferee is the person liable for the tax paid on a PTC and thus generally is the person eligible to request a credit or refund of the tax it paid. The carrier is eligible to request a credit or refund only if it meets the conditions of section 5(d)(4) of Notice 2006–50. The holder is not li-

able for the tax and thus cannot request a credit or refund.

## SECTION 7. PREPAID CELLULAR TELEPHONES

(a) *In general*—(1) *Prepaid cellular telephones*. Certain telecommunications providers offer wireless (cellular) telecommunications service on a prepaid service basis (prepaid telephones) whereby a customer purchases the cellular telephone with a set number of minutes available for telecommunications. When the customer exhausts the number of minutes on the prepaid telephone, the customer may purchase additional minutes. The customer does not enter into a contract with the telecommunications provider; there are no service charges after the additional purchase and no monthly bills. Under this notice, the prepaid telephone will be treated as nontaxable service unless the terms of the prepaid telephone service expressly state it is for local-only service.

(2) *Other prepaid cellular telephones*. This section does not address arrangements that permit the holder to purchase various services in addition to telecommunications services. Such services include, but are not limited to, ring tone downloads, music downloads, text messaging, picture messaging, web browsing, game downloads, or screen saver downloads.

(b) *Application of the tax*. Rules similar to the rules for PTCs, as described in section 6 of this notice, apply to prepaid telephones. Thus, the person liable for tax is the person (transferee) that buys the prepaid telephone from the telecommunications provider (carrier) and the carrier is responsible for collecting the tax. Any holder of a prepaid telephone (that is, a person that buys the prepaid telephone other than for resale) is not liable for tax.

(c) *Person eligible to request credit or refund*. The transferee is the person liable for the tax paid on a prepaid telephone and thus generally is the person eligible to request a credit or refund of the tax it paid. The carrier is eligible to request a credit or refund only if it meets the conditions of section 5(d)(4) of Notice 2006–50. The holder is not liable for the tax and thus cannot request a credit or refund.

## SECTION 8. CHARGES IN CONNECTION WITH LOCAL-ONLY SERVICE

(a) *Background*. Section 3(b) of Notice 2006–50 defines local-only service as including certain services and facilities provided in connection with local telephone service, even though these services may also be used in connection with long distance service. As examples, the notice cites to Rev. Rul. 72–537, 1972–2 C.B. 574 (telephone amplifier), Rev. Rul. 73–171, 1973–1 C.B. 445 (automatic call distributing equipment), and Rev. Rul. 73–269, 1973–1 C.B. 444 (special telephone).

(b) *Subscriber line charges*. In addition to the examples in paragraph (a) of this section, amounts paid for subscriber line charges, which are described in Rev. Rul. 87–108, 1987–2 C.B. 260, are also amounts paid for local telephone service. This charge may appear on a bill as "Federal Access Charge," "Customer or Subscriber Line Charge," or "Interstate Access Charge."

(c) *Universal service fees*—(1) *Background*. All telecommunications companies that provide interstate and international telecommunications service contribute to the federal Universal Service Fund (USF). Their contributions support four Universal Service programs established and overseen by the Federal Communications Commission (FCC). Some telecommunications companies recover their contribution to the USF directly from their customers by billing them for this charge. The FCC does not require companies to pass on these costs to their customers. Each company makes a business decision about whether and how to recover USF costs. A company that separately states this charge on a bill may call it a "Federal Universal Service Fee" or "Universal Connectivity Fee."

(2) *Application*. Because telecommunications providers charge the USF to their customers in connection with their customers' long distance service, amounts paid for separately stated USF amounts are not amounts paid for local-only service.

## SECTION 9. PERSON TO MAKE REQUEST IF TAXPAYER IS NO LONGER IN BUSINESS OR DECEASED

Neither Notice 2006–50 nor this notice create any special rules regarding the person to request a credit or refund of tax for a taxpayer that no longer exists or is deceased. The same rules that apply to requests for credits or refunds of other federal taxes also apply to similar requests of the tax imposed under § 4251. These rules depend upon the facts and circumstances relating to the reasons that the taxpayer no longer exists. The Form 8913 Instructions and Publication 559, *Survivors, Executors, and Administrators*, provide general guidance for taxpayers regarding deceased taxpayers.

## SECTION 10. EFFECT OF NOTICE 2006–50 ON STATE AND LOCAL TELECOMMUNICATIONS TAXES

Neither Notice 2006–50 nor this notice affect the ability of state or local governments to impose or collect telecommunication taxes under the respective statutes of those governments.

## SECTION 11. NO OBLIGATION OF TELECOMMUNICATIONS PROVIDERS TO SUPPLY RECORDS TO CUSTOMERS

The IRS has been asked to require telecommunications providers to supply their customers with those customers' telecommunications bills for periods after February 28, 2003, and before August 1, 2006. Neither Notice 2006–50 nor this notice requires telecommunications providers to supply billing records to their customers.

## SECTION 12. BUSINESS AND NONPROFIT ESTIMATION METHOD

(a) *In general*. This section provides rules for the Business and Nonprofit Estimation Method (EM) that eligible entities may use to determine the amount of their credit or refund for nontaxable service. Eligible entities may, but are not required to, use the EM instead of the actual amount of federal communications excise tax they paid on nontaxable service to calculate the amount of their credit or refund.

(b) *Definitions.* The following definitions apply to this section.

(1) *Eligible entity* means—

(i) Any—

(A) Business entity (including a corporation or partnership);

(B) Trust or estate;

(C) Tax-exempt organization; and

(D) Individual owner of rental property and any self-employed individual (including an independent contractor, sole proprietor, or farmer) but only if the individual (including a married couple filing a joint return) reports gross rental and business income totaling more than $25,000 on his or her 2006 federal income tax return;

(ii) That was in operation during any time from March 1, 2003 through July 31, 2006; and

(iii) That received and paid for telecommunications service that was reflected on bills dated in April 2006 and September 2006.

(2) *Total telephone expenses* means all amounts paid to every telecommunications provider used by the eligible entity for telephone service that were billed after February 28, 2003, and before August 1, 2006. These amounts include, but are not limited to, amounts paid for long distance service, local-only service, bundled service, 900 number service, universal service fees, federal, state, and local taxes. If an eligible entity is billed for telephone and non-telephone services on one bill each month and does not separately track non-telephone services in its books and records, the entire amount of that bill is included in total telephone expenses. An eligible entity may determine the amount of its total telephone expenses by examining its books and records, including, for example, its general ledger, check register, and canceled checks.

(3) *Employee* means any person working for the taxpayer full or part time as reported on the eligible entity's Form 941, *Employer's Quarterly Federal Tax Return,* for the 2nd quarter of 2006, other than any person employed as a household employee, in a non-pay status, on a pension, or an active member of the Armed Forces.

(c) *Using the EM to determine the amount of the credit or refund*—(1) *Determining the federal excise tax as a percentage of the telephone bill*—(i) First, determine the amount of federal communications excise tax on all telephone bills

dated in April 2006 and all telephone bills dated in September 2006. The amount is generally separately stated on the bill as "FET" or "federal tax".

(ii) Next, for all the April telephone bills and all the September telephone bills, divide the amount of federal communications excise tax included on the bills by the total telephone expenses on the bills. The resulting amounts are the April and September percentages, respectively.

(iii) Next, subtract the September percentage from the April percentage. For purposes of this notice, this amount is the federal excise tax percentage (FETP).

(2) *Capping the FETP*—(i) Determine the number of employees.

(ii) For taxpayers with 250 or fewer employees, the FETP is capped at 2 percent.

(iii) For taxpayers with more than 250 employees, the FETP is capped at 1 percent.

(d) *Calculating the amount of the credit or refund*—(1) *Records kept on a monthly basis.* If the entity has maintained its telephone expense records on a monthly basis, multiply the FETP amount by the taxpayer's monthly total telephone expenses for each month of the 41 month period from March 2003 through July 2006. The product of this calculation is the taxpayer's credit or refund amount.

(2) *Records kept on an annual basis.* If the entity has maintained its telephone expense records on an annual basis rather than a monthly basis, prorate its annual amount equally to each month of that year. Thus, for example, a taxpayer maintaining annual telephone expense records for 2003 would divide its total telephone expenses by 12. Next, the taxpayer would use that monthly amount to complete the calculations for the credit or refund amount for 2003.

(e) *Actual Amounts.* Use of the EM is optional. Taxpayers may use the actual amounts paid for federal communications excise tax for nontaxable service to determine the amount of their credit or refund.

(f) *Examples.* The following examples illustrate the application of this section.

*Example 1*—(i) *Facts.* Business A has 250 employees. A's April 2006 telephone bill is $1,700, including federal communications excise tax of $47.60. A's September 2006 telephone bill is $1,600, including federal communications excise tax of $24.00. A's total telephone expenses, for which it does not have monthly records, are as follows:

2003 — $10,800.00

2004 — $16,000.00

2005 — $20,000.00

2006 — $20,571.37.

(ii) *Determining the April and September percentages.* A's April percentage is 2.8 percent (47.60 ÷ 1,700). A's September percentage is 1.5 percent (24 ÷ 1,600).

(iii) *Determining the FETP.* The difference between A's April percentage and September percentage is 1.3 percent (2.8 - 1.5). Thus, the FETP is 1.3 percent.

(iv) *Capping the FETP.* Because A's number of employees does not exceed 250, A's FETP is not capped at 1 percent.

(v) *Prorating.* Because A did not maintain its total telephone expense records by amount, it prorates those amounts equally to each month within the March 2003 — July 2006 period for each particular year. For 2003, A divides its total telephone expense of $10,800 by 12 and multiplies that result by 10 (the number of months between March and December). ([10,800 ÷ 12] x 10 = 9,000.) For 2006, A divides its total telephone expense of $20,571.37 by 12 and multiplies that result by 7 (the number of months between January and July). ([20,571.37 ÷ 12] x 7 = 12,000.)

(vi) *Calculating the amount of the credit or refund.* Using the EM, the amount of A's credit or refund is calculated as follows:

2003:  $9,000 x .013 = $117 (117÷10 = 11.7) Monthly amount $11.70

2004:  $16,000 x .013 = $208 (208÷12 = 17.33) Monthly amount $17.33

2005:  $20,000 x .013 = $260 (260÷12 = 21.67) Monthly amount $21.67

2006:  $12,000 x .013 = $156 (156÷7 = 22.29) Monthly amount $22.29

(vii) *Reporting the credit or refund amounts on Form 8913*—(A) Because the credit or refund period does not align with the calendar quarters, Form 8913 requires taxpayers to report the credit or refund amounts in 13 three-month intervals and one two-month interval. Thus, A would report credit or refund amounts on Form 8913 as follows:

March, April, May 2003 — $35.10 (11.70 x 3 = 35.10)

June, July, August 2003 — $35.10 (11.70 x 3 = 35.10)

September, October, November 2003 — $35.10 (11.70 x 3 = 35.10)

December 2003, January, February 2004 — $46.36 (11.70 + [17.33 x 2] = 46.36)

March, April, May 2004 — $51.99 (17.33 x 3 = 51.99)

June, July, August 2004 — $51.99 (17.33 x 3 = 51.99)

September, October, November 2004 — $51.99 (17.33 x 3 = 51.99)

December 2004, January, February 2005 — $60.67 (17.33 + [21.67 x 2] = 60.67)

March, April, May 2005 — $65.01 (21.67 x 3 = 65.01)

June, July, August 2005 — $65.01 (21.67 x 3 = 65.01)

September, October, November 2005 — $65.01 (21.67 x 3 = 65.01)

December 2005, January, February 2006 — $66.25 (21.67 + [22.29 x 2] = 66.25)

March, April, May 2006 — $66.87 (22.29 x 3 = 66.87)

June, July 2006 — $44.58 (22.29 x 2 = 44.58)

(B) After determining the amount of credit or refund using the EM, A reports the amounts on Form 8913, and attaches the Form 8913 to A's 2006 federal income tax return.

*Example 2.* The same facts as *Example 1* except that A has 500 employees. A's FETP is capped at 1 percent. Thus, A must make the same calculation as in *Example 1* to determine the proper amount of A's credit or refund of federal communications excise tax using the FETP of 1 percent, rather than 1.3 percent.

## SECTION 13. FORM 1040EZ–T, REQUEST FOR REFUND OF FEDERAL TELEPHONE EXCISE TAX

Individuals who do not have to file a federal income tax return and who meet the conditions for requesting a refund of the federal communications excise tax may file Form 1040EZ–T to request the refund. Individuals requesting a refund of actual amounts of federal communications excise tax paid must complete Form 8913 and attach that form to the Form 1040EZ–T.

## SECTION 14. MODIFICATION OF PROVISION REGARDING REQUESTS FOR CREDIT OR REFUND

(a) *Present requirement.* Section 5(g) of Notice 2006–50 provides as follows:

*Requests that do not follow the provisions of this notice.* Requests that do not follow the provisions of this notice (whether filed before or after its publication)—

(1) Will not be processed to the extent they relate to the tax paid on nontaxable service that was billed after February 28, 2003; and

(2) Will be processed normally to the extent they relate to the tax paid on nontaxable service that was billed before March 1, 2003.

(b) *Reason for modification.* Many of the pending refund claims that were filed

on or before May 25, 2006, include refund claims for nontaxable service that was billed before March 1, 2003, and after February 28, 2003. In the interest of sound tax administration and efficiency, the IRS will process all claims for credit or refund that were filed on or before May 25, 2006.

(c) *Revised requirement.* Accordingly, section 5(g) of Notice 2006–50 is modified to read as follows:

(1) Requests that do not follow the provisions of Notice 2006–50 and that were filed on or before May 25, 2006, will be processed normally.

(2) Requests that were filed on or after May 26, 2006, and do not follow the provisions of Notice 2006–50, will not be processed to the extent they relate to the tax paid on nontaxable service that was billed after February 28, 2003.

## SECTION 15. EFFECT ON OTHER DOCUMENTS

Notice 2006–50 is amplified, clarified, and modified.

## SECTION 16. DRAFTING INFORMATION

The principal author of this notice is Barbara B. Franklin of the Office of the Associate Chief Counsel (Passthroughs and Special Industries). For further information regarding this notice, contact 202–622–3130 (not a toll-free number).

---

# Weighted Average Interest Rates Update

# Notice 2007–12

This notice provides guidance as to the corporate bond weighted average interest rate and the permissible range of interest

rates specified under § 412(b)(5)(B)(ii)(II) of the Internal Revenue Code. In addition, it provides guidance as to the interest rate on 30-year Treasury securities under § 417(e)(3)(A)(ii)(II).

## CORPORATE BOND WEIGHTED AVERAGE INTEREST RATE

Sections 412(b)(5)(B)(ii) and 412(l)(7)(C)(i), as amended by the Pension Funding Equity Act of 2004 and by the Pension Protection Act of 2006, provide that the interest rates used to calculate current liability and to determine the required contribution under § 412(l) for plan years beginning in 2004 through 2007 must be within a permissible range based on the weighted average of the rates of interest on amounts invested conservatively in long term investment grade corporate bonds during the 4-year period ending on the last day before the beginning of the plan year.

Notice 2004–34, 2004–1 C.B. 848, provides guidelines for determining the corporate bond weighted average interest rate and the resulting permissible range of interest rates used to calculate current liability. That notice establishes that the corporate bond weighted average is based on the monthly composite corporate bond rate derived from designated corporate bond indices. The methodology for determining the monthly composite corporate bond rate as set forth in Notice 2004–34 continues to apply in determining that rate. See Notice 2006–75, 2006–36 I.R.B. 366.

The composite corporate bond rate for December 2006 is 5.75 percent. Pursuant to Notice 2004–34, the Service has determined this rate as the average of the monthly yields for the included corporate bond indices for that month.

The following corporate bond weighted average interest rate was determined for plan years beginning in the month shown below.

| Month | For Plan Years Beginning in: Year | Corporate Bond Weighted Average | 90% to 110% Permissible Range |
|-------|------|---------|-------|
| January | 2007 | 5.78 | 5.21 to 5.78 |

**Exhibit D**

1   Richard F. Scruggs (MS Bar # 6582)
    Sidney A. Backstrom (MS Bar # 99890)
2   Scruggs Law Firm, P.A.
    P.O. Box 1136
3   120A Courthouse Square
    Oxford, MS 38655
4   Phone: (662) 281-1212
    Fax: (662) 281-1312
5   E-mail: dickscruggs@scruggsfirm.com
    E-mail: sbackstrom@scruggsfirm.com
6
    Sheldon H. Sloan (CA Bar #34334)
7   R. Gaylord Smith (CA Bar #72726)
    Ernest Slome  (CA Bar #122419)
8   Lewis Brisbois Bisgaard & Smith
    550 West C Street, 8th Floor
9   San Diego, CA 92101
    Phone:  (619) 233-1006
10  Fax:  (619) 233-8627
    E-mail:  smith@lbbslaw.com
11
    [and other counsel as appearing on signature block]
12
    For Plaintiffs OSCAR GURROLA, ROSALVA GURROLA, and BERNADETTE CAROL
13  DUFFY

14              UNITED STATES DISTRICT COURT

15             CENTRAL DISTRICT OF CALIFORNIA

16  OSCAR GURROLA; ROSALVA          )   CASE NO.: 06-03425 SVW (Ex) BY FAX
    GURROLA; AND BERNADETTE CAROL   )
17  DUFFY                            )   *FIRST AMENDED* CLASS ACTION
                                     )   COMPLAINT
18            Plaintiffs,            )
                                     )
19       v.                          )   [JURY TRIAL DEMANDED]
                                     )
20  UNITED STATES OF AMERICA, and    )
    AT&T, INC.; AT&T SERVICES, INC.; )
21  PACIFIC BELL TELEPHONE COMPANY;  )
    VERIZON CORPORATE SERVICES       )
22  CORP.; CINGULAR WIRELESS, LLC;   )
    CELLCO PARTNERSHIP DBA VERIZON   )
23  WIRELESS; and QWEST              )
    COMMUNICATIONS INTERNATIONAL,    )
24  INC.,                            )
                                     )
25            Defendants.            )
                                     )
26

27  ///

28  ///

4822-6939-9297.3
─────────────────────────────────────────────
     FIRST AMENDED CLASS ACTION TRANSACTION COMPLAINT

**INTRODUCTION**

1

2      The Plaintiffs, on behalf of themselves and all others similarly situated, file this class

3 action complaint seeking declaratory relief, injunctive relief, money damages, and a refund of

4 federal communication excise taxes against Defendants UNITED STATES OF AMERICA,

5 AT&T, INC., AT&T SERVICES, INC., PACIFIC BELL TELEPHONE COMPANY ("PACIFIC

6 BELL"), VERIZON CORPORATE SERVICES CORP.("VERIZON"), CINGULAR WIRELESS,

7 LLC ("CINGULAR"), CELLCO PARTNERSHIP DBA VERIZON WIRELESS ("CELLCO") and

8 QWEST COMMUNICATIONS INTERNATIONAL, INC.

9      Over the last six years, the Internal Revenue Service (IRS) has improperly collected more

10 than $26 billion in federal excise "taxes" on telecommunications services.

11      On May 25, 2006, facing class action litigation and an imminent ruling on summary

12 judgment, the IRS conceded that its legal position was meritless, but announced that it would

13 return **only part** of the money it had illegally collected over the relevant time frame.  IRS Notice

14 2006-50.  Moreover, the IRS, after conceding that the "tax" is unlawful, has instructed the

15 Telecom Defendants to continue to collect this illegal "tax" until July 31, 2006.

16      This Complaint is brought to require the return of one-hundred percent of the "taxes"

17 illegally imposed over the last six years, to enjoin the further collection of such "taxes" and to

18 request other equitable and declaratory relief that is not available in other forum.  Plaintiffs, for

19 their Complaint, allege the following:

20      1.      Internal Revenue Service (IRS) is authorized by the United States Congress to

21 collect taxes due and owing to the United States.  26 U.S.C. 6201, *et. seq.*

22      2.      As a creature of statute, the IRS may not collect taxes that have not been authorized

23 by Congress.  Indeed, the IRS is not entitled to create or levy taxes on its own initiative.

24 Moreover, pursuant to the principle of judicial supremacy, the IRS is subject to the orders and

25 findings of the federal judiciary.

26      3.      Pursuant to 26 U.S.C. 4252, a federal communications excise tax is only applicable

27 to telecommunications services that are either billed on the basis of both time and distance or

28 provide unlimited local calls.

1    4.    Congress has unambiguously stated, and five U.S. Courts of Appeals and six U.S.

2    District Courts have unanimously held, that long distance telephone services which are not billed

3    on both a time and distance basis or provide unlimited local calls, are not subject to the 3% tax.

4    *American Bankers Insurance Group v. United States*, 408 F.3d 1328 (11th Cir. 2005) (reversing

5    dismissal and awarding judgment for plaintiffs); *Office Max, Inc. v. United States*, 309 F.Supp. 2d

6    904 (N.D. Ohio 2004) aff'd 2005 WL 286 1031 (6th Cir. 2005) (affirming summary judgment for

7    plaintiffs); *National Railroad Passenger Corp. v. United States*, 431 F.3d 374 (D.C. Cir. 2005)

8    (affirming summary judgment for plaintiffs); *Fortis, Inc. v. United States*,-F.3d-, 2006 WL

9    1140124 (2nd Cir. April 27, 2006) (Fortis) (affirming summary judgment for plaintiffs); *Reese*

10    *Bros., Inc. v. United States*,-F.3d-, 2006, WL 1228908 (3rd Cir. May 9, 2006) (Reese Bros.)

11    (affirming summary judgment for plaintiffs); *Honeywell Intl., Inc. v. United States*, 64 Fed. Cl. 188

12    (Fed. Cl. 2005) (Honeywell) (awarding summary judgment for plaintiffs); *America Online, Inc. v.*

13    *United States*, 64 Fed. Cl. 571 (Fed. Cl. 2005) (AOL) (awarding summary judgment for plaintiffs);

14    *Hewlett Packard Co. v. United States*, 2005 WL 1865419 (N.D. Cal. August 5, 2005) (HP)

15    (awarding summary judgment for plaintiffs); *PNC Bank, N.A. v. United States*, Case No.

16    2:04CV1570 (W.D. Pa. May 16, 2006) (awarding summary judgment for plaintiffs); and *Service*

17    *Master Co. v. United States*, Case No. 05-C-3141 (N.D. Ill. May 16, 2006)(awarding summary

18    judgment for plaintiffs).

19    5.    These courts have all held that there is no federal communications excise tax on

20    telecommunications services that are not billed on the basis of distance.  Such a tax simply does

21    not exist for such services.  Accordingly, Plaintiffs and the Class are entitled to a return of all such

22    "taxes" which were imposed over the last six years.

23                                    **THE PARTIES**

24    6.    Plaintiffs OSCAR GURROLA, a private investigator, and ROSALVA GURROLA,

25    a housewife, both reside in Areleta, California.  Plaintiff OSCAR GURROLA purchases

26    telecommunication services from CINGULAR, and Plaintiff ROSALVA GURROLA purchases

27    telecommunication services from PACIFIC BELL.

28    */ / /*

4822-6939-9297.3
                                    -3-

1    7.    Plaintiff BERNADETTE CAROL DUFFY is a schoolteacher residing in Los

2  Angeles and a purchaser of telecommunications services from CELLCO.

3    8.    Plaintiffs and the Class are individuals and businesses resident in the United States,

4  who purchased telecommunications services within the last six years, which: 1) did not provide

5  unlimited access to a local exchange; and/or 2) were not billed on the basis of time and distance,

6  yet were nevertheless charged and paid the purported 3% tax.  Excluded from the Class are any

7  employees of the IRS and the United States District Court for the Central District of California.

8  Also excluded from the Class are any persons who have opted in as Class members in the action

9  entitled *Rosenberg v. United States of America*, Case No. 05-1272-T, pending in the United States

10  Court of Federal Claims.  Finally, excluded from the Class are counsel prosecuting this action.

11    9.    Plaintiffs also bring this class action, against the Telecom Defendants for violation

12  of California Business & Professions Code § 17200, *et. seq.* on behalf of a sub-class consisting of

13  California residents who within the last six years, paid federal communications excise tax on

14  telecommunications services which: 1) did not provide unlimited access to a local exchange; and

15  2) were not billed on the basis of time and distance and who have not requested a refund of such

16  tax.

17    10.    Plaintiffs and the Class paid Federal Excise Tax on such telecommunications

18  services and have not received a refund of such taxes.

19    11.    Defendant IRS is the United States of America.

20    12.    Defendant AT&T SERVICES, INC.  It has various responsibilities with respect to

21  the federal excise tax including, filing federal excise returns with the IRS, determining the

22  applicability to the federal excise tax to new telecommunications products and services directly

23  interacting with the IRS for purposes of their audits respecting federal excise tax issues.

24    13.    Defendant AT&T, INC. is a provider of long-distance services.

25    14.    Defendant CINGULAR is a wholly-owned subsidiary of AT&T, INC., providing

26  wireless and long-distance services.

27  ///

28  ///

15.    Defendant VERIZON CORPORATE SERVICES, CORP., is a wholly-owned subsidiary of Verizon Communications, Inc.  It is responsible for VERIZON'S preparation of excise tax returns and payments of excise tax.

16.    Defendant CELLCO PARTNERSHIP is a provider of wireless and long-distance services.

17.    Defendant QWEST COMMUNICATIONS INTERNATIONAL, INC. is a provider of wireless and long distance services.

18.    Defendants AT&T, INC.; AT&T SERVICES, INC., PACIFIC BELL TELEPHONE COMPANY; VERIZON CORPORATE SERVICES CORP., CINGULAR, CELLCO PARTNERSHIP, and QWEST COMMUNICATIONS INTERNATIONAL, INC. provide telecommunications services directly, or, in some cases, through related subsidiaries.  These defendants are collectively identified as the "Telecom Defendants".

19.    The Telecom Defendants calculate, bill and collect the 3% Tax despite knowing that such "tax" is not lawful, authorized or proper.

**JURISDICTION AND VENUE**

20.    Jurisdiction is conferred on this Court by 28 U.S.C. § 1346; 28 U.S.C. § 1331; 28 U.S.C. § 1332 (d); 28 U.S.C. § 2201; and 5 U.S.C. § 702.

21.    Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1402.

22.    Pursuant to the Little Tucker Act, the Federal Government has waived sovereign immunity.

**FACTS**

A.    **Federal Communications Excise Tax**

23.    The first Federal Communications Excise Tax was enacted in 1898, twenty-two years after Alexander Graham Bell's invention of the telephone.  In 1965, Congress enacted the Excise Tax Reduction Act repealing most excise taxes and immediately reducing the telephone excise tax from ten percent to three percent.  79 Stat. at 145, Pub.L. No. 89-44.

24.    The 1965 Act retained three categories of taxable services: "local telephone service," "toll telephone service" and "teletypewriter exchange service." As to toll telephone

1    service, originally defined in the 1958 legislation as "a telephone or radio telephone message or

2    conversation for which (1) there is a toll charge, and (2) the charge is paid within the United

3    States," Congress enacted the following definition, which is unchanged to this day:

4         (A)    a telephonic quality communication for which (A) there is a toll charge

5                which varies in amount with the distance and elapsed transmission time of

6                each individual communication and

7         (B)    the charge is paid within the United States, and

8         (C)    a service which entitles the subscriber, upon payment of a periodic charge

9                (determined as a flat amount or upon the basis of total elapsed transmission

10               time), to the privilege of an unlimited number of telephonic

11               communications to or from all or a substantial portion of the persons having

12               telephone or radio telephone stations in a specified area which is outside the

13               local telephone system area in which the station provided with this service is

14               located.

15   79 Stat. at 146, Pub.L. No. 89-44; 26 U.S.C. § 4252(b).

16        25.    When Congress enacted this legislation (and for many years before and after its

17   passage), the United States had only one provider of long-distance service: AT&T. *See, e.g., Am.*

18   *Bankers Ins. Group v. United States*, 408 F.3d 1328, 1333 (11th Cir.2005). In the 1965 Act,

19   Congress sought to limit the excise tax to the services as AT&T then provided them.

20        26.    AT&T's long distance service at that time charged long distance telephone services

21   on the basis of the elapsed time of each individual call, multiplied by a rate determined through the

22   use of distance mileage bands or for "Wide Area Telephone Service," commonly referred to as

23   WATS, with a periodic charge for unlimited access within a specified area outside of local service.

24   At the time, AT&T's service, which Congress sought to define as taxable toll service, did in fact

25   utilize rates that varied by both elapsed transmission time and distance. Congress could have

26   amended the language in 1965 to include broad terms able to adapt to technological changes;

27   instead, Congress specifically defined "toll telephone service" with an eye toward the tax expiring

28   four years later.

1        27.     By 1969, Congress was seeking to modify and narrow the definition, and to phase

2    this excise tax out entirely by 1969. *See America Online*, 64 Fed.Cl. at 578 (citing *Trans-Lux*

3    *Corp.*, 696 F.2d at 966). It never got around to do it. Subsequently, after the break up of AT&T,

4    the telecom industry changed the way it charged for long distance service, and ceased charging

5    based upon both elapsed time and distance, thereby rendering the excise tax statute inapplicable to

6    the new form of charging for long distance service.

7        28.     Consequently, the Court of Claims held, forty years later, "if the statutory language

8    no longer fits the infrastructure of the industry, the IRS needs to ask for congressional action to

9    bring the statute in line with today's reality. It cannot create an ambiguity that does not exist or

10    misinterpret the plain meaning of statutory language to bend an old law toward a new direction."

11    *America Online*, 64 Fed.Cl. at 578 (quoting *Nat'l R.R.*, 338 F.Supp.2d at 27-28).

12        29.     Numerous courts have agreed with the Court of Claims and have concluded that the

13    defined scope of the tax is "clear and unambiguous." *See America Online*, 64 Fed.Cl. at 577-78

14    ("Section 4252(b)(1) unambiguously requires that a toll charge vary in amount according to both

15    the distance and duration of calls."); *Honeywell Int'l, Inc. v. United States*, 64 Fed.Cl. at 199

16    (finding § 4252(b)(1)'s phrase "distance and elapsed transmission time" unambiguous and noting

17    that "and" can be construed in certain contexts cumulatively, but finding the clearly conjunctive

18    use in § 4252(b)(1) "'supported by the fact that both distance and time were . . . factors in

19    determining charges for toll telephone service at the time of the 1965 amendments[;] in this

20    context, it is only logical to conclude that when Congress wrote the phrase, . . . it meant for the

21    word "and" to be read conjunctively.'") (quoting *Office Max*, 309 F.Supp.2d at 995); *Nat'l R.R.*

22    *Passenger Corp.*, 338 F.Supp.2d at 27-28 (finding phrase unambiguous; "and" intended

23    conjunctively); *Fortis, Inc.* 2004 WL 2085528, at *6 (same), *Reese Bros., Inc. v. United States*,

24    2004 WL 2901579, slip op. at *7 (same). "The Court must presume that Congress meant what it

25    said when it tailored the definition of taxable 'toll telephone service' to include distance and time

26    requirements, particularly in light of the overall goal of the Act to reduce and restrict the

27    application of federal excise taxes." *Office Max*, 309 F.Supp.2d at 1000; *see also Honeywell Int'l,*

28    *Inc.*, 64 Fed.Cl. at 199-200; *America Online*, 64 Fed.Cl. at 578. "While it may have been

1  short-sighted of Congress to define 'toll telephone service' to specifically address the charging

2  scheme used by AT&T in 1965, . . . '[i]t is beyond [the court's] province to rescue Congress from

3  its drafting errors.'" *Honeywell Int'l, Inc.*, 64 Fed. Cl. at 199 (first alteration in original) (quoting

4  *Lamie v. United States Tr.*, 540 U.S. 526, 542, 124 S.Ct. 1023, 1034, 157 L.Ed.2d 1024 (2004)

5  (internal marks and citation omitted)).

6  **B.     Courts Have Unanimously Ruled Against the IRS**

7          30.    Five United States Courts of Appeal have ruled against the IRS. *American Bankers*

8  *Ins. Group v. United States*, 408 F.3d 1328 (11th Cir. 2005); *Office Max, Inc. v. United States*, 309

9  F. Supp. 2d 984 (N.D. Ohio 2004) aff'd 2005 WL 2861031 (6th Cir. 2005); *National Railroad*

10  *Passenger Corp. v. United States*, 431 F.3d 374 (D.C. Cir. 2005); *Fortis Inc. v. United States*, -

11  F.3d - 2006 WL 1140124 (2nd Cir. April 27, 2006); *Reese Bros., Inc. v. United States*, -F.3d, 2006

12  WL1228908 (3rd Cir. May 9, 2006).  None have ruled for the IRS.

13          31.    Every other United States District Court which has considered the issue has granted

14  summary judgment against the IRS and in favor of taxpayers. *Honeywell Int'l, Inc. v. United*

15  *States*, 64 Fed. Cl. 188 (Fed. Cl. 2005); *America Online, Inc v. United States*, 64 Fed. Cl. 571

16  (Fed. Cl. 2005); *Hewlett-Packard Co. v. United States*, 2005 WL 1865419 (N.D. Cal. August 5,

17  2005); *PNC Bank, N.A. v. United States*, Case No. 2:04CV1570 (W.D. Pa. May 16,

18  2006)(awarding summary judgment for plaintiffs); and *Service Master Co. v. United States*, Case

19  No. 05-C-3141 (N.D. Ill. May 16, 2006) (awarding summary judgment for plaintiffs).

20  **C.     IRS Refused to Follow the Decisions of the Judiciary**

21          32.    Although the judiciary unanimously concluded that the IRS is unlawfully collecting

22  the Excise Tax, the IRS announced that it would not follow the decisions of the courts.

23          33.    In Notice 2005-79, the IRS announced that "government's recent loss in *American*

24  *Bankers Ins. Group v. United States*, 408 F.3d 1328 (11th Cir. 2005), rev'g 308 F. Supp. 2d 1360

25  (S.D. Fla. 2004), has caused some to question the continued applicability of the communications

26  excise tax imposed by § 4251 of the Internal Revenue Code."

27          34.    Notice 2005 -79 did not address the government's similar recent loss at the Sixth

28  Circuit in *Office Max, Inc. v. United States*, 309 F. Supp. 2d 984 (N.D. Ohio 2004) aff'd 2005 WL

1   2861031 (6th Cir. 2005), or its more recent losses in the D.C. Circuit, the Second Circuit, and the

2   Third Circuit.

3       35.    In *American Bankers Insurance Group*, the IRS could have sought a definitive

4   answer from the Supreme Court but did not. The IRS stated that the "government did not seek

5   review by the United States Supreme Court in American Bankers Insurance Group. Nevertheless,

6   the government will continue to litigate this important issue. The government is prosecuting

7   appeals in five different circuits." *Id.*

8       36.    Although the judicial branch determined that the IRS is not permitted to assess the

9   tax against such communications services, the IRS further directed that "this notice confirms that

10  the Service will continue to assess and collect the tax under § 4251 on all taxable communications

11  services, including communications services similar to those at issue in the cases." *Id.*

12      37.    Even though the *American Bankers Insurance Group* decision is the law in the

13  Eleventh Circuit, and the IRS chose not to appeal the *American Bankers Insurance Group* Court's

14  decision, the IRS has ordered that "Collectors should continue to collect the tax, including from

15  taxpayers within the jurisdiction of the United States Court of Appeals for the Eleventh Circuit."

16  *Id.*

17      38.    The IRS further demanded under penalty of law that taxpayers "are required to pay

18  the tax to a collecting agent (the person receiving the payment on which tax is imposed), and

19  collecting agents are required to pay over the tax to the United States Treasury and to file the

20  required returns.

21      39.    The IRS also refused to seek certiorari as to any of the adverse decisions of the

22  United States Courts of Appeal, thereby frustrating any judicial solution short of a class action or

23  injunction.

24  **D.    IRS Unilaterally Reverses Its Non-Acquiescence, Agrees to Stop Collecting the FET**
    **Only After July 31, 2006, And Only Agrees To Return Only Part of Its Profits From**

25  **Its Unlawful Activity.**

26      40.    As a result of the IRS' unlawful activity, a class action complaint was filed in the

27  United States Court of Federal Claims. (*Rosenberg v. United States of America*, Case No.

28  05-1272-T.)

4822-6939-9297.3                            -9-

FIRST AMENDED CLASS ACTION TRANSACTION COMPLAINT

1       41.    Recognizing that all previous Federal Excise Tax cases had been decided on

2  summary judgment in favor of the taxpayer, the *Rosenberg* plaintiff filed a cross-motion for

3  summary judgment and moved for class certification.

4       42.    Briefing on plaintiff's cross-motion for summary judgment was closed by the end of

5  May 2006.

6       43.    Recognizing that every federal circuit had ruled against it, and that it was in

7  imminent danger of losing a federal class action, the IRS on May 25, 2006 formally rescinded its

8  Notice 2005-79, and conceded that its actions were unlawful.  Notice 2006-50.

9       44.    The IRS further declared that it would eventually, but not immediately, follow the

10  orders of the judiciary. *Id.*

11       45.    However, the IRS announced that it would continue to violate the law until July 31,

12  2006.  The IRS unlawfully instructed to the Telecom Defendants to continue to violate the law

13  until that time. *Id.*

14       46.    The IRS further declared that it would limit its return of ill-gotten gains to only the

15  last three years, rather than the last six years, as permitted by Federal Law.

16       47.    Because telecommunications bills are stored electronically, the names of most

17  injured parties and the amounts owed are readily ascertainable.

18       48.    However, under the procedure announced in Notice 2006-50, none of the

19  Defendants will take steps on their own initiative to run a simple database query to identify the

20  injured plaintiffs, calculate their injuries and return their improperly assessed "taxes."

21       49.    Instead, the IRS will keep the amounts paid by any plaintiff who does not become

22  aware of the availability of a refund and/or does not affirmatively request the remittance of this

23  tax.

24       50.    Moreover, the IRS' proposal creates a different standard and procedure for business

25  taxpayers than for individual taxpayers.

26       51.    As a result, the IRS expects to keep the entirety of illegal exaction for years 2000,

27  2001, and 2002, while returning only a fraction of the funds collected for years 2003 through 2006.

28

1      52.    Meanwhile, it expects to continue to illegally collect this tax through July 31, 2006

2   and then use this illegal exaction to pay for its refund claims.

3   **E.    IRS Preemptively Denied, or in the Alternative Rendered Futile, Any Administrative**

4       **Remedy**

5      53.    Pursuant to 26 U.S.C. 7422, taxpayers seeking a refund are generally required to

6   file an administrative request or otherwise exhaust administrative remedies.  If the IRS fails to

7   grant the refund within six-months, taxpayers are entitled to file claims in court.

8      54.    Here, this requirement has been waived by, *inter alia*, Notice 2005-79, because the

9   IRS has announced that it will not approve any refund requests and will not even begin to process

10  or consider refund requests for the foreseeable future.  Taxpayers, including the Plaintiffs class, are

11  entitled to rely upon the representations of the IRS.  The IRS further announced warned that refund

12  claims "will not be processed" while there are pending cases in other United States Courts of

13  Appeals." *Id.*

14     55.    Notice 2006-50 also constitutes a denial of all administrative requests because it

15  purports to state that no request will even be considered within six months as required by the law

16  and that taxpayers must wait until they file their 2006 taxes in 2007 to claim their refunds.

17     56.    In short, the IRS has declared that it will continue to retain the taxpayers' money for

18  longer than is permitted by the law.

19     57.    Because Notices 2005-79 and 2006-50 establish that refund requests will not be

20  approved within six months, any such efforts to file for refunds are futile.  Therefore, the IRS has

21  prospectively denied all requests for refund of the 3% tax.

22  **F.    Non-Uniform Imposition of Federal Excise Tax**

23     58.    The IRS has declared that it will continue to impose excise taxes on some taxpayers

24  at least through July 31, 2006.  Notice 2005-79; Notice 2006-50.

25     59.    However, on information and belief, there are multiple corporate taxpayers which

26  will no longer pay the tax and/or will have received refunds of such tax.  *See American Bankers*

27  *Insurance Group, OfficeMax, Fortis, Reese, Conrail, AOL, Honeywell, Hewlett-Packard, PNC*

28

1    *Bank N.A. supra.* These cases are concluded and the IRS will provide refunds of taxes for years

2    prior to 2003.

3          60.    Here, Plaintiffs and the Class for years prior to 2003, and subsequent to 2003, paid

4    for telecommunications services that are similar and/or identical to those services at issue in the

5    cases cited above and for which taxpayers will be granted refunds under Notice 2006-50.

6          61.    Plaintiffs and the Class are similarly-situated to the corporate plaintiffs in the cases

7    decided above.

8          62.    Although Plaintiffs and the Class purchased identical services, and are similarly-

9    situated to the corporate plaintiffs, they paid federal excise taxes and have not received refunds of

10    such tax on service for which the corporate plaintiffs have not paid, will not pay or will receive

11    refunds.

12          63.    The IRS imposed, assessed, collected, and will refund, the federal communications

13    excise tax in a manner that is not uniform throughout the United States.

14    **G.**    **The Telecom Defendants**

15          64.    The Telecom Defendants are aware that Federal Courts have unanimously held that

16    the purported 3% tax is not a lawful tax.

17          65.    Without authorization by Congress to collect a tax, neither the IRS, nor the

18    Telecom Defendants, have a right to exact these funds from customers.

19          66.    Nonetheless, the Telecom Defendants, knowing that this collection is illegal,

20    continue to collect the 3% tax without disclosing to their customers the unanimous judicial

21    authority striking down this tax, or informing their customers of the right to obtain refunds. As a

22    heavily regulated industry, telecommunications companies are sometimes tempted to please

23    regulators at the expense of customers. The practice of collecting an unlawful tax without

24    disclosure to customers of the unlawful nature of this tax is one of the unfair business practices

25    alleged in this complaint.

26          67.    The Telecom Defendants, knowing that the 3% Tax is not a tax, also continue to

27    falsely represent on their bills to customers that this amount is in fact a "tax", when it is not.

28

1    68.    The Telecom Defendants collect this money from customers and remit it on a

2    periodic basis to the IRS.    Once the 3% tax is remitted to the IRS, there is no adequate remedy at

3    law which would make Plaintiffs and the Class whole.

4    69.    Thus, injunctive relief is necessary to halt this unlawful collection of money from

5    customers, and to require that these sums be paid into court until final adjudication of the merits of

6    these claims.

7                              **CLASS ALLEGATIONS**

8    70.    Plaintiffs brings this class action pursuant to Federal Rules of Civil Procedure

9    23(a), 23(b)(2), and 23(b)(3) on behalf of a class of persons and entities, who reside in the United

10    States, who, within the last six years, paid federal communications excise tax on

11    telecommunications services which: 1) did not provide unlimited access to a local exchange; and

12    2) were not billed on the basis of time and distance and who have not requested a refund of such

13    tax.  Excluded from the class are defendants' legal representatives; employees of the IRS; or the

14    United States District Court for the Southern District of California and any judicial officer

15    assigned to this case and his or her immediate family.  Also excluded from the class are persons

16    who have opted-in as class members in the action entitled *Rosenberg v. United States* pending in

17    the United States Court of Federal Claims, Case No. 05-1272T. Also excluded from the class are

18    persons who have requested or received a full refund of the federal communications excise tax.

19    Also excluded from the class is counsel representing plaintiffs in the Class.  Plaintiffs also bring

20    this class action against the Telecom Defendants for violation of California Business &

21    Professions Code § 17200, *et seq.* on behalf of a sub-class of California residents, who within the

22    last six years, paid federal communications excise tax on telecommunications services, which: 1)

23    did not provide unlimited access to a local exchange; and 2) were not billed on the basis of time

24    and distance and who have not requested a refund of such tax.

25    71.    Plaintiffs, OSCAR GURROLA, ROSALVA GURROLA and BERNADETTE

26    CAROL DUFFY, are members of the Class and sub-class they seek to represent.

27    72.    The Class and sub-class (collectively "the Class") consists of millions of

28    individuals and business entities and therefore are so numerous that joinder is impracticable.

1    73.    Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and all of

2    the Class sustained damages as a result of Defendant's collection of 3% tax in violation of the law

3    and in violation of findings and orders of the judiciary.

4    74.    There are numerous questions of law and fact common to the Class which

5    predominate over any questions affecting only individual class members, including:

6    a.    Whether the telecommunications services purchased by Plaintiffs and the
     Class provided unlimited access to a local telephone exchange or were

7    billed on the basis of both time and distance;

8    b.    Whether the IRS has, in violation of the Fifth Amendment to the United
     States Constitution, taken possession of private property belonging to

9    Plaintiffs and the Class and used it for public purposes without providing
     any compensation to Plaintiffs;

10

11    c.    Whether the Defendants classification of services and taxpayers is so
     arbitrary and capricious such that its collection of the 3% Tax from
     subscribers did not constitute the exertion of taxation but a confiscation of

12    property;

13    d.    Whether the IRS's actions were so wanting in basis for classification as to
     produce such a gross and patent inequality as to inevitably lead to the

14    conclusion that such actions were not the exertion of taxation but a
     confiscation of property;

15

16    e.    Whether, in violation of Article I, to the United States Constitution, the IRS
     has collected and continues to collect the 3% Tax in a manner that is not
     uniform through the United States;

17

18    f.    Whether the IRS has received money, directly or in effect, from an illegal
     action;

19    g.    Whether the Defendants have been unjustly enriched at the Plaintiffs' and
     the Class' expense;

20

21    h.    Whether the Telecom Defendants have committed unfair business practices
     in failing to disclose the unlawful of the tax, continuing to represent the tax
     as a lawful tax on customers' bills, continuing to collect the "tax" without

22    seeking a judicial determination of the lawfulness of this tax, and assisting
     the IRS in its unlawful conduct.

23

24    i.    Whether Defendants should be enjoined from continuing its unlawful
     conduct;

25    j.    Whether Defendants are liable to the Plaintiffs and the Class in this action,
     as alleged in the Complaint; and

26

27    k.    Whether an Order should be entered declaring the assessment and collection
     of the tax as being unlawful.

28

1    75.    All common questions can be resolved through the same factual occurrences as

2    specifically and/or generally alleged herein.

3    76.    Plaintiffs will fairly and adequately represent and protect the interests of the

4    members of the Class.

5    77.    Plaintiffs have no claims antagonistic to those of the Class.

6    78.    Plaintiffs have retained competent and experienced counsel in complex class

7    actions and telecommunications litigation. Counsel is committed to the vigorous prosecution of

8    this action.

9    79.    A Class action is superior to all other available methods for the fair and efficient

10   adjudication of this controversy.

11   80.    The expense and burden of litigation would substantially impair the ability of the

12   Class Members to pursue individual cases in order to initiate their rights.

13   81.    In the absence of a class action, the Defendants will retain the benefits of their

14   wrongdoing.

15   82.    Class certification pursuant to Rule 23(b)(3) is appropriate because the common

16   issues of fact and law alleged herein are common to the Class and predominate over any questions

17   affecting only individual members, thereby rendering the class action superior to all other available

18   methods for the fair and efficient adjudication of this controversy.

19   83.    Class certification is also appropriate pursuant to Rule 23(b)(2) because, as set forth

20   in the Complaint, Defendant has acted and/or refused to act on grounds generally applicable to the

21   Plaintiffs and the Class; thereby warranting appropriate injunctive and/or declaratory relief.

22   **UNIQUE CIRCUMSTANCES REQUIRING CLASS CERTIFICATION**

23   84.    It is well-established that it is the province of the courts to "state what the law is,"

24   and that all persons are subject to the law as determined by the courts.

25   85.    Citizens are required to obey the decisions of the judiciary, including the decisions

26   of the lower courts.

27   86.    However, under the non-acquiescence doctrine, the IRS has claimed, and continues

28   to claim, that it is bound by only rulings of the United States Supreme Court, and it is obligated to

1  follow lower court tax rulings only with respect to the party involved in the particular suit, and can

2  disregard these rulings as precedent.

3      87.    Under the IRS' assertion of its alleged non-acquiescence doctrine, and pursuant to

4  Notice 2005-79, the IRS has ignored the decisions of the courts, has continued to unlawfully

5  collect the excise tax, and can force each taxpayer to individually litigate his right to a refund.

6      88.    Class certification is the most efficient means to prevent the IRS and the Telecom

7  Defendants from continuing to unlawfully collect this tax and requiring each individual taxpayer to

8  file a separate lawsuit, waste taxpayer resources, and risk inconsistent verdicts.

9      89.    Without class certification, the IRS can require piecemeal litigation for past

10  collected taxes and can continue to unlawfully collect these taxes into the future.

11                          **COUNT I**
                     **(Against the United States)**

12

13      90.    The Plaintiffs and the Class hereby incorporate their allegations in the above

14  paragraphs as if fully rewritten.

15      91.    In violation of the Fifth Amendment to the United States Constitution, the United

16  States government has taken and continues to threaten to take possession of private property

17  belonging to Plaintiffs and the Class without providing compensation to Plaintiffs or the Class.

18      92.    The IRS' classification of services and taxpayers is arbitrary and capricious such

19  that its imposition and collection of the purported 3% Tax from Plaintiffs and the Class did not

20  constitute the exertion of taxation but a confiscation of property.

21      93.    The IRS' actions were so wanting in basis for classification as to produce such a

22  gross and patent inequality as to inevitably lead to the conclusion that such actions were not the

23  exertion of taxation but a confiscation of property.

24      94.    At all times, the United States was aware that the property in question belonged to

25  Plaintiffs and the Class.

26  ///

27  ///

28  ///

4822-6939-9297.3

-16-

FIRST AMENDED CLASS ACTION TRANSACTION COMPLAINT

1                                   **COUNT II**
                               **(Against the United States)**

2

3        95.     The Plaintiffs and the Class hereby incorporate their allegations in the above

4 paragraphs as if fully rewritten.

5        96.     Article I, § 8 of the U.S. Constitution delegates to Congress the power "to lay and

6 collect Taxes, Duties, Imposts and Excises, . . . but all Duties, Imposts and Excises shall be

7 uniform through the United States."

8        97.     In violation of Article I, to the United States Constitution, the IRS has collected and

9 continues to collect the 3% Tax from Plaintiffs and the Class in a manner that is not uniform

10 through the United States.

11        98.     Plaintiffs and the Class have suffered damages from the non-uniform collection of

12 the 3% Tax in an amount to be proven at trial.

13                                    **COUNT III**
                               **(Against the United States)**

14

15        99.     The Plaintiffs and the Class hereby incorporate their allegations in the above

16 paragraphs as if fully rewritten.

17        100.     An illegal exaction claim is stated when the United States receives money, directly

18 or in effect, from illegal action, or as federal courts have explained, whenever the United States

19 has the plaintiffs' money.

20        101.     Under applicable laws and regulations, property belonging to Plaintiffs and the

21 Class were unlawfully exacted because the IRS acted, *inter alia*, in violation of 26 U.S.C. 4252, in

22 violation of the orders of the judiciary, and in violation of the Constitutional provisions cited

23 herein.

24        102.     The IRS has an implied contract with Plaintiffs and the Class to follow the orders of

25 the judiciary and not collect excise taxes in violation of the orders of the judicial branch of

26 government.

27    ///

28    ///

1
## COUNT IV
### (Against the United States)

2

3    103.    The Plaintiffs and the Class hereby incorporate their allegations in the above

4    paragraphs as if fully rewritten.

5    104.    By reason of the foregoing, Plaintiffs and the Class have overpaid their Federal

6    excise tax for all relevant time periods.

7    105.    Plaintiffs and the Class have paid all such tax in full.

8    106.    Defendant has refused to refund the Federal excise tax as required by law.

9    107.    In the alternative, Defendant has waived the requirements of a prior administrative

10   request by rendering futile all possible current requests for the refund the overpayments.

11   108.    Plaintiffs and the Class request refunds for the 3% Tax improperly paid for the last

12   six years.  These payments were made at the time of purchase of the telecommunications service,

13   at the location of the vendor, and were remitted to Defendant in Washington, D.C.  The name and

14   address of the Plaintiffs are set forth above.  The names and addresses of the class members will

15   be determined through discovery.  No refund claims have been filed for the reasons explained in

16   this Complaint.

17
## COUNT V
### (Against the United States)

18

19   109.    Plaintiffs and the Class hereby incorporate their allegations in the above paragraphs

20   as if fully rewritten.

21   110.    The "tax" assessed and collected by the IRS is not a tax authorized by the law.

22   111.    Five United States Courts of Appeal have ruled against the IRS and in numerous

23   other cases, United States District Courts have ruled against the IRS and in favor of taxpayers.

24   112.    It is clear that under no circumstances could the IRS ultimately prevail.

25   113.    Equity requires that an injunction issue precluding the IRS from collecting the

26   illegal tax because otherwise, Plaintiffs and the Class will suffer irreparable injury.

27   / / /

28   / / /

4822-6939-9297.3

-18-
FIRST AMENDED CLASS ACTION TRANSACTION COMPLAINT

**COUNT VI**
**(Against All Defendants)**

114.    Plaintiffs and the Class hereby incorporate the allegations in the above-paragraphs as if fully rewritten.

115.    Plaintiffs and the Class have conferred benefits on defendants, which defendants have unjustly retained without privilege to do so, and which in right, justice and equity, belong to Plaintiffs and the Class, specifically, Plaintiffs and the Class have paid in excess of 20 billion dollars to Defendants through the 3% Tax.  The Defendants have benefitted from the collection of these taxes by retaining the use of this money for certain periods of time, or, in the case of Defendant IRS, keeping the money entirely.

116.    Defendants' unjust enrichment has occurred at the expense of, and detriment to, Plaintiffs and the Class.

**COUNT VII**
**(Against All Defendants)**

117.    The Plaintiffs and the Class hereby incorporate the allegations in the above-paragraphs as if fully rewritten.

118.    Defendants wrongfully, purposefully, intentionally and without privilege or justification violated Federal Law and acted in an otherwise tortious manner.

119.    As a direct and proximate result of Defendants' unlawful and tortious conduct, Defendants acquired benefits and Plaintiffs and the Class suffered damages in an amount to be determined at trial.

120.    Defendants have not disgorged their ill-gotten gains.

121.    Plaintiffs and the Class are entitled to restitution of the 3% Tax.

122.    Defendants acted maliciously, willfully, and with a conscious disregard for the rights of Plaintiffs and the Class, thereby entitling Plaintiffs and the Class to punitive and/or exemplary damages in an amount to be determined at trial.

///

///

FIRST AMENDED CLASS ACTION TRANSACTION COMPLAINT

1
2

**COUNT VIII**
**(Against Telecom Defendants)**

3       123.    The Plaintiffs and the Class hereby incorporate their allegations in the above
4   paragraph as if fully rewritten.
5       124.    Pursuant to 26 U.S.C. 6415 (c), taxpayers are entitled to a refund of excise tax and
6   from "any person required under Section 4251, 4261, or 4271" to collect a tax.  The agent must
7   refund to the taxpayer, any "over-collection of such tax".
8       125.    The Telecom Defendants have "over-collected" the 3% Tax from Plaintiffs and the
9   Class.  This complaint constitutes "proper application" for the refund of such tax and accordingly,
10  the Plaintiffs and the Class are entitled to a full refund of the 3% Tax from the Telecom
11  Defendants.

12
13

**COUNT IX**
**(By the Sub-Class Against the Telecom Defendants)**

14      126.    The Plaintiffs and the sub-class hereby incorporate their allegations in the above
15  paragraphs as if fully rewritten.
16      127.    The Telecom Defendants have collected the 3% Tax while knowing that the
17  collection of this 3% Tax was in violation of the law.
18      128.    Defendants are in a class of entities meant to be regulated by the requirements of
19  California Business & Professions Code § 17200, *et seq.*  Plaintiffs are in the class of California
20  residents meant to be protected by the provisions of California Business & Professions Code §
21  17200, *et seq.*
22      129.    The Telecom Defendants knowingly violated California Business & Professions
23  Code § 17200, *et seq.* by intentionally, as a deceptive business practice, collecting the 3% Tax
24  from Plaintiffs and the sub-class, knowing that this collection is illegal and by continuing to falsely
25  represent the Plaintiffs and the sub-class on their bills that the 3% Tax is a tax, knowing that it is
26  not a tax.

27
28

4822-6939-9297.3

-20-

FIRST AMENDED CLASS ACTION TRANSACTION COMPLAINT

1    130.    The conduct of the Telecom Defendants as set forth above and in unjustly enriching

2    themselves at the expense of Plaintiffs, and converting the property of the Plaintiffs and the sub-

3    class, and in violating the law, constitutes a violation of Business & Professions Code § 17200.

4                                   **COUNT X**
                              **(Against Telecom Defendants)**
5

6    131.    The Plaintiffs and the Class hereby incorporate their allegations in the above

7    paragraphs as if fully rewritten.

8    132.    The Telecom Defendants collection of the tax, including taxes which have not been

9    paid to the Telecom Defendants to the IRS, has deprived Plaintiffs and the Class of their rightful

10   property interest in the monies collected and constitutes conversion of the property of Plaintiffs

11   and the Class.

12                                  **COUNT XI**
                                **(Against All Defendants)**
13

14   133.    The Plaintiffs and the Class hereby incorporate their allegations in the above

15   paragraphs as if fully rewritten.

16   134.    Section 47 U.S.C. 201 (b) requires that "all charges, practices, classifications, and

17   regulations, for and in connection with such communication service, shall be just and reasonable,

18   and any such charge, practice, classification or regulation that is unjust or unreasonable is declared

19   to be unlawful".

20   135.    The Federal Truth-In-Billing Regulations require that "charges contained on

21   telephone bills must be accompanied by a brief, clear, non-misleading, plain language description

22   of the service or services rendered.  The description must be sufficiently clear in presentation and

23   specific enough in content so that customers can accurately assess that the services for which they

24   are billed correspond to those that they have requested and received and that the costs assessed for

25   those services conform to their understanding of the price charged.  47 C.F.R. 64.2401 (b).

26   136.    Federal law explicitly prohibits "cramming" or the assessment of unauthorized or

27   ambiguous charges on a customer's bill.

28

1    137.    The Defendants' practices as described herein constitute unauthorized cramming,

2    violate the FCC's Truth-In-Billing Regulations and constitute violations of 47 U.S.C. 201.

3    **PRAYER FOR RELIEF**

4    WHEREFORE, Plaintiffs and the Class pray for judgment against defendants as follows:

5    a.    An Order certifying this action as a class action pursuant to Rule 23 of the

6    Federal Rules of Civil Procedure;

7    b.    An Order temporarily, preliminary and permanently enjoining and

8    restraining the IRS from continuing to assess and collect a 3% Tax on telecommunications

9    services that are not billed on the basis of both time and distance or provide unlimited local calls

10    and an Order requiring payment into Court of all such unlawfully collected taxes pending final

11    determination of this action;

12    c.    Ordering the IRS to refund to Plaintiffs and the Class all taxes erroneously

13    or illegally assessed and collected as an alleged tax on toll telephone services charged on a basis

14    other than by time and distance;

15    d.    An Order permanently enjoining and restraining the IRS from assessing and

16    collecting the unlawful tax;

17    e    An Order temporarily, preliminarily and permanently enjoining and

18    restraining the Telecom Defendants from collecting unlawful Federal excise taxes that are not

19    billed on the basis of both time and distance or provide unlimited local calls; further enjoining the

20    Telecom Defendants from remitting any and all collections of such tax to the IRS, and ordering

21    payment into Court of all such unlawfully collected taxes pending final determination of this

22    action;

23    f.    An Order requiring the Telecom Defendants to pay to Plaintiffs and the

24    Class, the amount of the unlawful tax collected, but not yet remitted, to the IRS;

25    g.    Awarding Plaintiffs and the Class monetary damages in an amount to be

26    determined at trial;

27    h.    Awarding punitive and/or exemplary damages in an amount to be

28    determined at trial;

4822-6939-9297.3

-22-

FIRST AMENDED CLASS ACTION TRANSACTION COMPLAINT

1          i.         Pre-judgment interest to the fullest extent allowed by law;

2          j.        The costs of bringing this action, including the payment of reasonable

3  attorneys fees; and

4          k.       Such other or further relief as this Court deems proper.

5

6  Dated: June 22, 2006

7                          By:

8                                R. Gaylord Smith (CA Bar #72726)
Ernest Slome  (CA Bar #122419)
Lewis Brisbois Bisgaard & Smith
550 West C Street, 8th Floor
San Diego, CA 92101
Phone: (619) 233-1006
Fax: (619) 233-8627
E-mail: smith@lbbslaw.com

Mark Griffin (OH Bar #0064141)
Law Offices of Mark Griffin
175 Honeybelle Oval
Orange, Ohio 44022
Phone: (216) 346-7376
Fax: (216) 861-6679
E-mail: telecomlaw@hotmail.com

Randy J. Hart (OH Bar #0046793)
200 Public Square
Suite 3300
Cleveland, Ohio 44113
Phone: (216) 978-9150
Fax: (216) 241-2824
E-mail: csuosu@msn.com

Richard F. Scruggs (MS Bar # 6582)
Sidney A. Backstrom (MS Bar # 99890)
Scruggs Law Firm, P.A.
P.O. Box 1136
120A Courthouse Square
Oxford, MS 38655
Phone: (662) 281.1212
Fax: (662) 281 1312
Email: dickscruggs@scruggsfirm.com
Email: sbackstrom@scruggsfirm.com

| | |
|---|---|
| 1 | R. Eric Kennedy, Esq. (OH Bar #0006174) |
| | Daniel P. Goetz, Esq. (OH Bar #0065549) |
| 2 | Weisman, Kennedy & Berris Co., L.P.A |
| | 1600 Midland Building |
| 3 | 101 Prospect Avenue, West |
| | Cleveland, Ohio 44115 |
| 4 | Phone: (216) 781-1111 |
| | Fax: (216) 781-6747 |
| 5 | Email: ekennedy@weismanlaw.com |
| | Email: dgoetz@weismanlaw.com |
| 6 | |

7    **DEMAND FOR TRIAL BY JURY**

8    Plaintiffs hereby demand a trial by jury on all claims in the complaint.

9    Dated:  June 22, 2006

10        By: _R. Dee_

11        R. Gaylord Smith (CA Bar #72726)
         Ernest Slome  (CA Bar #122419)
12        Lewis Brisbois Bisgaard & Smith
         550 West C Street, 8th Floor
13        San Diego, CA 92101
         Phone: (619) 233-1006
14        Fax: (619) 233-8627
         E-mail: smith@lbbslaw.com

15        Richard F. Scruggs (MS Bar # 6582)
         Sidney A. Backstrom (MS Bar # 99890)
16        Scruggs Law Firm, P.A.
         P.O. Box 1136
17        120A Courthouse Square
         Oxford, MS 38655
18        Phone: (662) 281 1212
         Fax: (662) 281 1312
19        Email: dickscruggs@scruggsfirm.com
         Email: sbackstrom@scruggsfirm.com
20
         Mark Griffin (OH Bar #0064141)
21        Law Offices of Mark Griffin
         175 Honeybelle Oval
22        Orange, Ohio 44022
         Phone: (216) 346-7376
23        Fax: (216) 861-6679
         E-mail: telecomlaw@hotmail.com
24
         Randy J. Hart (OH Bar #0046793)
25        200 Public Square
         Suite 3300
26        Cleveland, Ohio 44113
         Phone: (216) 978-9150
27        Fax: (216) 241-2824
         E-mail: csuosu@msn.com
28

FIRST AMENDED CLASS ACTION TRANSACTION COMPLAINT

1.
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Daniel P. Goetz, Esq. (OH Bar #0065549)
Weisman, Kennedy & Berris Co., L.P.A
1600 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio 44115
Phone:  (216) 781-1111
Fax:  (216) 781-6747
Email: ekennedy@weismanlaw.com
Email: dgoetz@weismanlaw.com

FIRST AMENDED CLASS ACTION TRANSACTION COMPLAINT

1

**PROOF OF SERVICE**
*Gurrola v. USA, et al.*
Case No. CV06-03425 SVW (Ex.)

2

3    STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

4        I am employed in the County of San Diego, State of California. I am over the age of 18
and not a party to the within action. My business address is 550 West "C" Street, Suite 800, San
5    Diego, California 92101.

6        On June 23, 2006, I served the foregoing document described as **SUMMONS AND
FIRST AMENDED COMPLAINT** on all interested parties in this action by placing  [X] a true
7    copy  [  ] the original thereof enclosed in sealed envelopes addressed as follows:

8                            **SEE ATTACHED SERVICE LIST**

9    [ ]    (BY FACSIMILE)  The facsimile machine I used complied with Rule 2003(3) and no error
was reported by the machine.  Pursuant to Rule 2008(e)(4), I caused the machine to print a
10    record of the transmission.

11    [X]    (BY MAIL, 1013a, 2015.5 C.C.P.)  I am readily familiar with the firm's practice for
collection and processing correspondence for mailing.  Under that practice, this document
12    will be deposited with the U.S. Postal Service on this date with postage thereon fully
prepaid at San Diego, California in the ordinary course of business.  I am aware that on
13    motion of the party served, service is presumed invalid if postal cancellation date or
postage meter date is more than one day after date of deposit for mailing in affidavit.

14
[ ]    (STATE)  I declare under penalty of perjury under the laws of the State of California that
15    the above is true and correct and this document was printed on recycled paper.

16    [X]    (FEDERAL)  I declare that I am employed in the office of a member of the bar of this
Court at whose direction the service was made.

17
Executed on June 23, 2006, at San Diego, California.

18

19

20

21    Loreen D. Pekny

22

23

24

25

26

27

28

4847-6206-2337.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
550 WEST "C" STREET, SUITE 800
SAN DIEGO, CALIFORNIA 92101-3540
TELEPHONE (619) 233-1006

1

## SERVICE LIST

| | |
|---|---|
| Susan A. Mitchell, Esq.<br>McKENNA LONG & ALDRIDGE LLP<br>444 South Flower Street, 8th Floor<br>Los Angeles, CA 90071-2901<br>Tel: (213) 688-1000 / Fax: (213) 243-6330<br>**Attorneys for Defendant CINGULAR**<br>**WIRELESS, LLC** | David L. Balser, Esq.<br>McKENNA LONG & ALDRIDGE LLP<br>303 Peachtree Street, N.E., Ste. 5300<br>Atlanta, GA 30308<br>Tel: (404) 527-4000 / Fax: (404) 527-4198<br>**Attorneys for Defendant CINGULAR**<br>**WIRELESS, LLC** |
| Gleam O. Davis, Esq.<br>AT&T Services Legal Department<br>1150 So. Olive Street, Suite 2850<br>Los Angeles, CA 90015<br>Tel: (213) 743-6710 / Fax: (213) 748-1284<br>**Attorneys for AT&T Inc., AT&T Corp. and**<br>**Pacific Bell Telephone Company** | Bobby Lawyer, Esq.<br>AT&T Services Legal Department<br>525 Market Street, Suite 2001<br>San Francisco, CA 94105<br>Tel: (415) 778-1213 / Fax: (415) 882-4458<br>**Attorneys for AT&T Inc., AT&T Corp. and**<br>**Pacific Bell Telephone Company** |
| C. David Lee, Esq.<br>Munger, Tolles & Olson LLP<br>355 S. Grand Ave., 35th Floor<br>Los Angeles, CA 90071-1560<br>Tel: (213) 683-9100 / Fax: (213) 687-3702<br>**Attorneys for Verizon Communications,**<br>**Inc.** | Debra Wong Yang, Esq.<br>  United States Attorney<br>Sandra R. Brown<br>  Assistant United States Attorney<br>  Chief, Tax Division<br>Richard G. Stack<br>  Assistant United States Attorney<br>300 N. Los Angeles Street, Room 7211<br>Los Angeles, CA 90012<br>**Attorneys for the United States of America** |

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS BRISBOIS BISGAARD & SMITH LLP
550 WEST "C" STREET, SUITE 800
SAN DIEGO, CALIFORNIA 92101-3540
TELEPHONE (619) 233-1006

4847-6206-2337.1

**Exhibit E**



Send

DOCKETED ON CM

JUN 28 2006

BY _____ 026

FILED
CLERK, U.S. DISTRICT COURT

JUN 26 2006

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

OSCAR GURROLA and ROSALVA    )    CV 06-3425-SVW (Ex)
GURROLA,                      )
                              )    ORDER DENYING PLAINTIFFS' EX
            Plaintiffs,       )    PARTE APPLICATION FOR A
                              )    TEMPORARY RESTRAINING ORDER
        v.                    )
                              )
UNITED STATES OF AMERICA; AT&T; )
VERIZON COMMUNICATIONS, INC.;  )
CINGULAR WIRELESS, LLC; and    )
CELLCO PARTNERSHIP, dba VERIZON )
WIRELESS,                      )

            Defendants.

## I.    INTRODUCTION

Before the Court is an application for a temporary restraining order to enjoin the United States and various telephone companies from collecting telecommunications excise taxes ("TET") on telephone service that is billed on the basis of call duration. That the tax is invalid is undisputed. Under 26 U.S.C. § 4252(b), "toll telephone service" is subject to taxation if "there is a toll charge which varies in amount with the distance *and* elapsed transmission time of each individual communication." 26 U.S.C. § 4252(b) (emphasis added). In spite of the plain statutory language that required the toll charge to vary with both time and distance, the Internal Revenue

30

1     Service ("IRS") had previously maintained that telephone service is

2     subject to the TET even if the toll charge was assessed solely on the

3     basis of time. Telephone companies have for years billed consumers

4     for TET on time-only service on behalf of the IRS. However, a string

5     of recent federal court decisions have held that the TET is

6     inapplicable to time-only service.[1] Accordingly, the IRS issued

7     Notice 2006-50 on May 25, 2006, announcing that it will no longer

8     collect the TET on time-only service. The Notice provided that

9     taxpayers no longer have to pay the TET, and directed telephone

10     companies to cease collection of any sums billed after July 31, 2006.

11     I.R.S. Notice 2006-50 § 4(a), (c). The IRS also established a

12     procedure whereby taxpayers may apply, on their 2006 tax returns, for

13     refunds of TET paid in the last three years. Id. at § 5.

14        Plaintiffs Oscar and Rosalva Gurrola brought the present action

15     on June 5, 2006, to enjoin ongoing collection of the TET and to

16     obtain refund of sums already paid. The suit is brought purportedly

17     on behalf of a class of California residents. Plaintiffs seek

18     "declaratory relief, injunctive relief, money damages, and a refund

19     of federal communication excise taxes against" the United States,

20     AT&T, Verizon Communications, Inc., Cingular Wireless LLC, and Cellco

21     Partnership, which is better known as Verizon Wireless. (Complaint

22

23

24     [1]    See, e.g., Am. Bankers Ins. Group v. United States, 408 F.3d
      1328 (11th Cir. 2005) (holding that time-only service is not subject

25     to taxation under 26 U.S.C. § 4252(b)); OfficeMax, Inc. v. United
      States, 428 F.3d 583 (6th Cir. 2005) (same); Nat'l R.R. Passenger

26     Corp. v. United States, 431 F.3d 374 (D.C. Cir. 2005) (same); Reese
      Bros, Inc. v. United States, 447 F.3d 229 (3d Cir. 2006) (same);

27     Fortis v. United States, 447 F.3d 190 (2d Cir. 2006) (same). Reese
      Brothers, the most recent of these decisions, was issued on May 9,

28     2006.

1-2.)  The complaint stated eleven claims for relief: (1) Fifth
Amendment takings; (2) non-uniform collection under Article I,
section 8 of the United States Constitution; (3) "illegal exaction"
in violation of the Internal Revenue Code; (4) refund of sums already
paid to the IRS; (5) injunctive relief against continuing collection;
(6) unjust enrichment; (7) restitution; (8) refund from the telephone
companies; (9) unfair competition; (10) conversion; (11) violations
of 47 U.S.C. § 201(b) and Truth-In-Billing Regulations, 47 C.F.R. §
64.201(b).

On June 6, 2006, Plaintiffs filed an ex parte application for a
temporary restraining order.  Initially, Plaintiffs sought to
immediately enjoin both the telephone companies from collecting and
the IRS from receiving the TET.  However, after the telephone
companies responded that it would be logistically impossible to
modify their billing systems with such short notice, Plaintiffs now
seek only to enjoin the IRS from receiving any sums that the
telephone companies may collect between now and July 31, 2006.  (Pls.
Reply at 1.)[2]  Plaintiffs ask that the telephone companies hold those
sums in trust for the benefit of the purported class.

For reasons explained below, Plaintiff's application for a
temporary restraining order is DENIED.


II.  DISCUSSION

The Anti-Injunction Act provides that "no suit for the purpose
of restraining the assessment and collection of any tax shall be

---

[2]    Plaintiffs' counsel reiterated this position at oral argument on
June 19, 2006.

3

1    maintained in any court by any person, whether or not such person is

2    the person against whom the tax was assessed."  26 U.S.C. § 7421(a).

3    To overcome this bar, Plaintiffs must avail themselves of the narrow

4    judicial exception to the Act set forth by the Supreme Court in

5    Enochs v. Williams Packing & Navigation Co., Inc., 370 U.S. 1 (1962).

6    As the Supreme Court stated, "if it is clear that under no

7    circumstances could the Government ultimately prevail . . . the

8    attempted collection may be enjoined if equity jurisdiction otherwise

9    exists."  Id. at 7.  In the Ninth Circuit's formulation, this

10   exception "requires the taxpayer to demonstrate that: (1) under no

11   circumstances can the government ultimately prevail on the merits;

12   and (2) the taxpayer will suffer irreparable injury without

13   injunctive relief."  Elias v. Connet, 908 F.2d 521, 525 (9th Cir.

14   1990).  Of course, in addition to meeting their burden under the

15   Enochs exception, Plaintiffs must also satisfy the general test for a

16   preliminary injunction.  "[T]he moving party may meet its burden by

17   demonstrating either (1) a combination of probable success on the

18   merits and the possibility of irreparable injury or (2) that serious

19   questions are raised and the balance of hardships tips sharply in its

20   favor."  Barahona-Gomez v. Reno, 167 F.3d 1228, 1234 (9th Cir. 1999)

21   (internal quotation marks and citation omitted).

22

23       A.   The Enochs Exception Does Not Apply

24       The Court is confronted with the unusual situation where the IRS

25   already agrees that the "tax" is not authorized by the Internal

26   Revenue Code, has announced that taxpayers are no longer required to

27   pay it, and established a procedure for taxpayers to obtain refunds.

28

1    The telephone companies have been given just over a month to

2    reconfigure their billing systems to cease collection of the sums in

3    issue.[3] Notably, Plaintiffs seek not an injunction to stop the phone

4    companies from continuing to collect the TET pending modification of

5    their systems.  Instead, Plaintiffs seek only to enjoin the IRS from

6    receiving sums collected between now and July 31, 2006.  Put

7    differently, the requested injunction would not stop the collection

8    of taxes, but only require that the collectors hold the sums in trust

9    for taxpayers, pending a direct refund from the phone companies to

10   taxpayers through established telephone billing systems.

11       The Ninth Circuit has already rejected the application of the

12   Enochs exception to parallel circumstances.  Brennan v. Southwest

13   Airlines Co., 134 F.3d 1405 (9th Cir. 1998), involved an excise tax

14   on domestic air travel that airlines had collected on behalf of the

15   IRS.  Although the tax was set to expire at the start of 1996,

16   airlines continued to collect the tax on the expectation that

17   Congress would renew the tax.  However, Congress did not reenact the

18   tax until August 1996.  Consequently, many passengers who traveled

19   between January and August 1996 paid over sums that were never

20   authorized as taxes by Congress.  Litigation ensued.  The plaintiffs

21   argued that the suit could proceed as a Enochs action rather than a

22   refund suit under 26 U.S.C. § 7422(a), because the government had no

23   possibility of establishing the legality of taxes levied between

24   January and August 1996.  The Ninth Circuit rejected that attempt to

25

26   [3]    Contrary to Plaintiffs' contention, Notice 2006-50 does not
     require telephone companies to collect the TET until July 31, 2006.
27   Rather, the telephone companies may immediately stop collection of
     the TET.  Collection must cease by July 31, 2006.  IRS Notice 2006-50
28   § 4(c).

1    "extend <u>Enochs</u> to the situation where a collection agent already has

2    collected an illegal tax." <u>Id.</u> at 1413.  The court explained,

3            The <u>Enochs</u> exception has . . . never been applied to

4        allow a taxpayer to sue a private tax collector for the

5        refund of erroneously collected taxes, and with good

6        reason.  Enjoining clearly illegal tax collection allows

7        taxpayers to hold onto their money, thereby saving

8        taxpayers and the government the hassle and expense of

9        refund claims that the taxpayers invariably would win

10       anyway.  However, when the government already has collected

11       the tax, this rationale does not apply.  The taxpayers

12       already have given up the money, and then must attempt to

13       get it back.

14   <u>Id.</u> (internal quotation marks and citations omitted).

15       Just as in <u>Brennan</u>, Plaintiffs in the instant case seek to

16   invoke <u>Enochs</u> to obtain refund of taxes that would have already left

17   the hands of taxpayers.  It is immaterial that Plaintiffs seek to

18   restrain private collectors from turning over the funds to the IRS,

19   rather than to enjoin collection directly; the fact remains that the

20   funds would already in the hands of collectors acting as agents of

21   the Government.  Thus, the suit is now nothing more than a refund

22   action.  The <u>Enochs</u> exception does not apply.

23

24       B.   <u>Plaintiffs Have Not Demonstrated Possibility of Irreparable</u>

25            <u>Injury</u>

26   Plaintiffs contend that irreparable harm will result if the

27

28

1  telephone companies continue to pay over collected sums to the IRS,

2  because many taxpayers will, through ignorance or oversight, fail to

3  apply for refunds under the procedure the IRS has established. The

4  argument is without merit.  The IRS has already announced that

5  taxpayers are not required to pay the TET.  Plaintiffs can avoid any

6  continuing financial injury simply by refusing to pay the TET billed

7  on their telephone service statements.  Moreover, the IRS has

8  established an administrative procedure for taxpayers to obtain

9  refunds.  The IRS will also provide a "safe harbor" refund to

10 taxpayers who are unable to provide documentation to demonstrate the

11 amount of unauthorized taxes actually paid.  Nothing stops any

12 aggrieved taxpayer from utilizing those procedures.  It is hard to

13 see how there is risk of irreparable harm in these circumstances.

14      Plaintiffs contend that they need not show the possibility of

15 irreparable harm because they have alleged constitutional injury, in

16 the sense that funds have been allegedly collected from them without

17 lawful authority and in violation of the Takings and Due Process

18 Clauses of the Fifth Amendment, as well as the Uniform Excise Tax

19 Clause of Article I, Section 8.  See Goldie's Bookstore v. Superior

20 Ct., 739 F.2d 466, 472 (9th Cir. 1984) ("An alleged constitutional

21 infringement will often alone constitute irreparable harm.")

22 However, the presumption of irreparable harm for constitutional

23 violations is usually applied in the context of intangible rights

24 such as free speech, privacy, and freedom from unreasonable search

25 and seizure.  See 11A Wright, Miller & Kane, Federal Practice and

26 Procedure: Civil 2d § 2948.1 (1995) (collecting cases).  Plaintiffs

27 have cited no authority that applies the presumption to financial

28

7

1  injury.  Under their theory, where the validity of a government

2  exaction is in dispute, litigants can make an end-run around the

3  irreparable injury requirement simply by putting a constitutional

4  gloss on financial injury that is otherwise plainly reparable.  The

5  Court rejects that contention.

6

7      C.   Plaintiffs Have Not Demonstrated Likelihood of Success On

8           the Merits

9      Plaintiffs' action is essentially a tax refund suit, and is

10 therefore subject to the procedures Congress has enacted to govern

11 such actions. 26 U.S.C. § 7422(a) provides:

12          No suit or proceeding shall be maintained in any court for

13          the recovery of any internal revenue tax alleged to have

14          been erroneously or illegally assessed or collected . . .

15          or any sum alleged to have been excessive or in any manner

16          wrongfully collected, until a claim for refund has been

17          duly filed with the [Treasury Secretary], according to the

18          provisions of law in that regard, and the regulations of

19          the Secretary established in pursuance thereof.

20 26 U.S.C. § 7422(a).  Plaintiffs have conceded that they have yet to

21 file an administrative claim for a refund.  (Complaint at 17.)  Their

22 failure to exhaust administrative remedies compels the Court to find

23 that they have not established a likelihood of success on the merits.

24     Plaintiffs contend that section 7422(a) applies only to funds in

25 the possession of the IRS, and not to funds in the possession of

26 collectors before remittance to the IRS.  However, the telephone

27 companies have collected the disputed sums solely as agents of the

28

1    IRS, and will continue to turn over to the IRS any funds collected

2    going forward, so that the funds can be returned through the IRS's

3    refund scheme.  (<u>See</u> Shashack Decl.; Mahida Decl.)  As the Seventh

4    Circuit has explained in holding that a lawsuit against a private

5    collector constituted a federal refund action, "a suit for refund of

6    the taxes that [a private firm] collected - a suit necessarily based

7    on a claim that the taxes were collected in violation of law - is as

8    much a suit for the refund of federal taxes as if it had been brought

9    against the Commissioner of Internal Revenue."  <u>Kaucky v. Southwest</u>

10   <u>Airlines Co.</u>, 109 F.3d 349, 351 (7th Cir. 1997).  "It makes no

11   difference whether the firm is still holding the money it erroneously

12   collected or has passed it on to the IRS."  <u>Id.</u> at 352.

13        Plaintiffs' reliance on <u>In re Air Transp. Excise Tax Litigation</u>,

14   37 F. Supp. 2d 1133 (D. Minn. 1999), is unavailing.  There, the

15   defendant airline collected funds from customers purportedly as

16   taxes, yet never turned over the funds to the IRS.  <u>Id.</u> at 1136.

17   Thus, the court ruled that the suit could not be characterized as a

18   federal tax refund action.  In contrast, in the present case

19   Plaintiffs have not contended that the telephone companies will

20   pocket collected sums for their benefit.

21

22        D.   The Balance Of Hardships Favor Denial of Plaintiffs'

23             Application

24        A temporary restraining order would impose significant hardships

25   on the telephone companies.  The IRS is already in the process of

26   establishing a uniform refund system for tax payers.  If the

27   telephone companies are ordered not to remit funds to the IRS, then

28

1  they would have to create their own refund systems at great cost.

2  (Shashack Decl.)  The costs would stem from information retrieval,

3  identification of individual customers and the amounts they paid,

4  creation of associated computer programs, tracking records, issuing

5  checks, and maintenance of refund records.

6      It is hard to see how Plaintiffs would benefit from a temporary

7  restraining order.  Issuance of the order would create a separate

8  refund system for taxes collected during a roughly one-month period

9  in mid-2006, running parallel to the IRS's own refund system for

10  three years of wrongfully collected taxes.  Each company would create

11  a different system, such that a typical customer with both wireless

12  and landline service would have to obtain refunds from three separate

13  sources - the landline provider, the wireless providers, and the IRS.

14  The result would simply be unnecessary confusion and inconvenience

15  for taxpayers.

16      Moreover, there is evidence that compliance with a temporary

17  restraining order would disrupt legitimate revenue collection.  The

18  Verizon Defendants⁴ claim that, in their current systems, excise taxes

19  on time-only service are commingled with other excise taxes that they

20  are obligated to continue to collect.  (See Dentico Decl.)  There is

21  no practical way to segregate the funds affected by Notice 2006-50

22  from funds that are not.  Thus, until reprogramming of their systems

23  are complete, the Verizon Defendants must remit the all of the

24  commingled funds to the IRS, or none.  For the Verizon Defendants to

25  comply with the an injunction to not remit funds to the IRS, they

26

27  _____

4    The Verizon Defendants include Verizon Communications, Inc., and

28  Cellco Partnership.

1 would have to stop the transfer of all collected taxes to the IRS,

2 including taxes unaffected by Notice 2006-50.  That, of course would

3 be an impermissible result.

4

5 **IV.  CONCLUSION**

6      For the foregoing reasons, Plaintiffs' application for a

7 temporary restraining order is DENIED.

8      During oral argument on June 19, 2006, counsel for Plaintiffs

9 indicated an intention to move for a preliminary injunction if the

10 Court declines to issue a temporary restraining order.  Plaintiffs

11 are entitled to file their motion; however, the Court cautions that,

12 for reasons stated above, a motion for a preliminary injunction is

13 unlikely to succeed.

14

15

16

17

18

19         IT SO ORDERED.

20 DATED: _6/26/06_____

21                                    STEPHEN V. WILSON
                            UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28

**Exhibit  F**

1 | Richard F. Scruggs (MS Bar # 6582)
Sidney A. Backstrom (MS Bar # 99890)
2 | Scruggs Law Firm, P.A.
P.O. Box 1136
3 | 120A Courthouse Square
Oxford, MS 38655
4 | Phone: (662) 281-1212
Fax: (662) 281-1312
5 | E-mail: dickscruggs@scruggsfirm.com
E-mail: sbackstrom@scruggsfirm.com
6 |
7 | Sheldon H. Sloan (CA Bar #34334)
R. Gaylord Smith (CA Bar #72726)
Ernest Slome  (CA Bar #122419)
8 | Lewis Brisbois Bisgaard & Smith
550 West C Street, 8th Floor
9 | San Diego, CA 92101
Phone:  (619) 233-1006
10 | Fax:  (619) 233-8627
E-mail:  smith@lbbslaw.com
11 |
12 | [and other counsel as appearing on signature block]
13 | For Plaintiffs OSCAR GURROLA, ROSALVA GURROLA, and BERNADETTE CAROL DUFFY

**RECEIVED**

**JUL 1 4 2006**

**J.D.L.**

14 | UNITED STATES DISTRICT COURT

15 | CENTRAL DISTRICT OF CALIFORNIA

16 | OSCAR GURROLA; ROSALVA     )   CASE NO.: 06-03425 SVW (Ex)
GURROLA; AND BERNADETTE CAROL )
17 | DUFFY                      )
                               )   **NOTICE OF PARTIAL VOLUNTARY**
18 |          Plaintiffs,      )   **DISMISSAL OF DEFENDANTS AT&T**
                               )   **SERVICES, INC.; PACIFIC BELL**
19 |       v.                  )   **TELEPHONE COMPANY; VERIZON**
                               )   **CORPORATE SERVICES CORP.;**
20 | UNITED STATES OF AMERICA, and )  **CINGULAR WIRELESS, LLC; CELLCO**
AT&T, INC.; AT&T SERVICES, INC.; )  **PARTNERSHIP DBA VERIZON**
21 | PACIFIC BELL TELEPHONE COMPANY; )  **WIRELESS; and QWEST**
VERIZON CORPORATE SERVICES   )   **COMMUNICATIONS INTERNATIONAL,**
22 | CORP.; CINGULAR WIRELESS, LLC; )  **INC., PURSUANT TO F.R.C.P.  RULE**
CELLCO PARTNERSHIP DBA VERIZON )  **41(a)**
23 | WIRELESS; and QWEST          )
COMMUNICATIONS INTERNATIONAL, )
24 | INC.,                      )
                               )
25 |          Defendants.      )
                               )
26 | _____ )

27 | / / /

28 | / / /

4825-2958-0289.2

1        NOTICE IS HEREBY GIVEN that Plaintiffs OSCAR GURROLA, ROSALVA

2   GURROLA, and BERNADETTE CAROL DUFFY, voluntarily dismiss all claims in the above-

3   captioned action against Defendants AT&T SERVICES, INC., PACIFIC BELL TELEPHONE

4   COMPANY, VERIZON CORPORATE SERVICES CORP., CINGULAR WIRELESS, LLC,

5   CELLCO PARTNERSHIP DBA VERIZON WIRELESS, and QWEST COMMUNICATIONS

6   INTERNATIONAL, INC. **EXCEPT** those listed specifically in COUNT IX, paragraphs 126

7   through 130, in Plaintiffs First Amended Complaint for violations of California Business &

8   Professions Code §17200, *et seq.* , without prejudice, pursuant to Federal Rules of Civil Procedure

9   Rule 41(a).  None of the Telecom Defendants specifically listed herein have filed an answer or

10  motion for summary judgment thus making this unilateral notice of partial dismissal the proper

11  procedural mechanism for voluntarily dismissing part of this action.

12

13  Dated:  July 13, 2006

                          By:

14                         R. Gaylord Smith (CA Bar #72726)
                          Ernest Slome  (CA Bar #122419)

15                         Lewis Brisbois Bisgaard & Smith
                          550 West C Street, 8th Floor

16                         San Diego, CA 92101
                          Phone:  (619) 233-1006

17                         Fax:  (619) 233-8627
                         E-mail:  smith@lbbslaw.com

18

19                         Mark Griffin (OH Bar #0064141)
                         Law Offices of Mark Griffin

20                         175 Honeybelle Oval
                         Orange, Ohio 44022

21                         Phone:  (216) 346-7376
                         Fax:  (216) 861-6679

22                         E-mail: telecomlaw@hotmail.com

23                         Randy J. Hart (OH Bar #0046793)
                         200 Public Square

24                         Suite 3300
                         Cleveland, Ohio 44113

25                         Phone:  (216) 978-9150
                         Fax:  (216) 241-2824

26                         E-mail: csuosu@msn.com

27

28

NOTICE OF PARTIAL VOLUNTARY DISMISSAL PURSUANT TO F.R.C.P. RULE 41(A)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Richard F. Scruggs (MS Bar # 6582)
Sidney A. Backstrom (MS Bar # 99890)
Scruggs Law Firm, P.A.
P.O. Box 1136
120A Courthouse Square
Oxford, MS 38655
Phone: (662) 281 1212
Fax: (662) 281 1312
Email: dickscruggs@scruggsfirm.com
Email: sbackstrom@scruggsfirm.com

R. Eric Kennedy, Esq. (OH Bar #0006174)
Daniel P. Goetz, Esq. (OH Bar #0065549)
Weisman, Kennedy & Berris Co., L.P.A
1600 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio 44115
Phone: (216) 781-1111
Fax: (216) 781-6747
Email: ekennedy@weismanlaw.com
Email: dgoetz@weismanlaw.com

NOTICE OF PARTIAL VOLUNTARY DISMISSAL PURSUANT TO F.R.C.P. RULE 41(A)

1

**PROOF OF SERVICE**
*Gurrola v. USA, et al.*

2                          Case No. CV06-03425 SVW (Ex.)

3    STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

4           I am employed in the County of San Diego, State of California.  I am over the age of 18
     and not a party to the within action.  My business address is 550 West "C" Street, Suite 800, San
5    Diego, California  92101.

6           On July 13, 2006, I served the foregoing document(s) described as

7    1.      **NOTICE OF PARTIAL VOLUNTARY DISMISSAL OF DEFENDANTS AT&T SERVICES, INC.,**
             **PACIFIC BELL TELEPHONE COMPANY; VERIZON CORPORATE SERVICES CORP.;**
8            **CINGULAR WIRELESS, LLC; CELLCO PARTNERSHIP DBA VERIZON WIRELESS and**
             **QWEST COMMUNICATIONS INTERNATIONAL, INC. PURSUANT TO F.R.CP. RULE 41 (a)**
9
     2.      **NOTICE OF VOLUNTARY DISMISSAL OF DEFENDANT AT&T, INC. PURSUANT TO F.R.**
10           **RULE 41 (a)**

11   on all interested parties in this action by placing  [X] a true copy   [  ] the original thereof enclosed
     in sealed envelopes addressed as follows:

12
                          **SEE ATTACHED SERVICE LIST**
13
14   [ ]     (BY FACSIMILE)  The facsimile machine I used complied with Rule 2003(3) and no error
             was reported by the machine.  Pursuant to Rule 2008(e)(4), I caused the machine to print a
15           record of the transmission.

16   [X]     (BY MAIL, 1013a, 2015.5 C.C.P.)  I am readily familiar with the firm's practice for
             collection and processing correspondence for mailing.  Under that practice, this document
17           will be deposited with the U.S. Postal Service on this date with postage thereon fully
             prepaid at San Diego, California in the ordinary course of business.  I am aware that on
18           motion of the party served, service is presumed invalid if postal cancellation date or
             postage meter date is more than one day after date of deposit for mailing in affidavit.

19   [ ]     (STATE)  I declare under penalty of perjury under the laws of the State of California that
             the above is true and correct and this document was printed on recycled paper.
20
21   [X]     (FEDERAL)  I declare that I am employed in the office of a member of the bar of this
             Court at whose direction the service was made.
22
             Executed on July 13, 2006, at San Diego, California.
23
24
25
                                                    _____
26                                                  Loreen D. Pekny
27
28

550 WEST 'C' STREET, SUITE 800
SAN DIEGO, CALIFORNIA  92101-3540
TELEPHONE (619) 233-1006

4841-4615-6801.1

1

**SERVICE LIST**

2

| | |
|---|---|
| Susan A. Mitchell, Esq.<br>McKENNA LONG & ALDRIDGE LLP<br>444 South Flower Street, 8th Floor<br>Los Angeles, CA 90071-2901<br>Tel: (213) 688-1000 / Fax: (213) 243-6330<br>**Attorneys for Defendant CINGULAR**<br>**WIRELESS, LLC** | David L. Balser, Esq.<br>McKENNA LONG & ALDRIDGE LLP<br>303 Peachtree Street, N.E., Ste. 5300<br>Atlanta, GA 30308<br>Tel: (404) 527-4000 / Fax: (404) 527-4198<br>**Attorneys for Defendant CINGULAR**<br>**WIRELESS, LLC** |
| Gleam O. Davis, Esq.<br>AT&T Services Legal Department<br>1150 So. Olive Street, Suite 2850<br>Los Angeles, CA 90015<br>Tel: (213) 743-6710 / Fax: (213) 748-1284<br>**Attorneys for AT&T Inc., AT&T Corp. and**<br>**Pacific Bell Telephone Company** | Bobby Lawyer, Esq.<br>AT&T Services Legal Department<br>525 Market Street, Suite 2001<br>San Francisco, CA 94105<br>Tel: (415) 778-1213 / Fax: (415) 882-4458<br>**Attorneys for AT&T Inc., AT&T Corp. and**<br>**Pacific Bell Telephone Company** |
| Joseph D. Lee, Esq.<br>Munger, Tolles & Olson LLP<br>355 S. Grand Ave., 35th Floor<br>Los Angeles, CA 90071-1560<br>Tel: (213) 683-9100 / Fax: (213) 687-3702<br>**Attorneys for Verizon Communications,**<br>**Inc.** | Debra Wong Yang, Esq.<br>  United States Attorney<br>Sandra R. Brown<br>  Assistant United States Attorney<br>  Chief, Tax Division<br>Richard G. Stack<br>  Assistant United States Attorney<br>300 N. Los Angeles Street, Room 7211<br>Los Angeles, CA 90012<br>**Attorneys for the United States of America** |

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

550 WEST "C" STREET, SUITE 800
SAN DIEGO, CALIFORNIA 92101-3540
TELEPHONE (619) 233-1006

4841-4615-6801.1

**Exhibit G**

1 | Richard F. Scruggs (MS Bar # 6582)
Sidney A. Backstrom (MS Bar # 99890)
2 | Scruggs Law Firm, P.A.
P.O. Box 1136
3 | 120A Courthouse Square
Oxford, MS 38655
4 | Phone: (662) 281-1212
Fax: (662) 281-1312
5 | E-mail: dickscruggs@scruggsfirm.com
E-mail: sbackstrom@scruggsfirm.com
6 |
Sheldon H. Sloan (CA Bar #34334)
7 | R. Gaylord Smith (CA Bar #72726)
Ernest Slome  (CA Bar #122419)
8 | Lewis Brisbois Bisgaard & Smith
550 West C Street, 8th Floor
9 | San Diego, CA 92101
Phone:  (619) 233-1006
10 | Fax:  (619) 233-8627
E-mail:  smith@lbbslaw.com
11 |
[and other counsel as appearing on signature block]
12 |
For Plaintiffs OSCAR GURROLA, ROSALVA GURROLA, and BERNADETTE CAROL
13 | DUFFY

**RECEIVED**

JUL 1 4 2006

**J.D.L.**

14 | UNITED STATES DISTRICT COURT

15 | CENTRAL DISTRICT OF CALIFORNIA

16 | OSCAR GURROLA; ROSALVA
GURROLA; AND BERNADETTE CAROL
17 | DUFFY

18 | Plaintiffs,

19 | v.

20 | UNITED STATES OF AMERICA, and
AT&T, INC.; AT&T SERVICES, INC.;
21 | PACIFIC BELL TELEPHONE COMPANY;
VERIZON CORPORATE SERVICES
22 | CORP.; CINGULAR WIRELESS, LLC;
CELLCO PARTNERSHIP DBA VERIZON
23 | WIRELESS; and QWEST
COMMUNICATIONS INTERNATIONAL,
24 | INC.,

25 | Defendants.

**CASE NO.: 06-03425 SVW (Ex)**

**NOTICE OF VOLUNTARY DISMISSAL
OF DEFENDANT AT&T, INC.
PURSUANT TO F.R.C.P.  RULE 41(a)**

26 |

27 | ///

28 | ///

4840-7249-4081.1

1    NOTICE IS HEREBY GIVEN that Plaintiffs OSCAR GURROLA, ROSALVA

2    GURROLA, and BERNADETTE CAROL DUFFY, voluntarily dismiss the above-captioned

3    action against Defendant AT&T, INC. without prejudice, pursuant to Federal Rules of Civil

4    Procedure Rule 41(a).  Defendant AT&T, INC. has not yet filed an answer or motion for summary

5    judgment thus making this unilateral notice of dismissal the proper procedural mechanism for

6    voluntarily dismissing this action against AT&T, INC..

7

8    Dated:  July 13, 2006

                    By: _____

9                        R. Gaylord Smith (CA Bar #72726)
                         Ernest Slome  (CA Bar #122419)
10                       Lewis Brisbois Bisgaard & Smith
                         550 West C Street, 8th Floor
11                       San Diego, CA 92101
                         Phone:  (619) 233-1006
12                       Fax:  (619) 233-8627
                         E-mail:  smith@lbbslaw.com
13
                         Mark Griffin (OH Bar #0064141)
14                       Law Offices of Mark Griffin
                         175 Honeybelle Oval
15                       Orange, Ohio 44022
                         Phone:  (216) 346-7376
16                       Fax:  (216) 861-6679
                         E-mail: telecomlaw@hotmail.com
17
                         Randy J. Hart (OH Bar #0046793)
18                       200 Public Square
                         Suite 3300
19                       Cleveland, Ohio 44113
                         Phone:  (216) 978-9150
20                       Fax:  (216) 241-2824
                         E-mail: csuosu@msn.com
21
                         Richard F. Scruggs (MS Bar # 6582)
22                       Sidney A. Backstrom (MS Bar # 99890)
                         Scruggs Law Firm, P.A.
23                       P.O. Box 1136
                         120A Courthouse Square
24                       Oxford, MS 38655
                         Phone:  (662) 281 1212
25                       Fax:  (662) 281 1312
                         Email: dickscruggs@scruggsfirm.com
26                       Email: sbackstrom@scruggsfirm.com

27

28

4840-7249-4081.1                         -2-
NOTICE OF VOLUNTARY DISMISSAL PURSUANT TO F.R.C.P. RULE 41(A)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

R. Eric Kennedy, Esq. (OH Bar #0006174)
Daniel P. Goetz, Esq. (OH Bar #0065549)
Weisman, Kennedy & Berris Co., L.P.A
1600 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio 44115
Phone:  (216) 781-1111
Fax:  (216) 781-6747
Email: ekennedy@weismanlaw.com
Email: dgoetz@weismanlaw.com

NOTICE OF VOLUNTARY DISMISSAL PURSUANT TO F.R.C.P. RULE 41(A)

1

**PROOF OF SERVICE**
*Gurrola v. USA, et al.*

2

Case No. CV06-03425 SVW (Ex.)

3    STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

4        I am employed in the County of San Diego, State of California. I am over the age of 18
and not a party to the within action. My business address is 550 West "C" Street, Suite 800, San

5    Diego, California 92101.

6        On July 13, 2006, I served the foregoing document(s) described as

7    1.    NOTICE OF PARTIAL VOLUNTARY DISMISSAL OF DEFENDANTS AT&T SERVICES, INC..
           PACIFIC BELL TELEPHONE COMPANY; VERIZON CORPORATE SERVICES CORP.;

8          CINGULAR WIRELESS, LLC; CELLCO PARTNERSHIP DBA VERIZON WIRELESS and
           QWEST COMMUNICATIONS INTERNATIONAL, INC. PURSUANT TO F.R.CP. RULE 41 (a)

9

10   2.    NOTICE OF VOLUNTARY DISMISSAL OF DEFENDANT AT&T, INC. PURSUANT TO F.R.C.P.
           RULE 41 (a)

11   on all interested parties in this action by placing  [X] a true copy  [  ] the original thereof enclosed
     in sealed envelopes addressed as follows:

12

13                        **SEE ATTACHED SERVICE LIST**

14   [ ]    (BY FACSIMILE) The facsimile machine I used complied with Rule 2003(3) and no error
            was reported by the machine. Pursuant to Rule 2008(e)(4), I caused the machine to print a

15          record of the transmission.

16   [X]    (BY MAIL, 1013a, 2015.5 C.C.P.) I am readily familiar with the firm's practice for
            collection and processing correspondence for mailing. Under that practice, this document

17          will be deposited with the U.S. Postal Service on this date with postage thereon fully
            prepaid at San Diego, California in the ordinary course of business. I am aware that on

18          motion of the party served, service is presumed invalid if postal cancellation date or
            postage meter date is more than one day after date of deposit for mailing in affidavit.

19   [ ]    (STATE) I declare under penalty of perjury under the laws of the State of California that
            the above is true and correct and this document was printed on recycled paper.

20

21   [X]    (FEDERAL) I declare that I am employed in the office of a member of the bar of this
            Court at whose direction the service was made.

22        Executed on July 13, 2006, at San Diego, California.

23

24

25

26                                              Loreen D. Pekny

27

28

4841-4615-6801.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
550 WEST "C" STREET, SUITE 800
SAN DIEGO, CALIFORNIA 92101-3540
TELEPHONE (619) 233-1006

1

**SERVICE LIST**

| | |
|---|---|
| Susan A. Mitchell, Esq.<br>McKENNA LONG & ALDRIDGE LLP<br>444 South Flower Street, 8th Floor<br>Los Angeles, CA 90071-2901<br>Tel: (213) 688-1000 / Fax: (213) 243-6330<br>**Attorneys for Defendant CINGULAR**<br>**WIRELESS, LLC** | David L. Balser, Esq.<br>McKENNA LONG & ALDRIDGE LLP<br>303 Peachtree Street, N.E., Ste. 5300<br>Atlanta, GA 30308<br>Tel: (404) 527-4000 / Fax: (404) 527-4198<br>**Attorneys for Defendant CINGULAR**<br>**WIRELESS, LLC** |
| Gleam O. Davis, Esq.<br>AT&T Services Legal Department<br>1150 So. Olive Street, Suite 2850<br>Los Angeles, CA 90015<br>Tel: (213) 743-6710 / Fax: (213) 748-1284<br>**Attorneys for AT&T Inc., AT&T Corp. and**<br>**Pacific Bell Telephone Company** | Bobby Lawyer, Esq.<br>AT&T Services Legal Department<br>525 Market Street, Suite 2001<br>San Francisco, CA 94105<br>Tel: (415) 778-1213 / Fax: (415) 882-4458<br>**Attorneys for AT&T Inc., AT&T Corp. and**<br>**Pacific Bell Telephone Company** |
| Joseph D. Lee, Esq.<br>Munger, Tolles & Olson LLP<br>355 S. Grand Ave., 35th Floor<br>Los Angeles, CA 90071-1560<br>Tel: (213) 683-9100 / Fax: (213) 687-3702<br>**Attorneys for Verizon Communications,**<br>**Inc.** | Debra Wong Yang, Esq.<br>  United States Attorney<br>Sandra R. Brown<br>  Assistant United States Attorney<br>  Chief, Tax Division<br>Richard G. Stack<br>  Assistant United States Attorney<br>300 N. Los Angeles Street, Room 7211<br>Los Angeles, CA 90012<br>**Attorneys for the United States of America** |

4841-4615-6801.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
550 WEST "C" STREET, SUITE 800
SAN DIEGO, CALIFORNIA 92101-3540
TELEPHONE (619) 233-1006

**Exhibit H**

1   RICHARD F. SCRUGGS (MS Bar # 6582)
    SIDNEY A. BACKSTROM (MS Bar # 99890)
2   SCRUGGS LAW FIRM, P.A.
    P.O. Box 1136
3   120A Courthouse Square
    Oxford, MS 38655
4   Phone: (662) 281-1212
    Fax: (662) 281-1312
5   E-mail: dickscruggs@scruggsfirm.com
    E-mail: sbackstrom@scruggsfirm.com
6   Attorneys For Plaintiffs OSCAR GURROLA,
    ROSALVA GURROLA, and
7   BERNADETTE CAROL DUFFY

8   [Additional Parties and Counsel on Next Page]

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FILED
CLERK, U.S. DISTRICT COURT

FEB 8 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                            DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

OSCAR GURROLA; ROSALVA          CASE NO.  06-03425 SVW (Ex)
GURROLA; AND BERNADETTE
CAROL DUFFY                     STIPULATION OF DISMISSAL
                                WITH PREJUDICE
            Plaintiff,
                                District Judge: Stephen V. Wilson
      vs.

AT&T, INC.; AT&T SERVICES,
INC.; PACIFIC BELL TELEPHONE
COMPANY; VERIZON
CORPORATE SERVICES CORP.;
CINGULAR WIRELESS, LLC;
CELLCO PARTNERSHIP DBA
VERIZON WIRELESS; and QWEST
COMMUNICATIONS
INTERNATIONAL, INC.,

            Defendants.

DOCKETED ON CM

FEB - 9 2007

BY                      053

SCANNED

| | |
|---|---|
| 1 | JOSEPH D. LEE (State Bar No. 110840) |
| 2 | DANIEL P. COLLINS (State Bar No. 139164)<br>Daniel.Collins@mto.com |
| 3 | DANIEL L. GEYSER (State Bar No. 230405)<br>MUNGER, TOLLES & OLSON LLP |
| 4 | 355 South Grand Avenue<br>Thirty-Fifth Floor |
| 5 | Los Angeles, CA 90071-1560<br>Telephone: (213) 683-9100 |
| 6 | Facsimile: (213) 687-3702 |
| 7 | Attorneys for Defendant CELLCO<br>PARTNERSHIP dba VERIZON WIRELESS |
| 8 | and for specially appearing Defendant,<br>VERIZON CORPORATION SERVICES CORP. |
| 9 | |
| 10 | SUSAN A. MITCHELL (State Bar No. 101114)<br>smitchell@mckennalong.com |
| 11 | McKENNA LONG & ALDRIDGE LLP<br>444 South Flower Street, 8th Floor |
| 12 | Los Angeles, CA 90071-1000<br>Telephone: (213) 688-1000 |
| 13 | Facsimile: (213) 243-6330 |
| 14 | Attorneys for Defendant,<br>CINGULAR WIRELESS LLC |
| 15 | |
| 16 | GLEAM O. DAVIS (State Bar No. 123047)<br>gd2521@att.com |
| 17 | AT&T SERVICES LEGAL DEPARTMENT<br>1150 South Olive Street, Suite 2850 |
| 18 | Los Angeles, CA 90015<br>Telephone: (213) 743-6710 |
| 19 | Facsimile: (213) 748-1284 |
| 20 | Attorneys for Defendant,<br>PACIFIC BELL TELEPHONE COMPANY |
| 21 | and for specially appearing Defendant<br>AT&T SERVICES, INC. |
| 22 | |
| 23 | ALEJANDRO MAYORKAS (State Bar No. 122447)<br>amayorkas@omm.com |
| 24 | SANDRA SEPULVEDA (State Bar No. 223295)<br>O'MELVENY & MYERS LLP |
| 25 | 400 South Hope Street<br>Los Angeles, CA 90071-2899 |
| 26 | Telephone: (213) 430-6000<br>Facsimile: (213) 430-6407 |
| 27 | Attorneys for Defendant<br>QWEST COMMUNICATIONS CORPORATION |
| 28 | |

STIPULATION OF DISMISSAL
WITH PREJUDICE

1    Plaintiffs, by and through counsel, hereby file this Stipulation of Dismissal

2    With Prejudice as to all parties and all claims.

3    The United States of America is no longer a party to this action having been

4    transferred by the Judicial Panel on MultiDistrict Litigation as MDL1798.

5    DATED: January 25, 2007

6    SCRUGGS LAW FIRM, P.A.              McKENNA LONG & ALDRIDGE LLP

7

8    By: _____        By: _____

9        SIDNEY A. BACKSTROM                 SUSAN A. MITCHELL

10
     Attorneys For Plaintiffs            Attorneys for Defendant
11   OSCAR GURROLA ROSALVA              CINGULAR WIRELESS LLC
     GURROLA, and BERNADETTE
12   CAROL DUFFY

13
     MUNGER, TOLLES & OLSON LLP         AT&T SERVICES LEGAL
14                                       DEPARTMENT

15

16   By: _____
         DANIEL P. COLLINS              By: _____
17   Attorneys for Defendant                GLEAM O. DAVIS
18   CELLCO PARTNERSHIP dba
     VERIZON WIRELESS and for          Attorney for Defendant PACIFIC BELL
19   specially appearing Defendant     TELEPHONE COMPANY and for
20   VERIZON CORPORATE SERVICES        specially appearing Defendant AT&T
     CORP.                             SERVICES, INC.
21
     O'MELVENY & MYERS LLP
22

23

24   By: _____

25       ALEJANDRO MAYORKAS

26   Attorneys for Defendant
27   QWEST COMMUNICATIONS
     CORPORATION
28

STIPULATION OF DISMISSAL
WITH PREJUDICE

1      Plaintiffs, by and through counsel, hereby file this Stipulation of Dismissal

2 With Prejudice as to all parties and all claims.

3      The United States of America is no longer a party to this action having been

4 transferred by the Judicial Panel on MultiDistrict Litigation as MDL 1798.

5 DATED: January **25**, 2007

6 SCRUGGS LAW FIRM, P.A.       McKENNA LONG & ALDRIDGE LLP

7

8 By: _Sidney Backstrom (wlcs)_     By: _Susan Mitchell (bblwk)_

9    SIDNEY A. BACKSTROM       SUSAN A. MITCHELL

10

11 Attorneys For Plaintiffs       Attorneys for Defendant
OSCAR GURROLA ROSALVA    CINGULAR WIRELESS LLC

12 GURROLA, and BERNADETTE
CAROL DUFFY

13

14 MUNGER, TOLLES & OLSON LLP    AT&T SERVICES LEGAL
DEPARTMENT

15

16 By: _Daniel P. Collins_
                     By: _____

17    DANIEL P. COLLINS
Attorneys for Defendant             GLEAM O. DAVIS

18 CELLCO PARTNERSHIP dba
VERIZON WIRELESS and for

19 specially appearing Defendant     Attorney for Defendant PACIFIC BELL
VERIZON CORPORATE SERVICES   TELEPHONE COMPANY and for

20 CORP.                          specially appearing Defendant AT&T
SERVICES, INC.

21

22 O'MELVENY & MYERS LLP

23

24 By: _____

25    ALEJANDRO MAYORKAS

26 Attorneys for Defendant
QWEST COMMUNICATIONS

27 CORPORATION

28

                                        STIPULATION OF DISMISSAL
             - 3 -                      WITH PREJUDICE

1    Plaintiffs, by and through counsel, hereby file this Stipulation of Dismissal

2    With Prejudice as to all parties and all claims.

3    The United States of America is no longer a party to this action having been

4    transferred by the Judicial Panel on MultiDistrict Litigation as MDL1798.

5    DATED: January _____, 2007

6    SCRUGGS LAW FIRM, P.A.          McKENNA LONG & ALDRIDGE LLP

7

8    By: _____        By: _____

9        SIDNEY A. BACKSTROM            SUSAN A. MITCHELL

10
     Attorneys For Plaintiffs        Attorneys for Defendant
11   OSCAR GURROLA ROSALVA           CINGULAR WIRELESS LLC
     GURROLA, and BERNADETTE
12   CAROL DUFFY

13
     MUNGER, TOLLES & OLSON LLP      AT&T SERVICES LEGAL
14                                   DEPARTMENT

15

16   By: _____
         DANIEL P. COLLINS          By: _____
17   Attorneys for Defendant             GLEAM O. DAVIS
18   CELLCO PARTNERSHIP dba
     VERIZON WIRELESS and for       Attorney for Defendant PACIFIC BELL
19   specially appearing Defendant  TELEPHONE COMPANY and for
     VERIZON CORPORATE SERVICES     specially appearing Defendant AT&T
20   CORP.                          SERVICES, INC.

21
     O'MELVENY & MYERS LLP
22

23

24   By: _____
         ALEJANDRO MAYORKAS         IT IS SO ORDERED
25
                                    Dated ___2/7/07___
26   Attorneys for Defendant
     QWEST COMMUNICATIONS           _____
27   CORPORATION                    United States District Judge STEPHEN V. WILSON

28

                                    -3-           STIPULATION OF DISMISSAL
                                                      WITH PREJUDICE

1    Plaintiffs, by and through counsel, hereby file this Stipulation of Dismissal

2  With Prejudice as to all parties and all claims.

3    The United States of America is no longer a party to this action having been

4  transferred by the Judicial Panel on MultiDistrict Litigation as MDL1798.

5  DATED: January _____, 2007

6  SCRUGGS LAW FIRM, P.A.          McKENNA LONG & ALDRIDGE LLP

7

8  By: _____     By: _____

9    SIDNEY A. BACKSTROM              SUSAN A. MITCHELL

10

11  Attorneys For Plaintiffs         Attorneys for Defendant
    OSCAR GURROLA ROSALVA            CINGULAR WIRELESS LLC
12  GURROLA, and BERNADETTE
    CAROL DUFFY
13

14  MUNGER, TOLLES & OLSON LLP       AT&T SERVICES LEGAL
                                     DEPARTMENT
15

16  By: _____     By: _____
17    DANIEL P. COLLINS                 GLEAM O. DAVIS
    Attorneys for Defendant
18  CELLCO PARTNERSHIP dba
19  VERIZON WIRELESS and for         Attorney for Defendant PACIFIC BELL
    specially appearing Defendant    TELEPHONE COMPANY and for
20  VERIZON CORPORATE SERVICES       specially appearing Defendant AT&T
    CORP.                            SERVICES, INC.
21

22  O'MELVENY & MYERS LLP

23

24  By: _____

25    ALEJANDRO MAYORKAS

26  Attorneys for Defendant
    QWEST COMMUNICATIONS
27  CORPORATION

28

                                    - 3 -          STIPULATION OF DISMISSAL
                                                       WITH PREJUDICE

# PROOF OF SERVICE BY MAIL

I, Cynthia Silvas, declare:

1. I am over the age of 18 and not a party to the within cause. I am employed by Munger, Tolles & Olson LLP in the County of Los Angeles, State of California. My business address is 355 South Grand Avenue, Suite 3500, Los Angeles, California 90071-1560.

2. On January 26, 2007, I served true and correct copies of the attached documents entitled STIPULATION OF DISMISSAL WITH PREJUDICE by placing them in an addressed, sealed envelope(s) clearly labeled to identify the person(s) being served at the address(es) set forth on the attached service list and placing said envelope(s) in interoffice mail for collection and deposit in the United States Postal Service at 355 South Grand Avenue, Suite 3500, Los Angeles, California, on that same date, following ordinary business practices:

[See Attached Service List]

3. I am familiar with Munger, Tolles & Olson LLP's practice for collection and processing of correspondence for mailing with the United States Postal Service; in the ordinary course of business, correspondence placed in interoffice mail is deposited with the United States Postal Service with first class postage thereon fully prepaid on the same day it is placed for collection and mailing.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 26, 2007, at Los Angeles, California.

Cynthia Silvas

1212520.1

PROOF OF SERVICE

**SERVICE LIST**
*Gurrola, et al. v. United States of America, et al.*

| | |
|---|---|
| Richard F. Scruggs, Esq.<br>Sidney A. Backstrom, Esq.<br>SCRUGGS LAW FIRM, P.A.<br>P.O. Box 1136<br>120A Courthouse Square<br>Oxford, MS 38655<br>Telephone: (662) 281-1212<br>Fax: (662) 281-1312<br>Email: dickscruggs@scruggsfirm.com<br>Email: sbackstrom@scruggsfirm.com | Attorneys for Plaintiffs |
| R. Gaylord Smith, Esq.<br>Ernest Slome, Esq.<br>LEWIS BRISBOIS BISGAARD & SMITH<br>550 West C Street, 8th Floor<br>San Diego, CA 92101<br>Telephone: (619) 233-1006<br>Fax: (619) 233-8627<br>Email: smith@lbbslaw.com<br>Email: slome@lbbslaw.com | Attorneys for Plaintiffs |
| Mark Griffin, Esq.<br>LAW OFFICES OF MARK GRIFFIN<br>175 Honeybelle Oval<br>Orange, Ohio 44022<br>Telephone: (216) 346-7376<br>Fax: (216) 861-6679<br>Email: telecomlaw@hotmail.com | Attorneys for Plaintiffs |
| Randy J. Hart, Esq.<br>3300 BP Tower<br>200 Public Square<br>Cleveland, Ohio 44114<br>Telephone: (216) 274-2410<br>Fax: (216) 274-2511<br>Email: rjh@hahnlaw.com | Attorneys for Plaintiffs |
| R. Eric Kenney, Esq.<br>Daniel P. Goetz, Esq.<br>WEISMAN, KENNEY & BERRIS CO., L.P.A<br>1600 Midland Building<br>101 Prospect Avenue, West<br>Cleveland, Ohio 44115<br>Telephone: (216) 781-1111<br>Fax: (216) 781-6747<br>Email: ekennedy@weismanlaw.com<br>Email: dgoetz@weismanlaw.com | Attorneys for Plaintiffs |

1212520.1

PROOF OF SERVICE

| | | |
|---|---|---|
| 1 | Gleam Davis, Esq.<br>AT&T SERVICE LEGAL DEPARTMENT | Attorneys for Defendant,<br>AT&T, Inc., AT&T Corp., |
| 2 | 1150 So. Olive Street, Suite 2850 | and Pacific Bell Telephone<br>Company |
| 3 | Los Angeles, CA 90015<br>Telephone: (213) 743-6710 | |
| 4 | Facsimile: (213) 748-1284<br>Email: gd2521@att.com | |
| 5 | Bobby Lawyer, Esq.<br>AT&T SERVICES LEGAL DEPARTMENT | Attorneys for Defendant,<br>AT&T, Inc., AT&T Corp., |
| 6 | 525 Market Street, Suite 2001 | and Pacific Bell Telephone<br>Company |
| 7 | San Francisco, CA 94105<br>Telephone: (415) 778-1213 | |
| 8 | Facsimile: (415) 882-4458<br>Email: bl2153@att.com | |
| 9 | Susan A. Mitchell, Esq.<br>McKENNA LONG & ALDRIDGE LLP | Attorneys for Defendant,<br>Cingular Wireless, LLC |
| 10 | 444 South Flower Street, 8th Floor<br>Los Angeles, CA 90071-2901 | |
| 11 | Telephone: (213) 243-6189<br>Fax: (213) 243-6330 | |
| 12 | Email: smitchell@mckennalong.com | |
| 13 | David L. Balser, Esq.<br>McKENNA LONG & ALDRIDGE LLP | Attorneys for Defendant,<br>Cingular Wireless, LLC |
| 14 | 303 Peachtree Street, N.E., Suite 5300<br>Atlanta, GA 30308 | |
| 15 | Telephone: (404) 527-4174<br>Fax: (404) 527-4198 | |
| 16 | Email: dbalser@mckennalong.com | |
| 17 | Sandra R. Brown, Esq.<br>Sandra R. Brown, Esq. | Attorneys for United States<br>of America |
| 18 | Richard Stack, Esq.<br>U.S. Attorney's Office | |
| 19 | 1200 U.S. Courthouse<br>312 N. Spring Street | |
| 20 | Los Angeles, CA 90012-4701<br>Phone: (213) 894-2434 | |
| 21 | Fax: (213) 894-0141<br>Email: Sandra.Brown@usdoj.gov | |
| 22 | Email: Richard.Stack@usdoj.gov<br>Email: Benjamin.C.King@usdoj.gov | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

1212520.1

PROOF OF SERVICE

**Exhibit  I**

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 19 2007

FILED
CLERK'S OFFICE

*DOCKET NO. 1798*

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE LONG-DISTANCE TELEPHONE SERVICE FEDERAL EXCISE TAX REFUND LITIGATION

*Anthony Belloni, et al. v. Verizon Communications Inc., et al.,* S.D. New York, C.A. No. 1:06-11459

## BEFORE WM. TERRELL HODGES, CHAIRMAN, D. LOWELL JENSEN, J. FREDERICK MOTZ,* ROBERT L. MILLER, JR.,* KATHRYN H. VRATIL, DAVID R. HANSEN AND ANTHONY J. SCIRICA,* JUDGES OF THE PANEL

### TRANSFER ORDER

Before the Panel are motions brought, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), by plaintiffs in this action (*Belloni*) and plaintiffs in one of the three actions already centralized in this docket, respectively. Movants ask the Panel to vacate its order conditionally transferring *Belloni* to the District of District of Columbia for inclusion in the centralized pretrial proceedings occurring there in this docket before Judge Ricardo M. Urbina. Responding defendants support transfer of *Belloni*.

On the basis of the papers filed and hearing session held (without oral argument), the Panel finds that this action involves common questions of fact with actions in this litigation previously transferred to the District of District of Columbia, and that transfer of the action to that district for inclusion in the coordinated or consolidated pretrial proceedings occurring there will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. The Panel is persuaded that transfer of the action is appropriate for reasons expressed by the Panel in its original order directing centralization in this docket. In that order, the Panel held that the District of District of Columbia was a proper Section 1407 forum for actions brought by plaintiffs seeking reimbursement of the federal communications excise tax on long-distance telephone service, where the charge for such service was not based on the distance of the telephone call. *See In re Long-Distance Telephone Service Federal Excise Tax Refund Litigation*, 469 F.Supp.2d. 1348 (J.P.M.L. 2006).

Movants principally argue that, unlike plaintiffs in the already centralized actions, the *Belloni* plaintiffs have elected to sue telecommunications companies rather than the Federal Government. That difference notwithstanding, *Belloni* implicates various common issues with the already centralized actions, including questions concerning the amounts of the excise tax collected and remitted and the time period for which liability may attach. Transfer will also eliminate the possibility of conflicting rulings on exhaustion of remedies, class certification, and the Federal Government's ultimate liability.

---

\*      Judges Motz, Miller and Scirica took no part in the disposition of this matter.

- 2 -

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, this action is transferred to the District of District of Columbia and, with the consent of that court, assigned to the Honorable Ricardo M. Urbina for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re LONG-DISTANCE TELEPHONE SERVICE FEDERAL EXCISE TAX REFUND LITIGATION<br><br>This document relates to:<br><br>*Belloni v. Verizon Communications, Inc.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | MDL Docket No. **1798**<br><br>Master File:  07-mc-0014 (RMU)<br><br>Member Case:  07-cv-801 |

## [PROPOSED] ORDER GRANTING DEFENDANTS' JOINT MOTION TO DISMISS THE AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)

WHEREAS Defendants Alltel Corp.; AT&T Inc.; BellSouth Corp.; CenturyTel Inc.; Global Crossing North America Inc.; Qwest Corp.; Sprint Nextel Corp.; Time Warner Inc.; T-Mobile USA, Inc.; Verizon Communications Inc.; Verizon Business Global LLC (successor to MCI, Inc.); and Virgin Mobile USA, LLC (collectively, "Defendants") have brought a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief may be granted ("Motion to Dismiss") in the above-captioned action; and

Having considered the moving, opposing, and reply papers, the declarations and exhibits submitted in connection therewith, the argument of counsel at any hearing in this matter, and all other material properly before this Court, and good cause appearing therefore,

///

///

///

///

///

IT IS HEREBY ORDERED that, for the reasons stated in Defendants' Motion to

Dismiss, that Motion is hereby GRANTED in its entirety, and the case is dismissed with

prejudice.

**SO ORDERED.**

_____
Dated

_____
Judge Ricardo M. Urbina
United States District Judge